**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALSTORY SIMON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15-cv-1433 |
| | ) | Hon. Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| NORTHWESTERN UNIVERSITY, | ) | |
| DAVID PROTESS, PAUL J. CIOLINO, | ) | |
| and JACK P. RIMLAND, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF NORTHWESTERN UNIVERSITY'S**
**RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT**

Terri L. Mascherin
Gabriel A. Fuentes
Jory M. Hoffman
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
312-222-9350

# TABLE OF CONTENTS

DISCUSSION ..................................................................................................................1

I.  Simon Fails to State a Claim for Malicious Prosecution. ...................................1

    A.  Count I Fails to State a Claim Because Simon Alleges That He Was Charged
        by the Cook County Prosecutor After an Independent Investigation. ....................2

        1.  Under Illinois Law, a Private Person Cannot Be Held Liable for
            Malicious Prosecution Where the Prosecutor Criminally Charged the
            Plaintiff Based on the Prosecutor's Independent Investigation. ..................2

        2.  Simon Specifically Pleads That the Prosecutor Independently
            Investigated Before Obtaining Simon's Indictment. ..................................4

        3.  Simon's Own Conduct Was a Further Superseding Cause of His
            Criminal Prosecution. ..............................................................7

    B.  Count I Does Not Plead Facts Sufficient to Make the Malicious Prosecution
        Claim Plausible Under *Twombly* and *Iqbal*. ..........................................9

        1.  When Conduct Is Equally Susceptible to a Lawful Interpretation,
            *Twombly* and *Iqbal* Require a Plaintiff to Plead Specific Facts to
            Make the Claim Plausible. ..........................................................9

        2.  Simon Fails to Allege Facts Making Plausible His Claim That
            Northwestern Caused Him to Be Indicted and to Plead Guilty. ...............10

        3.  The Complaint Does Not Allege Facts Sufficient to Show That
            Northwestern Knowingly Participated in Any Malicious Prosecution
            of Simon. ..........................................................................13

II. The Complaint's Remaining Counts Should Be Dismissed. .............................14

    A.  The Claims for Intentional Infliction of Emotional Distress, Negligent
        Supervision and Retention, and Civil Conspiracy Are Time-Barred. ..................14

    B.  Simon's Claims of Civil Conspiracy, "Respondeat Superior," and Negligent
        Supervision and Retention Should Also Be Dismissed for Failure to State a
        Claim. ....................................................................................18

        1.  Count IX Fails to State a Claim for Civil Conspiracy. .............................18

        2.  Counts IV-VII Fail to State Claims of Negligent Supervision and
            Negligent Retention. ..............................................................19

        3.  Counts II and III Fail to State a Claim for "Respondeat Superior." ..........20

III.      Dismissal Should Be With Prejudice...............................................................................21

CONCLUSION..............................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akins-Brakefield v. Philip Envtl. Servs. Corp.*,
   No. 08-cv-710-DRH, 2010 U.S. Dist. LEXIS 25067 (S.D. Ill. Mar. 17, 2010) ......................17

*Allen v. Berger*,
   784 N.E.2d 367 (Ill. App. 1st Dist. 2002)......................................................................3, 6, 12

*Andersen v. Schulman,*
   337 F. Supp. 177 (N.D. Ill. 1971) .............................................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................... passim

*Bamberg v. City of Evanston*,
   No. 13 C 7650, 2014 U.S. Dist. LEXIS 52452 (N.D. Ill. Apr. 16, 2014)..............................16

*Barrow v. City of Chi.*,
   No. 13 C 8779, 2014 U.S. Dist. LEXIS 54876 (N.D. Ill. Apr. 21, 2014)..............................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................1, 9

*Bontkowski v. United States*,
   28 F.3d 36 (7th Cir. 1994) ................................................................................................8, 12

*Bridewell v. Eberle*,
   730 F.3d 672 (7th Cir. 2013) .................................................................................................16

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ......................................................................................9, 10, 11

*Cairel v. Alderden*,
   No. 09 C 1878, 2014 U.S. Dist. LEXIS 28613 (N.D. Ill. Mar. 6, 2014) ..........................16, 17

*Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*,
   559 F.3d 671 (7th Cir. 2009) .................................................................................................14

*Chatman v. City of Chi.*,
   No. 14 C 2945, 2015 U.S. Dist. LEXIS 28707 (N.D. Ill. Mar. 10, 2015) ..............................16

*Devbrow v. Kalu*,
   705 F.3d 765 (7th Cir. 2013) .................................................................................................15

*Ennenga v. Starns*,
    677 F.3d 766 (7th Cir. 2012) ............................................................5, 14

*Evans v. City of Chi.*,
    434 F.3d 916 (7th Cir. 2006) ..........................................................15, 16

*Farrar v. Eldibany*,
    No. 04 C 3371, 2004 U.S. Dist. LEXIS 20793 (N.D. Ill. Oct. 14, 2004) ..............................21

*Freides v. Sani-Mode Mfg. Co.*,
    211 N.E.2d 286 (Ill. 1965) ...................................................................12

*Gibbs v. Vill. of Flossmoor*,
    No. 13 C 9142, 2014 U.S. Dist. LEXIS 49414 (N.D. Ill. Apr. 10, 2014)..............................21

*Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*,
    No. 12 C 01851, 2014 U.S. Dist. LEXIS 36519 (N.D. Ill. Mar. 20, 2014) ...........................18

*Golla v. General Motors Corp.*,
    657 N.E.2d 894 (Ill. 1995) ...................................................................15

*Granberry by Granberry v. Carbondale Clinic, S.C.*,
    672 N.E.2d 1296 (Ill. App. 5th Dist. 1996) ...............................................13

*Hasbun v. United States*,
    No. 12 C 2543, 2013 U.S. Dist. LEXIS 7056 (N.D. Ill. Jan. 17, 2013)..............................20

*Helfers-Beitz v. Degelman*,
    939 N.E.2d 1087 (Ill. App. 3d Dist. 2010) ...........................................19, 20

*Henson v. CSC Credit Servs.*,
    29 F.3d 280 (7th Cir. 1994) ...................................................................5

*Hill v. Tangherlini*,
    724 F.3d 965 (7th Cir. 2013) ...............................................................15

*Hongbo Han v. United Cont'l Holdings, Inc.*,
    762 F.3d 598 (7th Cir. 2014) ...............................................................21

