# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALSTORY SIMON, ) | |
| ) | Case No. 15-cv-1433 |
| Plaintiff/Counter-Defendant, ) | |
| ) | Judge Robert M. Dow, Jr. |
| v. ) | |
| ) | |
| NORTHWESTERN UNIVERSITY, ) | |
| DAVID PROTESS, JACK P. RIMLAND, and ) | |
| ) | |
| Defendants, ) | |
| ) | |
| PAUL J. CIOLINO, ) | |
| ) | |
| Defendant/Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANITA ALVAREZ, ANDREW M. HALE, ) | |
| TERRY A. EKL, JAMES G. SOTOS, JAMES ) | |
| DELORTO, JOHN MAZZOLA, MARTIN ) | |
| PREIB, WILLIAM B. CRAWFORD, and ) | |
| WHOLE TRUTH FILMS, LLC ) | |
| ) | |
| Counter-Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alstory Simon filed suit against Defendants Northwestern University, David Protess, Paul J. Ciolino, and Jack Rimland alleging that Defendants' unethical journalistic and investigative practices led to his wrongful conviction and 15-year incarceration for a double murder that he did not commit. [See 1.] More specifically, Simon alleges that Defendants knowingly falsified evidence and disseminated that evidence to the prosecuting authorities to frame Simon for the murders. Ciolino filed a counterclaim against Simon, Anita Alvarez, Andrew M. Hale, Terry A. Ekl, James G. Sotos, James Delorto, John Mazzola, Martin Preib, William B. Crawford, and Whole Truth, LLC (collectively, "Counter-Defendants"). Before the

Court are Simon's motion to dismiss the counterclaim for lack of jurisdiction [119], Alvarez's motion to dismiss [134], and the remaining Counter-Defendants' motion to strike [122]. For the reasons set forth below, the Court grants Simon's motion to dismiss the counterclaim [119] and strikes motions [134], [122], and [142] as moot.

I.  Background

   A.  Simon's Lawsuit[1]

In February 2015, Simon filed a civil lawsuit against Protess, Ciolino, Rimland, and Northwestern University, seeking damages for their roles in his wrongful conviction and 15-year imprisonment. Simon alleges that Protess, a faculty member of Northwestern University's Medill School of Journalism, and Ciolino, a private investigator, fabricated evidence to exonerate Anthony Porter and to frame Simon for the murder of Jerry Hillard and Marilyn Green. Simon was allegedly coerced by Defendants to confess to the double murder, and he was sentenced to 52 years in prison. In 2001, Simon filed a *pro se* post-conviction petition arguing that he had been coerced into pleading guilty and that evidence of Porter's guilt had been hidden from him. Simon's post-conviction motion was denied, but it set in motion a years-long investigation that eventually led to his exoneration. In late 2005/early 2006, two witnesses recanted their statements, explaining that they provided false testimony based on promises made by Protess. In October 2013, the State's Attorney's Office announced that it would re-investigate the Hillard and Green murders. The investigation took one year and involved interviews of over 100 witnesses. On October 30, 2014, State's Attorney's Office moved to abandon the charges against Simon via a *nolle prosequi*. The Circuit Court granted the motion, vacated all charges against Simon, and released him from custody. Later that day, Cook County

---

[1] A detailed version of the facts alleged in Simon's complaint [1] is set out in the Court's previous opinion [72].

2

State's Attorney Anita Alvarez gave a press conferencing discussing her office's decision to abandon the charges against Simon.

On February 17, 2015, Simon filed a civil lawsuit against Protess, Ciolino, Rimland, and Northwestern University, seeking damages for their roles in his wrongful conviction and 15-year imprisonment. On April 16, 2016, the Court granted in part and denied in part Defendants' motions to dismiss. [72.] The Court dismissed Rimland as a Defendant in the case without prejudice and dismissed Counts IV through VIII of Simon's complaint without prejudice. The Court permitted Simon to proceed against Protess and Ciolino on Count I (malicious prosecution) and Count IX (conspiracy) and against Northwestern University on his vicarious liability theories, as articulated in Counts I, II, and III of Simon's complaint.

