# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALSTORY SIMON, ) | |
| ) | Case No. 15-cv-1433 |
| Plaintiff, ) | |
| ) | Judge Robert M. Dow, Jr. |
| NORTHWESTERN UNIVERSITY, ) | |
| DAVID PROTESS, PAUL J. CIOLINO, ) | |
| and JACK P. RIMLAND, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alstory Simon alleges that Defendants' unethical journalistic and investigative practices led to his wrongful conviction and 15-year incarceration for a double murder that he did not commit. More specifically, Plaintiff alleges that Defendants David Protess, Paul J. Ciolino, Jack P. Rimland, and Northwestern University knowingly falsified evidence and disseminated that evidence to the prosecuting authorities to frame Plaintiff for the murders. On April 16, 2016, the Court granted in part and denied in part Defendants' motions to dismiss. [72.] The Court dismissed Rimland as a Defendant without prejudice and dismissed Counts IV through VIII of Simon's complaint without prejudice. The Court permitted Simon to proceed against Protess and Ciolino on Count I (malicious prosecution) and Count IX (conspiracy) and against Northwestern University on his vicarious liability theories, as articulated in Counts I, II, and III of Simon's complaint.

Currently before the Court are Defendant Ciolino's 12(c) motion for judgment on the pleadings [82] and Defendant Ciolino's motion to supplement the aforementioned motion [193]. For the reasons set forth below, Defendant Ciolino's motion to supplement [193] is granted, and Defendant Ciolino's motion for judgment on the pleadings [82] is denied. The stay on oral

discovery is lifted.  Defendant Protess's motion [195] to stay depositions pending a ruling on [82] is stricken as moot.  The remaining pending discovery motions [128], [145], and [194] are referred to Magistrate Judge Weisman in accordance with the Court's August 17, 2016 minute order [154].  This case is set for further status hearing on January 23, 2017 at 10:30 a.m.  Counsel should go to the status hearing with Magistrate Judge Weisman first and then proceed to Judge Dow's courtroom.

I.      Background[1]

Plaintiff Simon alleges that Defendant Protess, a faculty member of Northwestern University's Medill School of Journalism, and Defendant Ciolino, a private investigator, have a history of using ethically-questionable investigatory tactics in connection with wrongful conviction cases.  Plaintiff claims that Defendant Northwestern became aware of Protess's and Ciolino's unethical behavior as early as 1997, but, motivated by the "prestige, recognition and monetary benefits" that came from Protess's work, continued to endorse his program.  According to Plaintiff, in 1998, Protess and Ciolino and their team of journalism students began investigating the 1983 conviction of Anthony Porter for the murder of Jerry Hillard and Marilyn Green.  Protess and Ciolino allegedly "formulated a plan to fabricate evidence that would exonerate Porter for the murders."  [1, at ¶ 80.]  Their primary tactic was allegedly to develop an alternate suspect: Plaintiff, Alstory Simon.  As Plaintiff puts it, over the next seven weeks, "Protess and Ciolino, with the participation of Protess's students, knowingly manufactured and fabricated four pieces of false evidence which they contended dismantled the case against Porter and proved that Simon committed the murders."  [1, at ¶ 84.]

---

[1] A detailed version of the facts is set out in the Court's previous opinion [72].

First, Defendants allegedly coerced eyewitness William Taylor into signing two affidavits essentially recanting his prior incriminating statements against Porter. The second and third pieces of false evidence were allegedly coerced statements from Illinois inmate Walter Jackson and his aunt (and Plaintiff's estranged wife), Inez Jackson Simon. The fourth piece of falsified evidence was Plaintiff's allegedly false confession for the murders. According to Plaintiff, in the early morning of February 3, 1999, Ciolino impersonated a police officer and "bull rushed" Plaintiff's home with another investigator, guns drawn. Plaintiff contends that Ciolino illegally detained him and "through the use of threats, fabricated evidence, false statements, promises, money, and other illegal tactics," obtained the false confession. [1, ¶ 93.] Defendants' release of Plaintiff's taped confession to CBS television started what Plaintiff refers to as a "national media 'frenzy.'" Ciolino arranged for his friend, attorney (and former defendant in this lawsuit) Jack Rimland to provide legal representation to Plaintiff free of charge, but Plaintiff contends that Rimland was in on the conspiracy. Within a matter of days, Anthony Porter was released from prison, and Plaintiff was arrested and charged with the double murder.

