UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALSTORY SIMON, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     vs. | ) | Case No. 1:15-CV-1433 |
| | ) | |
| NORTHWESTERN UNIVERSITY, DAVID | ) | Judge Robert M. Dow Jr. |
| PROTESS, PAUL J. CIOLINO | ) | |
| | ) | Magistrate Judge M. David Weisman |
| | ) | |
|     *Defendants* | ) | |

## MEMORANDUM OPINION AND ORDER

### I. Introduction:

Pursuant to Federal Rule of Civil Procedure 45(d), Plaintiff has moved to quash Defendant's subpoena for fifteen years' worth of phone call recordings made while Plaintiff was incarcerated by the Illinois Department of Corrections (hereinafter "IDOC") on the grounds the recordings would give the Defendant access to privileged attorney-client communications and communications irrelevant to this litigation. (Mot. Quash Def. Ciolino's Subpoena, ECF No. 145 at 1.) Defendant has responded that the recordings contain crucial evidence necessary to defend the pending claims against him. (Def. Ciolino's Resp. Pl.'s Mot., ECF No. 173 at 2.) The underlying action involves multiple claims and multiple parties. We highlight only the most germane details below:

1

## II. Factual Background

Plaintiff Alstory Simon maintains he was incarcerated for over a decade and a half for a double murder he did not commit. (Compl., ECF No. 1 at 1.) Simon contends a Northwestern University investigative journalism class framed him for the murders to secure the release of the true killer. (*Id.*) Simon sues Defendant Ciolino, who Simon alleges was an adjunct professor hired as an investigator on the case by Northwestern, for malicious prosecution among other causes of action. (*Id.* at 30.)

Northwestern University's Medill School of Journalism offers a course in investigative journalism. (*Id*. at 1.) Defendant Ciolino taught students enrolled in the course investigatory techniques. (*Id*. at 4.) Students, armed with their newly-acquired investigatory skills, conducted criminal investigations into wrongfully-convicted felons in the pursuit of exoneration. (*Id*. at 6.) The class was successful in securing the release of a number of wrongfully-convicted defendants. (*Id*. at 6.) Northwestern and the investigative journalism course were lauded for their work: each release of an incarcerated individual bestowed prestige and international media attention upon the school. (*Id*. at 6 & 9.)

After a series of successful investigations, the investigative journalism class began investigating the case of Anthony Porter, a man convicted of a double-murder. (*Id*. at 10-11.) Defendant was hired as an investigator on the case to help prepare the students to conduct interviews in low-income neighborhoods, prisons, and jails. (*Id*. at 12.) To successfully claim Porter's innocence, Plaintiff asserts that Ciolino manufactured evidence and compelled false confessions to invent an alternative suspect. (*Id*. at 15.) Simon's complaint is rife with descriptions of investigatory practices that are deceptive at best; however, the veracity of these

2

allegations is not before the court. What is relevant today is that at the conclusion of the investigation, Porter was exonerated and Plaintiff was convicted for the very same double-murder. (*Id*. at 23.) Simon subsequently served fifteen years in prison until the charges against him were vacated. (*Id*. at 25.) At the end of this truly unfortunate saga, two people were the victims of a murder committed by one man. Two different men served substantial amounts of time incarcerated for the same murders, although only one man committed the murder. Both men who served time were later released and effectively exonerated for the crime. It is truly difficult, almost to the point of impossibility, to find any silver lining in this set of circumstances.