*Jones v. Chicago Research & Trading Group, Ltd.*,
    No. 88 C 8532, 1991 U.S. Dist. LEXIS 8981 (N.D. Ill. July 2, 1991) ..............................17

*Kovacs v. United States*,
    614 F.3d 666 (7th Cir. 2010) ...............................................................15

*LoggerHead Tools, LLC v. Sears Holding Corp.*,
    19 F. Supp. 3d 775 (N.D. Ill. 2013) ..................................................18, 19

iv

*Massey v. United States*,
    312 F.3d 272 (7th Cir. 2002) .........................................................................................15

*Mauvais-Jarvis v. Wong*,
    987 N.E.2d 864 (Ill. App. 1st Dist. 2013).............................................................17

*McCauley v. City of Chi.*,
    671 F.3d 611 (7th Cir. 2011) ...............................................................................10, 11

*People v. Beu*,
    644 N.E.2d 27 (Ill. App. 2d Dist. 1994) ....................................................................6

*People v. Dowaliby,*
    582 N.E.2d 1243 (Ill. App. 1st Dist. 1991)............................................................13

*People v. Fassler*,
    605 N.E.2d 576 (Ill. 1992) ............................................................................................6

*People v. Henderson*,
    799 N.E.2d 682 (Ill. App. 1st Dist. 2003).............................................................13

*People v. Simon*,
    No. 1-01-4430 (Rule 23 Order) (Ill. App. 1st Dist. Jan. 16, 2004)............................8

*People v. Simon*,
    No. 1-06-3192 (Rule 23 Order) (Ill. App. 1st Dist. March 5, 2008), *petition for leave
    to appeal denied*, 889 N.E.2d 1121 (Ill. 2008) .........................................................8

*People v. Woollums*,
    379 N.E.2d 1385 (Ill. App. 4th Dist. 1978) ...............................................................4

*Randall v. Lemke*,
    726 N.E.2d 183 (Ill. App. 2d Dist. 2000) ................................................2, 3, 4, 6

*Resendez v. Klein Tools, Inc.*,
    No 12 C 5697, 2013 U.S. Dist. LEXIS 147100 (N.D. Ill. Oct. 10, 2013) ................8

*Rodgers v. Peoples Gas, Light & Coke Co.*,
    733 N.E.2d 835 (Ill. App. 1st Dist. 2000).................................................3, 7, 12

*Ross v. Mauro Chevrolet*,
    861 N.E.2d 313 (Ill. App. 1st Dist. 2006).................................................................2

*Saathoff v. City of Champaign*,
    No. 13-2253, 2014 U.S. Dist. LEXIS 89416 (C.D. Ill. June 6, 2014) ....................21

*Small v. Chao*,
    398 F.3d 894 (7th Cir. 2005) ....................................................................................14

*Szczesniak v. CJC Auto Parts, Inc.*,
    2014 IL App (2d) 130636 ............................................................................4, 6, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................................5

*Thomas v. Farley*,
    31 F.3d 557 (7th Cir. 1994) ...........................................................................14

*Turcios v. Debruler*,
    2014 IL App (2d) 130331 ...............................................................................20

*Zahl v. Krupa*,
    927 N.E.2d 262 (Ill. App. 2d Dist. 2010) ......................................................20

## STATUTES

55 ILCS 5/3-9005(a)(1) .........................................................................................4

735 ILCS 5/13-202 .........................................................................................15, 17

## OTHER AUTHORITIES

Ill. Const. art. 6, § 19 ...........................................................................................4

Fed. R. Civ. P. 8(a)(2).............................................................................................9

Fed. R. Civ. P. 12(b)(6)...........................................................................................1

In his Complaint, Plaintiff Alstory Simon, who confessed and pleaded guilty to two 1982 homicides, spins a tangled yarn, claiming he was "frame[d]" 16 years ago by former Northwestern University journalism professor David Protess and private investigator Paul J. Ciolino. Simon sues Northwestern, in essence, for having been Protess's employer, claiming malicious prosecution and a host of other torts. While the story told in the Complaint is false and meritless, Northwestern's Rule 12(b)(6) Motion is directed not at the merits, but at the Complaint's failure to state a claim.

Part I of this Memorandum establishes that Simon's malicious prosecution claim fails to plead sufficient facts to make his claim plausible under the pleading standard established by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Among other things, Simon's allegations demonstrate that his prosecution was caused not by Northwestern's actions but by the Cook County prosecutor's independent investigation, which extended beyond the information provided to him by Protess and Ciolino, and by Simon's own decision to plead guilty months later. Moreover, Simon does not (and cannot) allege facts sufficient to demonstrate that Northwestern knew of any of the purported misconduct of Protess or Ciolino. Part II of this Memorandum explains why Simon's remaining claims must also be dismissed, for obvious violation of the statute of limitations and for failure to state a claim against Northwestern. Part III explains why the dismissal should be with prejudice. In addition to these grounds for dismissal, Northwestern joins in the Motion to Dismiss filed by defendant Protess.

## DISCUSSION

## I.      Simon Fails to State a Claim for Malicious Prosecution.

Count I of the Complaint should be dismissed because Simon's allegations show that he was prosecuted for the 1982 shooting deaths of Jerry Hillard and Marilyn Green as a result of an

independent grand jury investigation by the Cook County State's Attorney, and not based solely on information supplied by any of the defendants.  Nor do the Complaint's pleaded facts support a plausible claim that Northwestern or any other defendant commenced or continued Simon's criminal prosecution, particularly given that Simon pleaded guilty to the crimes before a Cook County Circuit Court Judge.

**A.    Count I Fails to State a Claim Because Simon Alleges That He Was Charged by the Cook County Prosecutor After an Independent Investigation.**

Simon alleges that his prosecution resulted from, and was based upon, an independent investigation by the Cook County State's Attorney ("CCSA").   Simon alleges that the CCSA independently learned of purportedly "overwhelming" evidence of Simon's innocence, which Protess allegedly had not pursued.  Compl. ¶¶ 103-07, 112.  He alleges that in March 1999, the CCSA obtained Simon's indictment with full knowledge of that evidence.  *Id.* ¶¶ 103-07, 110, 148.  Simon further alleges that he pleaded guilty to the charges seven months later.  *Id.* ¶¶ 115. Under Illinois law, given that independent investigation, Simon cannot claim that either Northwestern or the other defendants commenced or continued the prosecution, and Count I fails to a state a claim for malicious prosecution.