### B. Ciolino's Counterclaim

On September 9, 2016, Ciolino filed his second amended counter-complaint [162] against Counter-Defendants Simon, Alvarez, Hale, Ekl, Sotos, Delorto, Mazzola, Preib, Crawford, and Whole Truth, LLC, bringing state law claims of defamation (Counts I–III), false light (Count IV), intentional infliction of emotional distress (Count V), and civil conspiracy (Count VI). According to Ciolino, 2015 marked the Chicago premier of a "self-proclaimed documentary" entitled "Murder in the Park," produced and funded by Counter-Defendant Hale and his production company Counter-Defendant Whole Truth Films, LLC. [162, at ¶ 2.] Ciolino alleges that the documentary, featuring Counter-Defendants Hale, Ekl, Sotos, Delorto, Mazzola, Crawford, and Alvarez, "advances an outrageous and demonstrably false claim that with the blessing of Northwestern University, David Protess and Paul Ciolino framed [Simon] so that death row inmate Anthony Porter could become a 'poster boy' for the bid to end execution in Illinois." [*Id.*] The documentary is based largely on a book allegedly "chock full of false and

defamatory statements," entitled *Justice Perverted: How the Innocence Project at Northwestern University's Medill School of Journalism Sent an Innocent Man to Prison*, written by Counter-Defendant Crawford and funded by Counter-Defendant Hale. [*Id.* at ¶ 3.] According to the counter-complaint, the book was published on June 9, 2015. [*Id.* at ¶ 126.] Ciolino alleges that Counter-Defendant Preib, a former Chicago Police Officer and author of the blog "Crooked City: The Blog About The Wrongful Conviction Movement," has "celebrated, promoted, and expanded upon" the "false narrative" advanced by the documentary and book. [*Id.* at ¶ 4.]

Ciolino contends that each of the Counter-Defendants has "published to the public, either by spoken word or in the written form, false and defamatory statements accusing Ciolino of conspiring to frame Simon by coercing a false confession from him." [*Id.* at ¶ 5.] The counter-complaint sets forth the specific statements made by the Counter-Defendants in the documentary, the book, and the blog. [*Id.* at ¶¶ 116, 129, 140.] Ciolino further alleges that each Counter-Defendant possessed a high degree of awareness that the statements they advanced in the documentary, the book, or in Counter-Defendant Preib's blog were "probably false" and that Simon is actually guilty of the murders to which he pled guilty. [*Id.* at ¶ 8.] Ciolino alleges that the Counter-Defendants conspired to discredit, defame, and defeat Protess, Ciolino, and Northwestern University, "all as 'pay back' for their efforts and success at revealing the injustices in the Illinois criminal justice system and their work toward abolition of the death penalty. [*Id.* at ¶ 9.] He contends that the "false and defamatory statements have caused irreparable harm to [his] reputation and destroyed his career." [*Id.* at 29.] Ciolino accuses Counter-Defendants of acting "not only with reckless disregard for the truth but also with actual malice." [*Id.*]

The counter-complaint offers the following descriptions of the Counter-Defendants: Hale, Ekl, and Sotos are Simon's attorneys in this litigation; Hale was an executive producer and participant in the documentary and funded Crawford's book *Justice Perverted*; Ekl and Sotos were participants in the documentary; Delorto and Mazzola are private investigators and were participants in the documentary; Preib is a retired Police Officer and blogger; Crawford is the author of the book *Justice Perverted* and a public relations consultant who co-founded a media strategy and crisis management firm; and Whole Truth Films, LLC produced the documentary, and Ciolino alleges on information and belief that the company is owned and operated by Hale. [*Id.* at ¶¶ 3, 15–22.] Alvarez was, at all relevant times, the Cook County State's Attorney. Ciolino alleges that Alvarez made false and defamatory statements about Ciolino at the press conference following the dismissal of the charges against Simon. [*Id.* at 14, 103–106.]

Ciolino alleges that his counterclaim is a compulsory counterclaim pursuant to Federal Rule of Civil Procedure 13(a) "as it arises out of the transaction or occurrence that is the subject matter of" Simon's claims against Ciolino. [*Id.* at 10.] He argues that even if it is not a compulsory counterclaim, the Court has jurisdiction over the counterclaim because "there are identical factual and evidentiary issues between Simon's claim and Ciolino's counterclaim." Simon moved to dismiss Ciolino's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Ciolino's filing is a permissive counterclaim under Rule 13(b) over which the Court should decline to exercise supplemental jurisdiction, not a compulsory counterclaim under Rule 13(a). [119.] Alvarez moved to dismiss Ciolino's counterclaim pursuant to Rule 12(b)(6), arguing that absolute immunity bars his claims. [134.] The remaining Counter-Defendants moved to strike Ciolino's counterclaim pursuant to Rule 14(a)(4). [122.] The Court will focus on Simon's motion [119], which is dispositive.