In February and March 1999, the Cook County State's Attorney's Office conducted a grand jury investigation of the murders. Protess, Ciolino and several Medill students testified before the grand jury, advancing their allegedly fabricated evidence to incriminate Plaintiff. "[F]our other independent and unbiased witnesses" also testified, three of whom identified Anthony Porter at the scene of the crime (one stating affirmatively that "it was Anthony Porter who shot the victims"), and none of whom identified or implicated Plaintiff. [1, ¶¶ 103–05.] These four witnesses were prominently referenced in the police reports from the original 1982 murder investigation, but Plaintiff contends that Protess's team made no effort to locate and/or interview any of them. Ultimately, "[t]he grand jury was disbanded without being asked to

3

return an indictment against [Plaintiff]." [1, ¶ 109.] According to Plaintiff, a new grand jury was empaneled and "on March 24, 1999, based solely on the false evidence manufactured by the Northwestern Team, [Plaintiff] was indicted for the murders." [1, ¶ 110.] On September 7, 1999, at Rimland's alleged insistence, Plaintiff pled guilty to the murder of Green and the voluntary manslaughter of Hillard, and he was sentenced to 52 years in prison.

In 2001, Plaintiff filed a *pro se* post-conviction petition arguing that he had been coerced into pleading guilty and that evidence of Porter's guilt had been hidden from him. Plaintiff's post-conviction motion was denied, but it set in motion a years-long investigation that eventually led to Plaintiff's exoneration. In late 2005/early 2006, both Walter Jackson and Inez Jackson Simon recanted their statements, explaining that they provided false testimony due to promises made by Protess. In October 2013, the State's Attorney's Office announced that it would re-investigate the Hillard and Green murders. The investigation took one year and involved interviews of over 100 witnesses. On October 30, 2014, State's Attorney's Office moved to abandon the charges against Simon via a *nolle prosequi*. The Circuit Court granted the motion, vacated all charges against Plaintiff, and released him from custody. The *nolle prosequi* order does not indicate the reasons for its entry. Later that day, Cook County State's Attorney Anita Alvarez gave a press conferencing discussing her office's decision to abandon the charges against Simon.

On February 17, 2015, Plaintiff filed this civil lawsuit against Protess, Ciolino, Rimland, and Northwestern University, seeking damages for their roles in his wrongful conviction and 15-year imprisonment. On April 16, 2016, the Court granted in part and denied in part Defendants' motions to dismiss. [72.] The Court dismissed Rimland as a Defendant without prejudice and dismissed Counts IV through VIII of Simon's complaint without prejudice as time barred. The

Court permitted Simon to proceed against Protess and Ciolino on Count I (malicious prosecution) and Count IX (conspiracy) and against Northwestern University on his vicarious liability theories, as articulated in Counts I, II, and III of Simon's complaint. On May 2, 2015, Defendant Ciolino moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). He later moved to supplement this motion with a video of Alvarez's press conference following the dismissal of Simon's charges and transcripts from the court hearing during which the court granted the prosecutor's motion to vacate the charges against Simon.

## II. Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." If "matters outside the pleadings are presented to and not excluded by the court," the Rule 12(c) motion "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016).

**III.    Analysis**

Ciolino argues that the Court should dismiss Simon's claim for malicious prosecution because Simon cannot demonstrate that his criminal proceedings terminated in his favor.  To succeed on a claim of malicious prosecution under Illinois law, a plaintiff must demonstrate: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages."  *Szczesniak v. CJC Auto Parts, Inc.*, 21 N.E.3d 486, 490 (Ill. App. Ct. 2014).  Illinois has adopted the majority rule that "a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi*, unless the abandonment is for reasons not indicative of the innocence of the accused."  *Swick v. Liautaud*, 662 N.E.2d 1238, 1242–43 (Ill. 1996); see also *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001).  The Illinois Supreme Court has stated:

> The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial.