### III. Procedural Background

Defendant Ciolino issued a subpoena to IDOC for all non-privileged audio tapes of recorded phone calls between Alstory Simon and non-incarcerated individuals during the period of time in which he was incarcerated. While the subpoena commanded additional information, such as his mail and visitor logs, Simon moves to quash the subpoena only with respect to the recorded phone calls. (Mot. Quash Def. Ciolino's Subpoena, ECF No. 145 at 1.) Defendant surmises the recorded phone calls will reveal the allegations against him are false and thus, argues the recordings contain necessary evidence to defend the pending claims against him. (Def. Ciolino's Resp. Pl.'s Mot., ECF No. 173 at 2.) Simon contends that while he was incarcerated, his only method of speaking with loved ones was via phone calls on IDOC's monitored lines; he states that the release of these most intimate conversations would amount to a violation of his right to privacy. (Mot. Quash Def. Ciolino's Subpoena, ECF No. 145 at 3-4.) Plaintiff also states that some of these phone calls include conversations between him and his attorney's

3

investigators that are protected by the attorney-client privilege. IDOC has not filed a motion to quash. (*Id*. at 4.)

**III. Legal Standard**

Under Federal Rule of Civil Procedure 45(a), a party may issue a subpoena to command production of documents or other tangible material in a person's possession or control. Fed. R. Civ. P. 45(a). A district court must quash or modify a subpoena that "(1) 'fails to allow a reasonable time for compliance,' (2) requires a nonparty to travel more than 100 miles, (3) 'requires disclosure of privileged or other protected matter, if no exception or waiver applies,' or (4) 'subjects a person to undue burden.'" *TCYK, LLC v. Doe*, No. 13 C 3845, 2013 U.S. Dist. LEXIS 145722, at *5 (N.D. Ill. Oct. 9, 2013) (quoting Fed. R. Civ. P. 45(c)(3)(A)). In determining whether a subpoena "imposes an undue burden, the court asks whether the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *The Bicycle Peddler, LLC v. Does 1-99*, No 13 C 2375, 2013 WL 4080196, at *2 (Aug. 13, 2013) (quotations omitted). "As with other discovery issues, whether to grant a motion to quash is within the sound discretion of the district court." *Sullivan v. Gurtner Plumbing, Inc.*, No. 11 C 6261, 2012 WL 896159, at *1 (N.D. Ill. Mar. 13, 2012).

A party has standing to quash a subpoena issued by another party to the litigation and directed to a non-party in two instances: if the movant has a claim of privilege attached to the information sought or the subpoena implicates the movant's privacy interests. *Hard Drive Prods. v. Doe*, No. 11 C 9062, 2012 U.S. Dist. LEXIS 82927, at *9 (N.D. Ill. June 14, 2012) ("Generally, a party lacks standing to quash a subpoena issued to a nonparty unless the party has a claim of privilege attached to the information sought or unless it implicates a party's privacy

4

interest."); *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 1545, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012). "Courts have found standing . . . even where the Movant's privacy interest is minimal at best." *HTG Capital Partners, LLC v. Doe*, No. 15 C 02129, 2015 U.S. Dist. LEXIS 126358, at *9 (N.D. Ill. Sept. 22, 2015) (citing *Sunlust Pictures*, 2012 U.S. Dist. LEXIS 121368, at *2). The party seeking to quash the subpoena has the burden of demonstrating that the information or documents sought are either privileged or implicate a privacy interest. *See Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 543 (N.D. Ind. 1991) ("The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant.")

**IV. Discussion**

**A. Simon's Privacy Interest**

First, Simon moves to quash the subpoena on the grounds the subpoena infringes on his privacy interests. The court finds that Simon has the minimal privacy interest necessary to challenge the subpoena. The production of every single phone call over the fifteen years Simon was incarcerated undoubtedly will yield details unrelated to the instant litigation. This court doubts, for example, Simon anticipated his remarks to a friend about the weather, slights uttered in a heated lover's quarrel, or any unrelated conversation ranging from the most benign topics (the former) to the most intimate (the later) would find its way as an exhibit in this lawsuit. Accordingly, Simon has standing to move to quash the subpoena.

We must now decide whether to quash the subpoena in its entirety, or otherwise modify the scope of the subpoena. In determining whether to quash the subpoena we must balance the burden of compliance against the benefit of production of the material sought by it. *Bicycle*

*Peddler*, 2013 WL 4080196, at *2. *See also Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004).