**1.    Under Illinois Law, a Private Person Cannot Be Held Liable for Malicious Prosecution Where the Prosecutor Criminally Charged the Plaintiff Based on the Prosecutor's Independent Investigation.**

Malicious prosecution claims are disfavored under Illinois law because public policy favors exposing crime.  *Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. App. 1st Dist. 2006). When a plaintiff claims that a private citizen (as opposed to a prosecutor or law enforcement official) has committed malicious prosecution, the plaintiff must plead and prove that the defendant commenced or continued an original criminal proceeding against plaintiff.  *Randall v. Lemke*, 726 N.E.2d 183, 185 (Ill. App. 2d Dist. 2000).  The claim fails if the criminal prosecution

was based not on the allegedly false information provided by the private citizen defendant, but rather upon an independent law enforcement investigation. *Id.* at 185-86.

In limited circumstances, Illinois courts have allowed malicious prosecution claims to proceed where a prosecutor obtained a grand jury indictment based solely upon false evidence provided by a defendant. *See Allen v. Berger*, 784 N.E.2d 367, 369-71 (Ill. App. 1st Dist. 2002); *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 839-41 (Ill. App. 1st Dist. 2000). In those cases, the prosecutors conducted no independent investigation; thus the courts held a jury could infer that defendants commenced the prosecution by providing knowingly false testimony. *Allen*, 784 N.E.2d at 369 (defendants falsely told authorities that plaintiff was the "mastermind" of a bid-rigging scheme for which they were being investigated; "[a]fter the U.S. Attorney read Berger's false accusations to the grand jury, and Wolf gave false testimony to the grand jury, Allen was indicted."); *Rodgers*, 733 N.E.2d at 839 (plaintiff's employer teamed with private investigators to manufacture false evidence that plaintiff had delivered a controlled substance; the investigators' "false testimony before the grand jury . . . caused plaintiff to be indicted" on narcotics charges).

The result is different where a prosecutor initiates criminal charges based on an independent law enforcement investigation that goes beyond information supplied by a private citizen. Where there is an independent investigation, the private citizen defendant cannot be said to have commenced the wrongful prosecution. *Randall*, 726 N.E.2d at 186. A private defendant "may not be deemed to have procured the proceedings if he merely provides a public official information of another's supposed criminal conduct and the public prosecutor is left with the uncontrolled choice of whether or not to bring proceedings." *Andersen v. Schulman*, 337 F. Supp. 177, 180 (N.D. Ill. 1971).

*Randall* is instructive here. In *Randall,* the defendant told police that the plaintiff was in

3

a vehicle with a gun. 726 N.E.2d at 184. The police arrived but found no gun. Instead of charging Randall with a weapons violation, they charged him with traffic offenses and drunk driving, based on their independent investigation at the scene. *Id.* at 185. The Appellate Court affirmed dismissal of the malicious prosecution claim, adopting a "sound" rule that if a prosecution is based on information separate from what the defendant provided, the defendant has not "affect[ed] the officer's discretion, and the officer alone is responsible for the prosecution." *Id.* at 186. Likewise, in *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 13, the court affirmed summary judgment for a defendant who had reported to police that plaintiff had passed bad checks. Even assuming defendant lied about plaintiff's conduct, the defendant's statement was "superseded and rendered immaterial" by a subsequent six-month investigation of the plaintiff by a second officer. *Id.*

### 2.    Simon Specifically Pleads That the Prosecutor Independently Investigated Before Obtaining Simon's Indictment.

Simon specifically alleges that the CCSA obtained Simon's indictment after conducting a grand jury investigation that was entirely independent of, and extended beyond, the information that Protess provided to authorities. Compl. ¶¶ 103-07, 110, 148.[1] Simon alleges that the prosecutor uncovered and considered extensive evidence not provided by Protess. He alleges that:

- Protess ignored four "independent and unbiased" occurrence witnesses, making no attempt to locate or interview them, even though they were "prominently referenced" in contemporaneous police reports. *Id.* ¶¶ 104, 107.

- The accounts of those four "independent" occurrence witnesses exonerated

---

[1] A State's Attorney is a state constitutional officer with the statutory duty "[t]o commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his [or her] county." 55 ILCS 5/3-9005(a)(1); *see also* Ill. Const. art. 6, § 19; *People v. Woollums*, 379 N.E.2d 1385, 1390 (Ill. App. 4th Dist. 1978) ("While a police officer has considerable latitude in charging an individual, the ultimate responsibility of filing a charge and prosecuting it lies with the State's Attorney.").

Simon. Three placed Anthony Porter at the crime scene, none identified Simon, and one identified Porter as the shooter and said that the scenario of Simon as the shooter "makes me laugh." *Id.* ¶¶ 104-06.

- The four "independent" witness accounts amounted to "overwhelming" evidence of Simon's innocence. *Id.* ¶ 112.

Simon alleges that those accounts came *during the grand jury testimony* of the four "independent" witnesses. *Id.* ¶¶ 104-06. Thus, necessarily the CCSA knew of the four witness accounts that Simon claims provided "overwhelming" evidence of his innocence: The CCSA knew of this evidence from the independent investigation the CCSA conducted before seeking the indictment. *See id.* ¶¶ 103-07, 112, 148.

Simon also alleges that the CCSA uncovered exculpatory evidence from witness William Taylor which Simon claims defendants deliberately omitted from a 1998 affidavit that they procured from Taylor. *Id.* ¶¶ 84, 114. Simon alleges that Taylor made a February 1999 "court reported statement" in which Taylor said that immediately after hearing shots, he saw "a man who looked like and who he believed was Anthony Porter" running past him and carrying a gun. *Id.* ¶ 114. The "court reported statement" was taken by the CCSA. *See* Ex. B at 16.[2] Thus, it is evident from the Complaint that, as in *Randall* and *Szczesniak,* the prosecutor here investigated independently and obtained evidence that was not supplied by defendants.