5

## II.     Legal Standard

A Rule 12(b)(1) motion seeks dismissal of an action for lack of subject matter jurisdiction. The party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). Federal Rule of Civil Procedure 13(a)[2] defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a); see also *Pace v. Timmerman's Ranch and Saddle Shop Inc.*, 795 F.3d 748, 752 (7th Cir. 2015). Such counterclaims are compulsory in the sense that they are lost if not presented. See *Channell v. Citicorp Nat. Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996). No independent basis of federal jurisdiction is needed for a compulsory counterclaim, as long as the court has jurisdiction over the plaintiff's original claim. See, e.g., *Moore v. New York Cotton Exchange*, 270 U.S. 593, 609 (1926); 3 Moore's Federal Practice P 13.15(1) (2d ed. 1974).

A counterclaim that arises from a separate transaction or occurrence is permissive and governed by Rule 13(b).[3] *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 396 (7th Cir. 1986). A permissive counterclaim requires an independent basis of federal jurisdiction, as it is outside a court's supplemental jurisdiction. *Oak Park Trust & Sav. Bank v. Therkildsen*, 209 F.3d 648, 651 (7th Cir. 2000) (noting that 28 U.S.C. § 1367(a) covers only "claims that are so

---

[2] Rule 13(a) states:

> (a) Compulsory Counterclaim.
>     (1) In General. A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>         (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>         (B) does not require adding another party over whom the court cannot acquire jurisdiction.

[3] Rule 13(b) states: "(b) Permissive Counterclaim. A pleading may state as a counterclaim against an opposing party any claim that is not compulsory."

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

The Seventh Circuit has developed a "logical relationship" test to determine whether the "transaction or occurrence" is the same for purposes of Rule 13(a). *Burlington N. R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990). A court must "examine carefully the factual allegations underlying each claim to determine if the logical relationship test is met." *Id.* Even if two claims are "technically related," the relationship between the claims may be insufficient to satisfy Rule 13(a) if the two claims are based on different theories and would raise different legal and factual issues. *Id.* (describing *Gildorn Sav. Ass'n*, 804 F.2d at 396–97). This approach is "necessarily flexible." *Bd. of Regents of Univ. Of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 470 (7th Cir. 2011). The Seventh Circuit has explained that "[t]here is 'no formalistic test' to determine whether suits are logically related" and that "[a] court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Id.* The approach focuses on the facts of the case, rather than on the technical elements of the claims in question. *Bd. of Regents*, 653 F.3d at 470. The Seventh Circuit's formulation of the "logical relationship" test has been described as a "narrow" one, that perhaps asks little more than whether the claims would be barred by res judicata. *Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc.*, 31 F.3d 445, 448 (7th Cir. 1994).

### III.  Analysis

Simon argues that Ciolino's counterclaim is not a compulsory counterclaim under Rule 13(a) because it does not arise out of the same transaction or occurrence that is the subject matter of Simon's malicious prosecution action. The Court agrees. Simon's lawsuit arises from

7

Ciolino, Protess, and Northwestern's alleged conduct in 1998 and 1999 when they investigated Simon, whereas Ciolino's counterclaim stems from statements the Counter-Defendants allegedly made in the documentary and the book, which Ciolino alleges were published in 2015, more than fifteen years later. Although the two claims may share certain common elements in their backstories and there are certain facts that necessarily overlap between the two claims, as Simon acknowledges [see 118, at 7, 8], that is not sufficient to fulfill the Seventh Circuit's logical relationship test for Rule 13(a). See *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1291 (7th Cir. 1980), rev'd on other grounds, 452 U.S. 205 (1981) (although claims arguably arose out of the same "transaction"—a loan agreement—the relationship between the claims lacked the necessary "logical relationship" to make the counterclaim compulsory because that claims raised different legal and factual issues); *Gildorn Sav. Ass'n*, 804 F.3d at 397 (Rule 13(a) not implicated where claims alleged different legal theories and related to "separate and distinct contractual arrangements and verbal assurances" and where the transaction at issue in the counterclaim "is significantly more complex and thus will involve more documentary and testimonial evidence" than the original claim).