*Id.* at 1243 (citing Restatement (Second) of Torts §§ 660, 661 (1977)).  The plaintiff has the burden of proving favorable termination.  *Id.*  The plaintiff meets his burden of proof "[o]nly when [he] establishes that the *nolle prosequi* was entered for reasons consistent with his innocence."  *Id.*  "The circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution."  *Id.*  "A bare nolle prose without more is not indicative of innocence."  *Washington v. Summervile*, 127 F.3d 552, 558 (7th Cir. 1997).

6

The Seventh Circuit has criticized the *Swick* test, noting that "Illinois has not taken the simplifying step of treating all favorable dismissals the same, and the ambiguous formulation in *Swick* creates potential problems."[2] *Deng v. Sears, Roebuck and Co.*, 552 F.3d 574, 576 (7th Cir. 2009). However, "a federal court cannot take Ockham's Razor and slice *Swick*'s approach out of Illinois law. *Swick* takes sides on a subject that has divided the states; [federal courts] must respect its choice." *Id.* at 577.

Ciolino argues that because the *nolle prosequi* order vacating Simon's conviction does not indicate the reasons for its entry and because of Alvarez's comments during the press conference, Simon cannot demonstrate favorable termination. Ciolino focuses on the following statements that Alvarez made during the press conference:

- "[Simon] made more than one incriminating statement to this crime."
- "He had made arguably inculpatory statements in the year following his guilty plea—in a television news interview and in letters that he wrote to Mr. Rimland, another attorney, and a letter than he wrote to Anthony Porter himself."
- "[T]he bottom line is that the investigation conducted by Protess and private investigator Ciolino, as well as the subsequent legal representation of Mr. Simon, were so flawed that it's clear that the constitutional rights of Mr. Simon were not scrupulously protected as our law requires. This conviction therefore cannot stand."
- "I can't definitely tell you that it was Porter that did this, or it was Simon that did this. I'm just saying based on the totality of the circumstances, based on the way I think Mr. Simon was coerced, then in the interest of justice, this is the right thing to do."

Ciolino argues that Alvarez's statements indicate that the decision to *nolle prosequi* the charges had "*nothing* to do with Simon's innocence or guilt." [83, at 5.] In Ciolino's view, Alvarez

---

[2] The Seventh Circuit continued:

> How can a judge or jury tell whether the dismissal is "indicative of the innocence of the accused"? A prosecutor may dismiss without giving reasons * * * and a statement in open court may not be comprehensive or tailored to the standards of later tort litigation. * * * It is hard to believe that Illinois really wants its criminal prosecutors subjected to [an intrusion on the prosecutorial function] or that a federal district judge should be opining on an Assistant State's Attorney's competence and the reasons for an exercise of prosecutorial discretion.

*Id.* at 576–77.

refused to draw any inference about Simon's guilt or innocence, and thus Simon cannot satisfy his burden to demonstrate favorable termination.

The Court disagrees. At the outset, the Court determines that none of the "particular contra-indications" discussed by the Illinois Supreme Court in *Swick*—(1) compromise with the accused, (2) misconduct by the accused designed to avert a trial, (3) mercy requested by the accused, (4) the reinstitution of charges following the dismissal, or (5) impossibility or impracticability of bringing the accused to trial—occurred here. Although there may be other reasons for a *nolle prosequi* that are not indicative of innocence, see *Deng*, 552 F.3d at 576, Ciolino has not shown that based on Alvarez's statements at the press conference, no reasonable jury could find that the *nolle prosequi* was entered for reasons consistent with Simon's innocence.