Both parties rely heavily on the opinion in *Coleman v. City of Peoria*, No. 15 C 1100, 2016 WL 3974005 (C.D. Ill. July 22, 2016) in their motions. In *Coleman*, plaintiff sued police officers and detectives for violation of his constitutional rights after he was wrongfully incarcerated. *Id*. at *5. The defendants issued a subpoena to correctional facilities operated by IDOC for recordings of plaintiff's and plaintiff's cellmate's (hereinafter "Holland") telephone calls made while the plaintiff was incarcerated. *Id*. at *1. Plaintiff and Holland moved to quash the subpoenas on the grounds production of the calls would interfere with their right to privacy and would result in the production of unrelated phone calls. *Id*. at *10.

In *Coleman*, the defendants sought phone call recordings relating to the witnesses of the underlying crime. *Id*. In their subpoena, defendants individually listed the names of each person whose calls they believed would contain pertinent information. *Id*. at 2. Two of the individuals identified in the subpoena had been arrested at the scene of the crime; all of the individuals identified in the subpoena were potential witnesses who were identified as persons who testified to their involvement in the crime in previous trial proceedings. *Id*. at *2-3. Deposition testimony taken during discovery indicated that Plaintiff conducted telephone conversations with the individuals identified in the subpoena, via three-way phone calls, and on Holland's (the plaintiff's cellmate) phone account. *Id*. at *5-7. Defendants argued they were entitled to discover the substance of the phone calls with the named individuals. *Id*. *7. Further, defendants argued they had no way to narrow the subpoena to specific recipients because Plaintiff made

6

calls via third parties and on Holland's account. *Id*. Similar to the case before this court, IDOC did not file a motion to quash the subpoena. *Id*.

As an initial matter, the *Coleman* court stated that the plaintiff had standing to quash the subpoena. The court explained that the plaintiff might have anticipated law enforcement agents would have access to the recordings, but he would not have reasonably expected that other parties would have access to them. *Id*. at *3. The court thus concluded that the plaintiff had the minimal privacy interest required to establish standing. The court, however, found that the plaintiff failed to demonstrate the higher burden required to quash the subpoena. *Id*. The court reasoned that the plaintiff had less of a privacy interest than a private citizen because he knew his phone calls were being recorded. *Id*. at *10. On the other hand, the court found that the recorded calls contained the "most accurate information available about the content of [the] calls" and that "[t]he relevant calls [could not] be identified without listening to the recordings." *Id*. In light of the foregoing considerations, the plaintiff's privacy interest (lessened because he was in custody and his phone calls were openly and notoriously recorded) was insufficient to quash the subpoena. *Id*.

Here, Plaintiff argues that Ciolino's broad discovery request cannot outweigh Plaintiff's privacy interest in the calls. (Mot. Quash Def. Ciolino's Subpoena, ECF No. 145 at 1.) The court agrees at this juncture of the litigation. Defendant Ciolino has failed to provide sufficient facts for the court to ascertain how all calls placed over the fifteen-year period of Simon's incarceration would either be relevant to this litigation or necessary to defend the claims against him. Ciolino has not provided specific names, dates, times, or evidence that the calls are relevant to this litigation. This is not to suggest that to meet his burden Ciolino must identify specific

7

calls with specific details as to why the call would be discoverable. Indeed, that type of burden would turn the discovery process on its head.

Rather, we are simply contrasting the broad fishing expedition that Ciolino's subpoena would allow with the more focused and narrowed request that the *Coleman* court faced. In *Coleman*, the listed individuals in the subpoena included key witnesses and individuals specifically named in deposition testimony as persons who had phone conversations with the Plaintiff while he was incarcerated, leaving the court with little question as to the potential relevance of subpoenaed recordings. This is in stark contrast to Ciolino's broad generalization that Simon's calls to his "family members, friends, and other third parties contain relevant information on the question of whether he is, in fact, innocent as he claims." (Def. Ciolino's Resp. Pl.'s Mot., ECF No. 173 at 4.) This generalization is supported by zero evidence developed to date in this litigation. Merely asserting the calls contain "relevant information" to prove the calls contain relevant information is circular and provides the court without a non-conjectured factual basis that the calls in fact contain relevant information. By throwing darts in the dark, Defendant has failed to tip the balance in his favor. Thus, we find that the breadth of the current subpoena is too broad to be enforced in its current state.