Simon's Complaint also makes clear that the CCSA made an independent decision regarding what evidence he presented to the grand jury to initiate charges against Simon. Simon

---

[2] The Court may consider these publicly filed documents because they are referenced in the Complaint and are central to plaintiff's claim. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). On a Rule 12(b)(6) motion to dismiss, a court may take judicial notice of a court record if its application to the current proceeding is beyond reasonable dispute, and if the record is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012). Public records, including proceedings in other courts, are judicially noticeable facts. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Simon's Complaint contains extensive allegations regarding his post-conviction proceedings, which commenced in 2001. *See* Compl. ¶¶ 116-17. The public record includes both his 2001 and his 2005 post-conviction petitions (attached at Ex. A and B).

alleges that the CCSA convened a first grand jury that heard not only testimony from Protess and Ciolino, but also the testimony that the CCSA uncovered independently. Compl. ¶¶ 103-07. Simon alleges that a "new" grand jury was then empanelled (necessarily by the CCSA), before which the CCSA obtained Simon's indictment by presenting more limited evidence, which Simon claims was "fabricated and manufactured" by Northwestern. *Id.* ¶¶ 110, 148. But even if these allegations are accepted as true, the defendants still cannot be said to have "commenced or continued" Simon's prosecution. No matter what testimony the CCSA decided to present to the grand jury to obtain Simon's indictment, the CCSA – and not any of the defendants – had investigated and was in full control of the grand jury process.

Simon does not and cannot allege that defendants had any control over the grand jury process. *See supra* p. 4 and n.1. Under Illinois law, the prosecutor's duty is to present to the grand jury information tending to establish probable cause; a prosecutor is not required to present exculpatory evidence to the grand jury, and grand jury proceedings are not intended to approximate trials on the merits. *People v. Beu*, 644 N.E.2d 27, 30 (Ill. App. 2d Dist. 1994) (citing *People v. Fassler*, 605 N.E.2d 576, 581 (Ill. 1992)). Simon's quarrel is with the prosecutor and how the prosecutor exercised his discretion. Simon has no malicious prosecution claim against defendants arising from how the prosecutor decided to fulfill his duties.

Under *Randall*, 726 N.E.2d at 184, and *Szczesniak*, 2014 IL App (2d) 130636 ¶¶, 13-15, because the Complaint shows that the CCSA conducted his own investigation and uncovered many facts which Simon alleges Protess did not provide to the CCSA, only the prosecutor, not defendants, commenced the criminal proceedings against Simon. This case is different than *Allen* and *Rodgers*, which upheld malicious prosecution claims where the grand jury indictments were based solely upon false testimony by the private citizen defendants. *Allen*, 784 N.E.2d at 369; *Rodgers*, 744 N.E.2d at 839. Neither *Allen* nor *Rodgers* involved an independent

6

prosecutorial investigation, let alone one that unearthed evidence allegedly exculpating the plaintiff.  By contrast, in this case, as in *Randall* and *Szczesniak*, the independent investigation by the CCSA breaks the causal chain between the allegedly false information provided by Protess and Ciolino and the commencement of the criminal prosecution.  Because his indictment resulted from an intervening and independent prosecutorial investigation, Simon cannot maintain a malicious prosecution claim against the defendants.  Count I should be dismissed.

### 3. Simon's Own Conduct Was a Further Superseding Cause of His Criminal Prosecution.

A second reason why Count I does not state a claim for malicious prosecution is that, based upon Simon's allegations, he himself continued his criminal prosecution by confessing to the Hillard and Green slayings – both out of court and in open court – and by pleading guilty. Compl. ¶ 115.  Simon unquestionably knows, and has known all along, whether he shot Hillard and Green.  Simon claims now that he confessed and pleaded guilty because he hoped to enjoy a financial windfall through book and movie deals following only "a short prison sentence."  *See id.* ¶ 93.[3]  If, as Simon now claims, he was innocent all along, he commenced the criminal proceeding himself by confessing. Then, Simon continued those proceedings by pleading guilty and confessing again in open court.  *Id.* ¶ 115.  His own conduct was an intervening cause that defeats any potential claim against defendants for malicious prosecution.

The Illinois Appellate Court already has held, not once but twice, that Simon's allegations that defendants supposedly caused him to enter into a guilty plea when he purportedly was innocent provide no basis to revisit his criminal conviction.  *People v. Simon*, No. 1-06-3192

---

[3] Simon made similar allegations in his 2001 post-conviction petition.  There, he alleged that he "only consented to give the confession and to make different statements indicating guilt" because Ciolino or Protess promised that he would receive a short jail sentence and "millions of dollars from the movie and book," and claimed that while Simon fulfilled his part of that agreement, the promises he said were made to him were not fulfilled. Ex. A at 9-10.

(Rule 23 Order) at 6-7 (Ill. App. 1st Dist. March 5, 2008), *petition for leave to appeal denied*, 889 N.E.2d 1121 (Ill. 2008) (attached at Ex. C); *People v. Simon*, No. 1-01-4430 (Rule 23 order) at 9-10 (Ill. App. 1st Dist. Jan. 16, 2004) (attached at Ex. D). The court held that because Simon claims he "pled guilty in order to receive the alleged promises made by Ciolino" concerning book and movie money, Simon's "new evidence" of the purported falsity of his guilty plea "would not have altered defendant's outcome," notwithstanding his later-professed belief in his innocence. Ex. C at 6-7. "[T]herefore," the court held, "his claim is forfeited." *Id.* at 7. *See Bontkowski v. United States*, 28 F.3d 36, 37-38 (7th Cir. 1994) ("as a matter of common sense, by pleading guilty Bontkowski forfeited his chance to dispute the existence of probable cause for his prosecution. Bontkowski may not on one day admit that he did the things he is charged with, and then on a later date claim it was malicious to charge him with doing the things he admitted he did") (internal citations omitted).[4]

Simon admitted to the Hillard and Green killings, not just to Ciolino in February 1999 but again before Judge Thomas Fitzgerald in September 1999. He now alleges that he did so because he intentionally joined in an "agreement" that he thought would land him a financial windfall in the millions of dollars. Northwestern by no means agrees that anyone made any such deal with Simon. But if the Complaint's allegations are taken as true, Simon's decision to plead guilty to the killings before Judge Fitzgerald in the hope of receiving book and movie money and only a short sentence was an additional superseding cause of his prosecution and precludes him

---

4 To the extent Simon's malicious prosecution claim depends on his attempt to blame Northwestern and the other defendants for the guilty plea he entered purportedly based on the promise of book and movie money, the Illinois Appellate Court's resolution of that issue against him on two occasions collaterally estops him from litigating that issue again here. *See Resendez v. Klein Tools, Inc.*, No 12 C 5697, 2013 U.S. Dist. LEXIS 147100, at *7-12 (N.D. Ill. Oct. 10, 2013) (granting Rule 12(b)(6) motion to dismiss, finding plaintiff was collaterally estopped by adverse findings in a separate proceeding from arguing that he signed a written confession to stealing from his employer in exchange for the employer's promise not to terminate him).

from attributing his prosecution to Northwestern.