Ciolino argues that Simon's allegations concerning Ciolino's conduct form the basis for his malicious prosecution claim and that these same statements, which Simon published in the documentary, also form the basis of Ciolino's defamation claim. He contends that "the truth of whether Ciolino forced a confession from Simon is the central issue of fact in both Simon's malicious prosecution claim and Ciolino's defamation claim." Thus, in Ciolino's view, the claims are "inextricably and logically connected." [129, at 8.]

The Court is not convinced. "It isn't true that any counterclaim that ultimately arises out of the same transaction or occurrence as the other side's claim must be filed or lost. That could

8

allow an infinite regress." *Greene v. U.S. Dep't of Educ.*, 770 F.3d 667, 669 (7th Cir. 2014). Although there obviously is some connection between Simon's claim of malicious prosecution and Ciolino's counterclaim alleging that Simon and the other Counter-Defendants defamed him by discussing Ciolino's alleged conduct during the investigation, any logical relationship between the claims is attenuated at best and not sound enough for purposes of Rule 13(a). In other words, the two claims are "technically related," but the relationship between the claims is insufficient to satisfy Rule 13(a) because the two claims would raise different legal and factual issues. See *Burlington N. R. Co.*, 907 F.2d at 711; *Gildorn Sav. Ass'n*, 804 F.2d at 396–97. The gravamen of Simon's complaint is that Ciolino, Protess, and Northwestern conspired to frame Simon to show that Porter was wrongfully convicted and that they fabricated multiple pieces of false evidence against Simon. Determination of the validity of Simon's claim will involve ascertaining what happened during the investigation in 1998 and 1999, what Protess and Ciolino knew during the investigation, whether the Protess and Ciolino fabricated evidence and acted with malice, and whether they commenced the proceedings against Simon without probable cause.

In contrast, discovery would be vastly different and potentially much broader for Ciolino's counterclaims alleging defamation, false light, intentional infliction of emotional distress, and civil conspiracy, as a different set of underlying facts would have to be elucidated. See *Bd. of Regents*, 653 F.3d at 470 (the logical relationship test focuses on the facts of the case). The focus would be on what was said in the documentary and the book in 2015 and the many Counter-Defendants who are not parties to Simon's original claim against Ciolino. Additionally, for Ciolino's counterclaims, there exist a host of potential questions involving issues such as publication, privilege, the defamatory nature of communications, their character as statements of

fact or of opinion, Ciolino's potential status as public figure, which are not relevant to Simon's claim of malicious prosecution. See *Harris v. Steinem*, 571 F.2d 119, 123–124 (2d Cir. 1978) (where original claim alleged violation of securities law and counterclaim alleged libel based on filing of complaint and publicity surrounding suit, counterclaim was not compulsory because the claims would focus on different factual and legal issues); *Howell v. Town of Fairfield*, 123 F.R.D. 429, 430–31 (D. Conn. 1988) (holding that officers' defamation counterclaim, in § 1983 action from alleged false arrest, was a permissive counterclaim that did not arise out of same transaction as plaintiff's claim and threatened to complicate and confuse proceeding by interjecting new issues). For these reasons, the connection between Simon's claim of malicious prosecution and Ciolino's counterclaim are "so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any, of the advantages envisioned in Rule 13(a)." *Valencia*, 617 F.2d at 1291. Compelling a single trial here would "unduly and unnecessarily complicated the litigation. Judicial economy would not be well served in this case as these two actions are based on separate transactions." See *Gilldorn Sav. Ass'n*, 804 F.2d at 397 (citation and internal quotation marks omitted).

Thus, although Ciolino's argument that the claims are logically related seems attractive when viewing the claims at a very high level of abstraction, a closer look shows that the relationship is insufficient to satisfy Rule 13(a) when taking into consideration the totality of the claims, the legal basis for recovery, and the respective factual backgrounds. See *Alberts v. Wickes Lumber Co.*, 1995 U.S. Dist. LEXIS 919, at *19 (N.D. Ill. 1995) (counterclaim was dismissed as a permissive counterclaim where plaintiff alleged violations of Title VII and defendant manager's counterclaim alleged defamation from plaintiff's letters regarding the alleged harassment to former employer's management); *Bose Corp. v. Consumers Union of U.S.,*

*Inc.*, 384 F. Supp. 600, 602 (D. Mass. 1974), certified question answered, 326 N.E.2d 8 (1975) (holding that where original complaint alleged unfair competition, defendant's counterclaim for defamation based on original complaint, press release, and interview given by plaintiff was a permissive counterclaim); *Williams v. Robinson*, 1 F.R.D. 211, 213 (D.D.C. 1940) (where defendant sought divorce and accused wife of committing adultery with third-party, third-party's claims for libel and slander based on defendant's accusations of adultery were not compulsory counter-claims).