More importantly, taking Alvarez's statements at the press conference as a whole, there is at least a genuine issue of material fact as to whether the *nolle prosequi* was entered for reasons indicative of Simon's innocence. Alvarez made additional statements during the press conference that could support a reasonable inference "that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Swick*, 662 N.E.2d at 1243. At the start of the press conference, Alvarez stated: "Even though Mr. Simon is due to be released in less than three years, justice compels that I take action today." According to Alvarez, "[t]he decision to vacate these convictions comes as a result of a year-long comprehensive investigation into the facts of this case conducted by my Conviction Integrity Unit." She explained that the Conviction Integrity Unit works to investigate and dismiss cases involving "questionable or wrongful convictions." Alvarez called Simon's case a challenging and complicated reinvestigation,

explaining that many witnesses had changed their stories on several occasions and that several important figures had passed away.

She continued: "One of the most significant factors that led me to today's decision was the fact that the original reinvestigation into this case was conducted by [Protess, Ciolino] and a team of young journalism students. * * * [T]his investigation by David Protess and his team involved a series of alarming tactics that were not only coercive and absolutely unacceptable by law enforcement standards, they were potentially in violation of Mr. Simon's constitutionally protected rights." Alvarez then discussed her concern about the fact that Simon's attorney, Rimland, was contacted directly by Ciolino to arrange legal representation, raising issues of conflict of interest and effectiveness of counsel.

After noting that Simon had made several arguably inculpatory statements after guilty plea, Alvarez stated:

> Inculpatory statements tend to be compelling evidence * * * [but] the original confession made by Alstory Simon and the coercive tactics that were employed by Investigator Ciolino have tainted this case from the outset and brought into doubt the credibility of many important factors. At the end of the day and in the best interest of justice, we can reach no other conclusion but that the investigation of this case has been so deeply corroded and corrupted that we can no longer maintain the legitimacy of this conviction.

In sum, Alvarez made some statements that could be interpreted as an indication that Simon's convictions were terminated for reasons other than innocence. For example, she discussed his inculpatory statements and the fact that important witnesses has passed away. However, Alvarez also made other statements—such as her statements criticizing the investigation and the coercive tactics used by Ciolino and Protess that in her view, tainted the case from the outset—that could reasonably compel an inference that there existed "a lack of reasonable grounds to pursue the criminal prosecution." *Swick*, 662 N.E.2d at 1243. Thus,

9

especially in light of the Seventh Circuit's description of the *Swick* test as "ambiguous," see *Deng*, 552 F.3d at 576, there is at a minimum a genuine issue of material fact as to whether the *nolle prosequi* order in this case is indicative of innocence. See *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 927 (N.D. Ill. 2010).

Additionally, Alvarez's statements at the press conference may not be the most reliable source of the prosecutors' reasoning underlying the *nolle prosequi*, as a State's Attorney may not want to make public all of the rationales behind an exercise of prosecutorial discretion, either for law enforcement reasons, political reasons, or both. Further, these statements at the press conference could be easily rebutted by other evidence of the context surrounding the *nolle prosequi* order, which may be elucidated during discovery. In conclusion, a reasonable jury could find that the State terminated the proceedings against Simon via a *nolle prosequi* because of reasons indicative of Simon's innocence and thus the proceeding terminated in Simon's favor. Ciolino's motion [82] for judgment on the pleadings, which the Court converted into a motion for summary judgment, is denied.

## IV. Conclusion

For the foregoing reasons, Defendant Ciolino's motion to supplement [193] is granted, and Defendant Ciolino's motion for judgment on the pleadings [82] is denied. The stay on oral discovery is lifted. Defendant Protess's motion [195] to stay depositions pending a ruling on [82] is stricken as moot. The remaining pending motions [128], [145], and [194] are referred to Magistrate Judge Weisman in accordance with the Court's August 17, 2016 minute order [154]. This case is set for further status hearing on January 23, 2017 at 10:30 a.m. Counsel should go to

the status hearing with Magistrate Judge Weisman first and then proceed to Judge Dow's courtroom.

Date: January 3, 2017

_____
Robert M. Dow, Jr.
United States District Judge