**B. Simon's Attorney Client Privilege Claim**

Second, Simon moves to quash the subpoena with respect to calls made to James Delorto and John Mazzalo, (hereinafter "Investigators" ) because it would require him to produce attorney-client privileged information. The parties disagree over the existence of an attorney-client relationship between Simon and the Investigators. Simon argues that the phone calls with the Investigators are protected by the attorney-client privilege because the Investigators worked

8

with his attorney throughout the attorney's representation of Plaintiff. (Mot. Quash Def. Ciolino's Subpoena, ECF No. 145 at 6-7.) In Illinois, confidential communications made by a client to his attorney are privileged, as are communications made to investigators employed by the attorney. *Boettcher v. Fournie Farms, Inc.*, 612 N.E.2d 969, 973 (Ill. App. Ct. 1993). Defendant argues the calls with the Investigators are not privileged, because the Investigators participated in phone calls prior to the formation of an attorney-client privileged relationship, rendering the privilege inapplicable. (Def. Ciolino's Resp. Pl.'s Mo., ECF No. 173 at 6.) However, even if we make the assumption in favor of the Plaintiff that an attorney-client relationship existed between Simon and the Investigators, in this context, the existence of an attorney-client relationship, like an umbrella on a sunny day, has no effect either way. Plaintiff admits he *knew* his calls were recorded and thus, even if an attorney-client relationship existed, Simon cannot argue he reasonably expected the content of his phone calls would remain private. (*See* Mot. Quash Def. Ciolino's Subpoena, ECF No. 145 at 7-8.) ("Plaintiff does not dispute that he was informed, through a recording at the beginning of each phone call, that his phone conversations with [the Investigators] were recorded.") Accordingly, the Court has no basis quash the subpoena on the basis of attorney client-privilege.

The Seventh Circuit has "long-embraced" the guiding principles of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

9

*United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) (citing Wigmore, *Evidence* § 2292). The attorney-client privilege "shields only those communications by a client to an attorney that were intended to be confidential." *United States v. Thompson*, No. 07-30010, 2007 U.S. Dist. LEXIS 58080, at *4 (C.D. Ill Aug. 9, 2007) (citations omitted). Therefore, "the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is not an agent of either the client or attorney." *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997) (citing Wigmore, *Evidence* § 2311).

The Seventh Circuit has addressed recorded jail telephone calls in the context of marital communication privilege and has held such calls are not considered confidential. *United States v. Madoch*, 149 F.3d 596 (7th Cir. 1998). The court, noting "the well-known need for correctional institutions to monitor inmate conversations," found a conversation between a married couple on a recorded prison line was not protected by the marital privilege. *Id*. at 602. The United States District Court for the Central District of Illinois found that the Seventh Circuit's ruling in *Madoch* "logically extend[s] to a recorded attorney-client telephone conversation." *Thompson*, 2007 U.S. Dist. LEXIS 58080, at *4. *See also United States v. Hatcher*, 323 F.3d 666 (8th Cir. 2003) ("The presence of the prison recording device destroyed the attorney-client privilege. Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private.").

Here, Plaintiff did not intend for his conversations to be private and he provides no evidence to the contrary. Plaintiff was informed through a recording at the beginning of each phone call that his phone conversations were recorded. Simon does not argue or suggest that there was any impediment to his access to unrecorded calls. IDOC provides non-recorded lines

10

for legal conversations between inmates and their attorneys. IDOC's website unequivocally states that unless a call is arranged as a private attorney call, all calls are recorded:

> All offender telephone calls are subject to monitoring and recording at any time by Departmental staff, unless prior special arrangements have been made to make or receive an unmonitored attorney call. All requests for unmonitored attorney calls must be processed by a member of the IDOC legal staff.