**B.    Count I Does Not Plead Facts Sufficient to Make the Malicious Prosecution Claim Plausible Under *Twombly* and *Iqbal*.**

Count I of the Complaint also should be dismissed for failure to allege facts to make the claim plausible, given the far-fetched premise that the defendants: (1) conspired to "frame[]" Simon for the 1982 murders, (2) caused the CCSA – who uncovered all the evidence Simon claims Protess ignored – to charge Simon, and (3) caused Simon to plead guilty, he now claims falsely, to the shootings.

**1.    When Conduct Is Equally Susceptible to a Lawful Interpretation, *Twombly* and *Iqbal* Require a Plaintiff to Plead Specific Facts to Make the Claim Plausible.**

A complaint does not satisfy Rule 8(a)(2) if it does not state a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. To have facial plausibility, a claim must plead "factual content" that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. While the Court takes alleged facts – but not legal conclusions – as true for purposes of a motion to dismiss, *the Complaint still must allege facts* that state a plausible claim for relief. *Id.*

A complaint that pleads facts that are merely "'consistent with'" a defendant's liability is insufficient because such a complaint "'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Our Court of Appeals has interpreted *Iqbal* and *Twombly* to require dismissal where the "specific facts" in the pleading (after the Court strips away legal conclusions and formulaic recitations of the elements of the claim) are "just as consistent with lawful conduct as it is with wrongdoing." *See Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009). While the level of required factual specificity is "not easily quantified," the Seventh Circuit has held that more specificity is required when the

claim is complex and the facts yield lawful alternative explanations. *McCauley v. City of Chi.*, 671 F.3d 611, 617-18, 619 (7th Cir. 2011); *Brooks*, 578 F.3d at 581. Pleading the "who, what, and when" may be sufficient to advance a "straightforward" claim, but not a "complicated and counterintuitive" one when the pleaded facts present obvious legal alternative explanations. *McCauley*, 671 F.3d at 619.

The tangled web that Simon alleges is highly counterintuitive and requires far more than the conclusory allegations Simon offers in his attempt to hold Northwestern liable for criminal charges that the CCSA brought and that Simon admitted in a guilty plea before a court.

### 2. Simon Fails to Allege Facts Making Plausible His Claim That Northwestern Caused Him to Be Indicted and to Plead Guilty.

The "wrongful conviction" posture into which Simon attempts to shoehorn his criminal case is unusual – and implausible. Simon claims that despite knowing his innocence of the Hillard and Green killings, he pleaded guilty and made no attempt to withdraw or challenge that guilty plea for nearly two years, and then only when he received "explosive" grand jury testimony that had been withheld from him and that "finally" demonstrated to him that he was wrongfully prosecuted. Compl. ¶¶ 113, 116. Simon also alleges summarily that the CCSA obtained Simon's indictment in March 1999 from a second grand jury "based solely on the false evidence manufactured by the Northwestern Team," while alleging in virtually the same breath that the CCSA's independent investigation uncovered evidence "overwhelming[ly]" showing his innocence. *Id.* ¶¶ 104-06, 110, 112.

Simon now claims that all of this was Northwestern's fault. But to pass muster under *Twombly* and *Iqbal,* Simon must allege at least "some specific facts" to nudge that incredible story past the realm of the merely possible and into the realm of plausibility. *McCauley*, 671 F.3d at 616; *see also Brooks*, 578 F.3d at 581 ("[S]ome factual allegations will be so sketchy or

implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim."). The Complaint does not allege facts to suggest plausibly that Northwestern caused or continued his prosecution.

Rather, the specific facts that *are* pleaded establish that none of the defendants duped anyone, least of all the CCSA. And there is a plausible, lawful explanation for defendants' conduct. Simon's allegations that defendant Protess "published" his findings to try to create "public sentiment" that would "influence" the prosecutor to indict Simon, *see* Compl. ¶¶ 85-86, 90, are equally consistent with the lawful First Amendment activity one might expect of a journalism professor sharing information about a newsworthy case with the news media. Where lawful alternative explanations for a defendant's conduct are obvious, the plaintiff's pleading fails to cross the threshold of plausibility. *McCauley*, 671 F.3d at 617, 619; *Brooks*, 578 F.3d 581-82. Moreover, Simon's allegations that Protess somehow indirectly pressured the CCSA by attempting to influence the news media fall far short of alleging that he or any defendant "pressured" or "directed" the Cook County prosecutors to do anything. The Complaint alleges no communication between the prosecutors and defendants, other than (1) Protess and Ciolino providing "the false evidence purporting to exonerate Porter" to the CCSA, and (2) the CCSA eliciting testimony from Protess, Ciolino, and Protess's students before the grand jury that developed the allegedly "overwhelming" evidence of Porter's guilt and Simon's innocence. Compl. ¶¶ 97, 103, 112. In sum, the Complaint is bereft of facts sufficient to make a plausible case that Northwestern, Protess, or Ciolino exercised such power over the CCSA as to cause him to obtain Simon's indictment amid supposedly "explosive" and "overwhelming" evidence of Porter's guilt.

Nor does the Complaint deliver adequate specific facts to make plausible the claim that defendants not only "manufactured" Simon's videotaped confession to Ciolino in February 1999,

11

but had such power over Simon (allegedly through defendant Rimland) to cause Simon himself to stand before a judge seven months later and admit everything he now claims was "manufactured."  Simon's allegations that Northwestern supposedly caused Simon's lawyer, defendant Rimland, to coerce Simon into falsely pleading guilty and taking a 37-year prison sentence (and then staying silent about it for two years) are equally implausible.[5]  *Id.* ¶¶ 98-99, 111-15.  Simon now claims he could not have known about the "explosive grand jury testimony further inculpating Porter – and exculpating Simon – in the murders."  *Id.* ¶ 113.  But the fact remains that Simon knows whether he shot Hillard and Green.  If Simon pleaded guilty falsely (and Northwestern has no reason to believe that was the case), he did not need grand jury transcripts to prove to himself that he was innocent.  *Id.* ¶ 116.