Ciolino relies on *Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988), but this Fourth Circuit case is not binding on the Court and is also distinguishable from the case at hand. In *Painter*, the plaintiff brought a § 1983 excessive force claim against the arresting officer, and the officer counterclaimed asserting that the plaintiff had slandered and libeled him by filing a fabricated complaint about the circumstances of her arrest with the town council and by distributing her complaint to the local news media. *Id.* at 330. The Fourth Circuit held that the officer's counterclaim was compulsory because of the evidentiary similarity of the claims. *Id.* at 331. In *Painter*, both claims would involve "witness testimony directed toward the same critical event"—plaintiff's arrest." *Id.* As discussed above, the evidentiary similarity between Simon's malicious prosecution claim and Ciolino's counterclaim is not as strong because of the complexity of the claims, including the temporal separation of fifteen years between Ciolino's investigation and the release of the documentary and book, and the differences in the parties involved in each claim.

In sum, Ciolino's counterclaim is not compulsory and the Court does not have supplemental jurisdiction because Ciolino's counterclaim does not arise out of the same transaction or occurrence as Simon's malicious prosecution claim. No independent basis for

jurisdiction exists, as Ciolino and all Counter-Defendants are Illinois citizens, [see 81, ¶ 12–22], and the counter-complaint alleges violations of state law. The Court grants Simon's motion [119] to dismiss Ciolino's counterclaim for lack of subject matter jurisdiction. The Court notes that Ciolino will not be left without a forum for his claims, as he can bring these state law claims in state court. See *Hartford Acc. & Indem. Co. v. Sullivan*, 846 F.2d 377, 380–81 (7th Cir. 1988) ("Ancillary jurisdiction should be narrowly interpreted, in recognition that what is at stake is the sovereign right of the states to confine * * * to their own courts the litigation of issues of state law in disputes between their own citizens. The doctrine * * * should be reserved for cases where failure to exercise federal jurisdiction would prevent a party from obtaining justice. * * * Having to bring parallel suits may be a hardship, but it is not an injustice.").

Finally, even assuming the Court could exercise supplemental jurisdiction over Ciolino's counterclaim, the Court would decline to do so. 28 U.S.C. 1367(c) permits a district court to decline to exercise supplemental jurisdiction over a claim if it substantially predominates over the original claim—the malicious prosecution claim, in this case—or in exceptional circumstances in which there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(2), (4); see also *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614–15 (7th Cir. 2007). The "power [to adjudicate state law claims] need not be exercised in every case in which it is found to exist. [Rather] [i]t has consistently been recognized that pendent [now supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Seventh Circuit has "acknowledge[d] the broad discretion of district judges in making judgments concerning the retention of supplemental claims." *Van Harken v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir. 1997).

Here, the Court would decline to exercise supplemental jurisdiction because the issues in the counterclaim would predominate over Simon's malicious prosecution claim. Ciolino's counterclaim involves different facts and many more Counter-Defendants and actors than Simon's malicious prosecution counterclaim, and the two claims concern different substantive areas of law. See *Gibbs*, 383 U.S. at 726–27 ("if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals"); *White v. City of Chicago*, 2015 WL 225395, at *17–*18 (N.D. Ill. Jan 15, 2015) (declining to exercise supplemental jurisdiction over state law claim that involved different facts, different state law actors, and concerned different substantive law than the federal claim and would thus predominate over the federal claim). Additionally, since Simon's attorneys in this litigation are named as Counter-Defendants in Ciolino's counterclaim, this would further complicate the litigation and has the potential to unfairly prejudice Simon.

## IV. Conclusion

For the foregoing reasons, the Court grants Simon's motion to dismiss the counterclaim for lack of subject matter jurisdiction [119] and strikes motions [134], [122], and [142] as moot.

Date: January 3, 2017

Robert M. Dow, Jr.
United States District Judge

13