Illinois Department of Corrections, Inmate Phone Services, https://www.illinois.gov/idoc/communityresources/Pages/InmatePhoneServices.aspx (last visited Nov. 28, 2016). Simon was aware he had the option to arrange an unrecorded call. In his brief Simon admits he made unrecorded calls with his attorney and suggests that all of his attorney-client calls were conducted on an unrecorded line. (*See* Mot. Quash Def. Ciolino's Subpoena, ECF No. 145 at 6 n. 2). ("Plaintiff's counsel does not recall having any recorded telephone calls with Plaintiff while he was incarcerated and believes that most, if not all, of Plaintiff's phone calls with his attorneys were arranged through the IDOC as attorney-client calls and therefore, were not recorded.) Thus, Simon was aware of and took full advantage of the privacy options offered by IDOC.

Because Simon does not dispute he *knew* the calls with the Investigators were recorded, he waived any claim of privilege by knowingly disclosing information on a recorded line. In light of the totality of circumstances presented here, Simon's recorded phone calls with his Investigators are not protected by the attorney-client privilege, and in the event Simon made any phone calls with his attorney on a recorded line, he waived any claim of privilege with respect to those calls.

All of Simon's recorded calls with his counsel and the Investigators do not suffer from the broad, non-particularized nature of Simon's broader request. Indeed, Simon does not even

suggest that these calls (if they exist) would not be relevant to this litigation. Thus, the Court finds that while the subpoena itself is too broadly framed, a more narrowed request limited to Simon's counsel and the Investigators is appropriate, considering Simon's lack of privacy interest in these calls and the likely relevance and potential highly probative value of these calls. *See Manufacturing Systems Inc. of Milwaukee v. Computer Technology Inc.*, 99 F.R.D. 335, 338 (E.D. Wis. 1983) (the court has inherent authority to modify subpoenas issued in a case).

## **Conclusion**

For the reasons set forth above, the Court grants in part and denies in part the motion to quash the IDOC subpoena. This relief is without prejudice. The Ciolino subpoena is modified to only require production of calls on IDOC recorded lines between Simon and his counsel and Simon and the Investigators. The Court understands that Defendant's lack of factual support to justify the production of other calls might be a result of limited discovery in this early stage of litigation. Accordingly, the motion to quash is granted without prejudice. Ciolino may file a motion for leave with this Court to serve a subpoena based on more particularized facts and supporting evidence as discovery continues.[1]

From a pragmatic standpoint, there remains the issue as to how to segregate calls involving Simon's counsel and the Investigators from the rest of the universe of calls. To effectuate this order, the Court will need the parties to inform themselves, and then the Court, as to IDOC's capabilities to identify particular calls from particular telephone numbers. An

---

[1] While a subpoena is issued by the Clerk's Office and not the judge (*see McGil v. Duckworth,* 944 F.2d 344, 353 (7th Cir. 1991), the court has inherent authority to modify subpoenas issued in a case. *Manufacturing Systems Inc. of Milwaukee v. Computer Technology Inc.*, 99 F.R.D. 335, 338 (E.D. Wis. 1983). If defendant Ciolino wishes to re-issue a subpoena to IDOC for recorded calls made by Simon, the Court is ordering that Ciolino seek leave of this Court to request such a subpoena under the Court's inherent powers to modify a subpoena.

additional consideration is the burden placed on IDOC (*see* Fed. R. Civ. P. 45(d)(1)) in complying with this aspect of the subpoena.  And, finally, the parties should consider the burden of asking IDOC to repeat this process in the future if, at a later date, defendant Ciolino (or other defendants) make a showing that would justify obtaining calls from other individuals.   In other words, are there any efficiencies and/or costs to consider if the call identification process is done piecemeal versus globally?  The parties should be prepared to discuss this aspect of the discovery process at the next status hearing.


SO ORDERED.                    ENTERED:    January 6, 2017



*M. David Weisman*
M. David Weisman
United States Magistrate Judge