In short, the Complaint does not allege facts sufficient to make a plausible claim that Simon's criminal prosecution was commenced or continued by anyone but the CCSA – except, perhaps, by Simon himself.

---

[5] The fact that Simon persisted in a guilty plea that, by his own admission, he made no attempt to retract for some two years further distinguishes this case from *Allen* and *Rodgers.*  In both of those cases the malicious prosecution plaintiffs were charged by grand juries.  In *Allen*, the indictment was dismissed. 784 N.E.2d at 368.  In *Rodgers*, the plaintiff was acquitted.  733 N.E.2d at 842.  Plaintiff's guilty plea here makes his malicious prosecution claims all the more implausible and should signal to the Court that he will not be able to establish a lack of probable cause – which is another essential element of his claim. *See Bontkowski*, 28 F.3d at 37; *see also Freides v. Sani-Mode Mfg. Co.*, 211 N.E.2d 286, 288 (Ill. 1965) ("[w]ant of probable cause for instituting the original proceedings is an indispensable element of an action for malicious prosecution.").

      3. **The Complaint Does Not Allege Facts Sufficient to Show That Northwestern Knowingly Participated in Any Malicious Prosecution of Simon.**

The Complaint similarly fails to plead facts sufficient to show that Northwestern had any basis to know in 1998 or 1999 that Protess had knowingly falsely accused Simon or manufactured false evidence against him. The allegation that Northwestern "permitted a culture of lawlessness," *id.* ¶ 8, is conclusory under *Iqbal*, 556 U.S. at 681. The pleaded facts create no plausible case that Northwestern had any knowledge of any supposed deliberate attempt to "frame" Simon for murders he purportedly did not commit.

Simon's allegations regarding Northwestern's knowledge, as of 1998, even if true, do not plausibly suggest that Northwestern knew that Protess and Ciolino were about to "frame" an innocent person for murder. Simon alleges that Protess was involved in the Dowaliby and Ford Heights Four cases, but those cases resulted in the exoneration of the defendants. Compl. ¶¶ 22-40; *see People v. Dowaliby,* 582 N.E.2d 1243, 1251 (Ill. App. 1st Dist. 1991); *People v. Henderson*, 799 N.E.2d 682, 692 (Ill. App. 1st Dist. 2003). At best, based on a fair reading of Simon's allegations, Northwestern was on notice in 1998-99 that its journalism professor had been involved in exonerating wrongfully convicted persons.

The remainder of Simon's allegations of Northwestern's purported knowledge either are purely conclusory or relate to events that long post-date Protess's 1998-99 investigation of the Hillard and Green murders, and are irrelevant to Northwestern's state of mind in 1998-99. *See* Compl. ¶¶ 40-44, 132-40; *see also Szczesniak*, 2014 IL App (2d) 130636, ¶ 16 ("The relevant time for probable cause to have existed is when the criminal complaint was initiated."); *Granberry by Granberry v. Carbondale Clinic, S.C.*, 672 N.E.2d 1296, 1304 (Ill. App. 5th Dist. 1996) (evidence of defendant's knowledge of matters post-dating the alleged tortious conduct is not admissible; defendant's conduct must be assessed based upon knowledge and standards in

13

existence at the time of the conduct).

None of the pleaded facts about Northwestern's knowledge of Protess's activities supplies a plausible basis for a malicious prosecution claim against Northwestern.

## II.     The Complaint's Remaining Counts Should Be Dismissed.

Simon alleges an assortment of other Illinois tort claims in Counts II-IX. Several of those claims are time-barred, while others simply fail to state a claim, and all of them should be dismissed.

### A.     The Claims for Intentional Infliction of Emotional Distress, Negligent Supervision and Retention, and Civil Conspiracy Are Time-Barred.

While the statute of limitations is ordinarily raised as an affirmative defense, the Court may dismiss under Rule 12(b)(6) any claim that is indisputably time-barred. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005); *see also Ennenga*, 677 F.3d at 773 ("[A] motion to dismiss on statute of limitations grounds qualifies as a motion to dismiss for failure to state a claim."). "[D]ismissal is appropriate" where "the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009); *see also Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994) ("if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck – he has pleaded himself out of court"). That is the case with several of Simon's claims.

The claims in Counts IV through IX have been time-barred for at least eight years. Those claims accrued at the latest in December 2005, when Simon filed his second post-conviction petition, Ex. B, making allegations parallel to the allegations of his Complaint.[6] The limitations period for personal injury claims under Illinois law is two years, 735 ILCS 5/13-202, and the tort

claims in Counts IV-IX accrued long outside the limitations period.

Under Illinois law, personal injury claims accrue "'when the plaintiff suffers injury.'" *See Evans v. City of Chi.*, 434 F.3d 916, 934 (7th Cir. 2006) (quoting *Golla v. General Motors Corp.*, 657 N.E.2d 894 (Ill. 1995)), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). Recognizing that literal application of this rule would lead to harsh results where the plaintiff's discovery of her injury is delayed, Illinois courts apply a "discovery rule" that postpones the commencement of the statute of limitations until the injured plaintiff knows or reasonably should know that she has been injured and that her injury was wrongfully caused. *Id.* at 934 & n.28. Under the discovery rule, the limitations period begins to run when information exists that would lead a reasonable person "to investigate the possibility that his legal rights have been infringed." *Kovacs v. United States*, 614 F.3d 666, 674 (7th Cir. 2010) (internal quotation marks omitted). The plaintiff need not know the full extent of an alleged injury and need not discover that the tortfeasor who caused the injury was legally blameworthy. *See Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013); *Massey v. United States*, 312 F.3d 272, 276 (7th Cir. 2002).

Simon alleges that his review in 2001 of certain 1999 grand jury transcripts in his case triggered a years-long investigation that "reveal[ed]" the use of "false and fabricated" evidence against him. Compl. ¶¶ 116-17. In his 2001 petition, Simon raised the essential facts that form the basis of his claims here. Simon alleged that his February 1999 videotaped confession to defendant Ciolino was coerced. Ex. A at 7-8. He alleged that Ciolino told Simon that he was working for Protess "of Northwestern University," and that during the encounter, Simon was under the influence of intoxicating drugs. *Id.* at 8-9. Simon alleged that his ex-wife, Inez

---

[6] Indeed, the causes of action likely accrued as early as July 2001, when Simon filed his first post-conviction petition, which contains the same essential set of allegations. Ex. A.

Jackson Simon, was wrongfully induced to implicate him and that defendant Rimland "facilitated the scheme to free Anthony Porter from death row by his lack of representation of Petitioner Simon." *Id.* at 10. Those 2001 allegations form the core of Simon's allegations today. Compl. ¶¶ 80-102.

In his 2005 petition (filed after the alleged "years" of investigation, *see id.* ¶ 117), Simon added greater detail to his claims. Ex. B. He alleged essentially the same sequence of events forming the basis for his Complaint. *Compare id.* ¶¶ 80-122 *with* Ex. B at 1-29. It is difficult to imagine a clearer and more indisputable example of a claim accrual than this. Simon filed his Complaint on February 17, 2015, more than nine years after he – by his own admission – not only knew of a basis for further investigation into the purported infringement of his legal rights, but, aided by counsel, had filed a detailed, 34-page petition setting forth all of the facts showing his purported injuries, their causes, and the alleged underlying conduct. Thus, Counts IV through IX of the Complaint are all time-barred.

***Intentional infliction of emotional distress* (Count VIII)**: This claim is time-barred under *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013). *Bridewell* clarified that under *Evans*, 434 F.3d at 934-35, intentional infliction of emotional distress is not a continuing tort. It arises when the injury occurs – here, when Simon was allegedly wrongfully charged. The fact that defendants did not retract their positions regarding Simon's guilt does not extend the limitations period. *Bridewell*, 730 F.3d at 678.; *see also Chatman v. City of Chi.*, No. 14 C 2945, 2015 U.S. Dist. LEXIS 28707, at *28-29 (N.D. Ill. Mar. 10, 2015) ("*Bridewell* also forecloses any argument that the IIED claim constitutes a continuing tort or violation"); *Barrow v. City of Chi.*, No. 13 C 8779, 2014 U.S. Dist. LEXIS 54876, at *18-19 (N.D. Ill. Apr. 21, 2014) (earlier decisions holding that IIED claim accrued at the time of termination of an alleged malicious prosecution "are not controlling" after *Bridewell*); *Bamberg v. City of Evanston*, No. 13 C 7650,

2014 U.S. Dist. LEXIS 52452, at *10-12 (N.D. Ill. Apr. 16, 2014) (same); *Cairel v. Alderden*, No. 09 C 1878, 2014 U.S. Dist. LEXIS 28613, at *40-41 (N.D. Ill. Mar. 6, 2014) (*Bridewell* settled an earlier split of authority in the Northern District of Illinois and established that intentional infliction claims accrue at the date of the plaintiff's arrest, and the continuation of the prosecution does not restart the running of the statute of limitations). Simon alleges he was arrested in February 1999 and pleaded guilty in September 1999. Compl. ¶¶ 104, 115. Even assuming he did not discover a basis to investigate his claims until 2005, the claim in Count VIII is time-barred. *See* 735 ILCS 5/13-202.

**Negligent Supervision and Retention (Counts IV-VII)**:  Section 13-202's two-year limitations period also applies to these claims. *Akins-Brakefield v. Philip Envtl. Servs. Corp.*, No. 08-cv-710-DRH, 2010 U.S. Dist. LEXIS 25067, at *40 (S.D. Ill. Mar. 17, 2010); *see also Jones v. Chicago Research & Trading Group, Ltd.*, Case No. 88 C 8532, 1991 U.S. Dist. LEXIS 8981, at *1 (N.D. Ill. July 2, 1991) ("Both the torts of intentional infliction of emotional distress and negligent supervision have a two-year statute of limitations").  For the same reasons stated above, nothing prevented Simon from alleging these claims when he filed his December 2005 post-conviction petition.

**Civil Conspiracy (Count IX)**:  The limitations period for civil conspiracy is governed by the period applicable to the underlying tort. *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 894 (Ill. App. 1st Dist. 2013). The limitations period is two years (per Section 13-202), whether the underlying tort here is considered to be malicious prosecution or intentional infliction of emotional distress.  While civil conspiracy is not an independent tort, Northwestern has found no authority to suggest that it would accrue any later than Simon's December 2005 discovery of his injuries and their purported causes.  Simon does not specifically allege any injurious act after his 1999 guilty plea.  Nor could it reasonably be said that any conspiracy continued after December

2005 when Simon filed his more detailed post-conviction petition publicly. Ex. B. Indeed, Simon publicly alleged the same supposed conspiracy by the defendants as early as 2001. *See* Ex. A at 10 (alleging that Simon's prosecution resulted from a "scheme to free Anthony Porter from death row").

For these reasons, Counts IV-IX have been asserted long after the expiration of the applicable statute of limitations and must be dismissed.

**B. Simon's Claims of Civil Conspiracy, "Respondeat Superior," and Negligent Supervision and Retention Should Also Be Dismissed for Failure to State a Claim.**

Simon's claims of civil conspiracy, negligent supervision, negligent retention, and "respondeat superior" should be dismissed because each of those Counts fails to state a claim.

**1. Count IX Fails to State a Claim for Civil Conspiracy.**

Simon's civil conspiracy claim should be dismissed for two additional reasons. First, civil conspiracy is not an independent tort in Illinois and must be dismissed along with Simon's underlying tort claims for malicious prosecution and intentional infliction of emotional distress. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, No. 12 C 01851, 2014 U.S. Dist. LEXIS 36519, at *28 (N.D. Ill. Mar. 20, 2014) ("'conspiracy becomes actionable only when the underlying conduct which is the subject of the conspiracy is independently tortious.'").

Second, the Complaint fails to state a claim for conspiracy. Simon's conspiracy allegations are too vague and general to support a claim that Northwestern "underst[ood] 'the general objectives of the [alleged] conspiratorial scheme, accept[ed] them, and agree[d], either explicitly or implicitly to do its part to further those objectives.'" *LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F. Supp. 3d 775, 783 (N.D. Ill. 2013). The Complaint lacks any specific allegations about how or when Northwestern supposedly entered into any agreement with Protess, Ciolino, or Rimland, or that Northwestern committed any overt act in furtherance

of any agreement. Simon pleads only that Northwestern knew Protess was investigating criminal cases, including the Anthony Porter case, and encouraged him to do so. Compl. ¶¶ 22, 28, 48, 53. Simon's other conspiracy allegations relate entirely to Protess and Ciolino's alleged activities, or those of Protess's students, not Northwestern. *Id.* ¶¶ 80-96. Simon alleges only that Northwestern "collaborated" (no less a conclusion than "conspired") with Protess, Ciolino and Rimland to obtain Simon's conviction "to further their objective" of portraying Anthony Porter as an innocent Death Row inmate and conceal the purportedly false nature of Simon's confession. *Id.* ¶ 111. Count IX itself then merely states the legal elements of a conspiracy. *Id.* ¶¶ 267-71.

Given the counter-intuitiveness of the factual scenario that Simon concocts, he must plead specific facts to demonstrate that his conspiracy claim is plausible under *Twombly* and *Iqbal.* General allegations of a conspiracy do not withstand a motion to dismiss. *See LoggerHead*, 19 F. Supp. 3d at 784 (dismissing civil conspiracy claim where plaintiff failed to "plead any factual content to state a claim of conspiracy that is plausible on its face").

Simon's conspiracy claim fails the plausibility test. It does not allege facts from which the Court can infer reasonably that Northwestern is liable, or from which Northwestern could know what exactly it is alleged to have done as part of the supposed conspiracy. *See Iqbal*, 556 U.S. at 678.

### 2. Counts IV-VII Fail to State Claims of Negligent Supervision and Negligent Retention.

Negligent supervision and negligent retention are the same tort and have the same legal elements. *Helfers-Beitz v. Degelman*, 939 N.E.2d 1087, 1091 (Ill. App. 3d Dist. 2010). To recover, a plaintiff must show: the employer knew "that the employee had a particular unfitness for the position so as to create a danger of harm to third persons;" the employer knew or should

have known of the unfitness at the time of the employee's hiring or retention; and the unfitness proximately caused the plaintiff's injury. *Id.* A claim for negligent retention should be dismissed if no plausible facts show that the employer knew (or should have known) about the employee's unfitness. *Hasbun v. United States*, No. 12 C 2543, 2013 U.S. Dist. LEXIS 7056, at *7-10 (N.D. Ill. Jan. 17, 2013) (granting motion to dismiss because plaintiff "failed to sufficiently allege the requisite knowledge – that [the employer] knew or should have known – about [employee's unfitness]").

As discussed above, Simon does not plead any facts that plausibly suggest that in 1998-99, Northwestern knew or should have known that Protess, then a journalism professor, or Ciolino, a private investigator, would supposedly engage in a knowing effort to coerce Simon to confess falsely to two murders so that Porter could be exonerated falsely. Simon's allegations show only that in 1998-99, Northwestern knew of Protess's success in exposing wrongful convictions. Compl. ¶¶ 24-25, 31-32. Northwestern's knowledge about Protess's activities exonerating those who were wrongfully convicted before 1998-99 did not cause Simon's prosecution.[7] Simon's other allegations about Northwestern's supposed knowledge are irrelevant, because they all post-date 1998-99. *Id.* ¶¶ 133-140. "[R]etrospection alone" cannot sustain a negligent retention claim. *See Zahl v. Krupa*, 927 N.E.2d 262, 289 (Ill. App. 2d Dist. 2010). Nothing Northwestern knew *after* 1999 could have caused Simon's allegedly wrongful prosecution in 1999.

### 3.    Counts II and III Fail to State a Claim for "Respondeat Superior."

Simon pleads two counts labeled "Respondeat Superior": one for the actions of Protess

---

[7] The same is true of Simon's time-barred intentional infliction of emotional distress claim, which requires proof that defendant's conduct proximately caused the plaintiff's injury. *See Turcios v. Debruler*, 2014 IL App (2d) 130331, ¶ 36 ("A defendant's conduct must be the proximate cause of the plaintiff's emotional distress.").

(Count II) and one for the actions of Ciolino (Count III). These counts must be dismissed because Simon's underlying tort claims fail to state a claim. Moreover, "respondeat superior" is not a separate and independent cause of action. *See Farrar v. Eldibany*, No. 04 C 3371, 2004 U.S. Dist. LEXIS 20793, at *11-12 (N.D. Ill. Oct. 14, 2004). Even courts that have recognized stand-alone respondeat superior claims (erroneously, Northwestern submits), have acknowledged that the plaintiff must specify the independent torts underlying the claim. *See Saathoff v. City of Champaign*, No. 13-2253, 2014 U.S. Dist. LEXIS 89416, at *5-7 (C.D. Ill. June 6, 2014). In Counts II and III, Simon alleges that Northwestern knew of, approved, or ratified "unethical, deceitful, and/or illegal conduct" by Protess and Ciolino. *See* Compl. ¶¶ 163-64, 173-74. Those allegations do not state a claim for any tort and fall far short of satisfying the bare requirements of notice pleading, let alone the plausibility requirement under *Twombly* and *Iqbal*.

## III. Dismissal Should Be With Prejudice.

The Court has the discretion to dismiss a complaint with prejudice where repleading would be futile because of the plaintiff's inability to state a cause of action. *See Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 603 (7th Cir. 2014). In this case, the break in the chain of causation leading to Simon's prosecution based on the CCSA's independent investigation will not change, and the independence of that investigation and charging decision is plain from Simon's Complaint. In addition, Simon's tag-along claims of intentional infliction of emotional distress, negligence, and conspiracy are clearly time-barred, and the conspiracy and "respondeat superior" claims fail with the failure of the torts underlying them, however vaguely those torts are identified. *See, e.g.*, *Gibbs v. Vill. of Flossmoor*, No. 13 C 9142, 2014 U.S. Dist. LEXIS 49414, at *17 (N.D. Ill. Apr. 10, 2014) (dismissing time-barred intentional infliction of emotional distress claim with prejudice). Amendment in this case would be futile.

**CONCLUSION**

For the foregoing reasons, Northwestern respectfully requests that the Court dismiss all counts of the Complaint, with prejudice.


Dated: May 5, 2015                                              Respectfully submitted,

                                                               NORTHWESTERN UNIVERSITY


                                               By:   /s/ Terri L. Mascherin
                                                     One of Its Attorneys