**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALSTORY SIMON, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Case No. 1:15-CV-1433 |
| | ) | |
| NORTHWESTERN UNIVERSITY, DAVID | ) | Judge Robert M. Dow Jr. |
| PROTESS, PAUL J. CIOLINO | ) | |
| | ) | Magistrate Judge M. David Weisman |
| | ) | |
| *Defendants* | ) | |

## MEMORANDUM OPINION AND ORDER

This motion to compel arises out of a malicious prosecution, conspiracy, and respondeat superior case pending in the Northern District of Illinois. In the underlying action, Plaintiff Alstory Simon alleges that a Northwestern Medill School of Journalism (hereinafter "Medill") investigative journalism class led by Defendants Professor Protess and investigator Ciolino created false evidence to frame him for a double-murder he did not commit. Simon seeks to compel the production of documents and electronically stored information (hereinafter "ESI") spanning over a 15-year period. Northwestern argues that production of the requested documents is not only burdensome but documents outside of a four-year period are irrelevant to this litigation. The parties are well aware of the serious allegations set forth in the complaint. However, for purposes of clarity, the Court will briefly review the most germane facts below:

### I. Background

Simon complains that a Medill investigative journalism class framed him for a double-murder (hereinafter "murders") to secure the release of the true killer, Anthony Porter. (Compl., ECF No. 1.) In 1983, Anthony Porter was sentenced to death for the murders. (*Id.* ¶ 80.) In

1998, Professor Protess's investigative journalism class began investigating Porter's case (hereinafter "Porter Investigation"). Ciolino, an alleged adjunct Professor at Northwestern University, was hired as an investigator on the case. (*Id*. ¶ 2.) In order to successfully claim Porter's innocence, Plaintiff asserts that Ciolino manufactured evidence and compelled false confessions to invent an alternative suspect: Plaintiff. (*Id*. ¶ 80.) Simon's complaint details various "investigatory" techniques employed by Protess and Ciolino that Plaintiff contends resulted in Porter's exoneration and Plaintiff's wrongful conviction for the very same double-murder. (*See id*.) In 1999, Plaintiff was sentenced to concurrent terms of thirty-seven years for murder and fifteen years for voluntary manslaughter. (*Id*. ¶ 115.)

In October of 2013, the Conviction Integrity Unit of the Cook County State's Attorney's Office announced that it would reinvestigate the murders. (*Id*. ¶ 123.) After a year-long investigation, the State's Attorney's Office requested that the Circuit Court vacate the charges. (*Id*. ¶ 124.) State's Attorney Anita Alvarez issued a press release on the investigation and stated that, "we could reach no other conclusion but that the investigation of this case has been so deeply corroded and corrupt we can no longer maintain the legitimacy of this conviction." (*Id*. ¶ 125.) Simon was freed from prison after fifteen years.

The Porter Investigation was only one of many wrongful conviction investigations conducted by Protess and Medill's investigative journalism class. In 1990, prior to the Porter Investigation, Protess and the investigative journalism class investigated the case of David Dowaliby, who was convicted of murdering his seven-year old daughter. (*Id*. ¶ 22.) According to the complaint, largely based on Protess's investigation, the conviction was overturned. (*Id*. ¶ 24.) In 1996, Protess and the Medill Investigative Journalism class began investigating the wrongful conviction of four men known as the "Ford Heights Four." (*Id*. ¶ 28.) All four men

were exonerated. (*Id*.) These exonerations brought fame and prestige to the school. (*Id*. ¶ 30.) In 2014, after the Porter case, the investigative journalism class was involved in the wrongful conviction investigations of *People v. Serrano* and *People v. McKinney*. The complaint makes clear that the common theme throughout these investigations is that Protess and the investigative journalism class repeatedly used unethical investigatory tactics to secure the release of the "wrongfully convicted." (*See id*. ¶¶ 32 & 133.) Finally, in 2011 Protess resigned from Northwestern.

At this stage of the litigation, Plaintiff has moved to compel certain discovery from Protess and Northwestern. (Mot. Compel, ECF No. 194.) Specifically, Plaintiff states Defendants refused to produce 1) employment records; 2) ESI; 3) records of benefits received for investigations; or 4) documents pertaining to any of Protess's investigations that were not generated from 1995-1999, unless related specifically to Plaintiff's case. (*Id*. at 4.) Plaintiff states Northwestern refused to produce any discovery regarding its book sales or Medill donations, which Plaintiff argues is relevant to the respondeat superior claim. Plaintiff requests ESI from 1990 to present. (*Id*.) Finally, Plaintiff moves for an order compelling Ciolino to directly answer contention interrogatories. (*Id.*)

## II. Discussion

## A. Rule 26 and Proportionality Considerations

Under Rule 26, a district court has broad discretion in matters relating to discovery. *Patterson v. Avery Dennison Corp*., 281 F.3d 676 (7th Cir. 2002). Rule 26 permits the discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26. The 2015 amendments confirmed the concept of

"proportionality" by adding it to the language of Rule 26(b)(1). When determining the scope of

discovery, Rule 26 requires the consideration of:

> the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether the
> burden or expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible in evidence to
> be discoverable.

*Id*. Pursuant to Rule 26, information within the scope of discovery does not need to be

admissible at trial. *Id*. Despite the "strong public policy in favor of disclosure of relevant

materials," *Patterson*, 281 F.3d at 681, a district court should impose limits if "the discovery

sought is unreasonably cumulative or duplicative, or can be obtained from some other source that

is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26. Prior to limiting

discovery, "the court should consider the totality of the circumstances, weighing the value of the

material sought against the burden of providing it, and taking into account society's interest in

furthering 'the truthseeking function' in the particular case before the court." *Bish v. Ind. Harbor

Belt R.R.*, Case No. 2:15-cv-262-JD-JEM, 2016 U.S. Dist. LEXIS 156891 (N.D. Ind. Nov. 14,

2016) (citing *Patterson*, 281 F.3d at 681).

We begin our analysis by applying the factors articulated in Rule 26. The Court finds the

importance of the issues at stake in this action extremely high. The complaint on its face

involves, among other things, two innocent civilians who were murdered, two people who lost

their liberty for extended periods of time both of whom later had their convictions vacated, and a

high profile journalism professor accused of employing unethical investigatory tactics at the

behest of one of the nation's most prestigious universities. The loss of liberty alone, as alleged, is

extremely significant: Porter, who was originally convicted of the murders, was sentenced to die;

and Simon, who was subsequently convicted of the same double murders, spent 15 years behind

bars. But the importance of this case transcends the parties involved: at its core, it questions the legitimacy of the criminal justice system as applied by the Cook County State's Attorney's office and the legitimacy of the criminal justice system as questioned by Northwestern and Professor Protess, all conducted squarely in the public eye. For these reasons, the Court finds this case to be of utmost importance.

Moving to the amount in controversy, the Court finds this amount to be high as well. Notwithstanding Plaintiff's high demand, if Plaintiff prevails it will be nearly impossible to put a price tag on the damages he sustained. The Court also considers the relative burden between Simon, Ciolino, Protess, and Northwestern. Simon, who was incarcerated for fifteen years, is currently unemployed and is a person of very modest financial means. Ciolino is being represented *pro bono*.[1] Protess's counsel states his financial resources are extremely limited and the burdens placed on him based on this litigation are high, risking Protess's ability to continue to retain counsel. Conversely, the Court finds there is a relatively low burden on Northwestern to produce the documents requested by Plaintiff.[2]

Finally, the Court compares the parties' access to relevant information. In the instant case, Simon has the least access to the most relevant information. The two primary issues in this case are why Simon was investigated and identified by defendants as the perpetrator of the murders (*i.e.,* was there a malicious prosecution, a series of unintended mistakes, or some other

---

[1] The Court bases this assertion upon Ciolino's counsel's statements made in Court.

[2] In 2016, it was reported that Northwestern University's endowment was $10.1 billion, ranking 8th out of the 10 "richest" colleges in the nation by CNN. Katie Lobosco, *America's 10 Richest Colleges*, http://money.cnn.com/2016/01/27/pf/college/largest-college-endowments/ (last visited Jan. 26, 2017). Additionally, under seal, Northwestern included an engagement letter with its current counsel. (*See* Northwestern Mot. Opp'n, ECF No. 205, Ex. 2.) Without disclosing the actual hourly rates, Northwestern has chosen to retain some of the most talented legal counsel available, whose hourly rates reflect their deemed market value. Northwestern's ability to pay for such top notch legal services further supports this Court's conclusion that both the actual and relative burden related to production for Northwestern is minimal. *Cf.* Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendments ("[C]onsideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party. The 1983 Committee Note cautioned that '[t]he court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent.'")

explanation?), and whether defendants Ciolino and Protess were acting within the scope of their employment for *respondeat superior* purposes when any improper conduct occurred. Evidence of the intricacies of the Porter/Simon investigation are controlled by the defendants. Evidence of other relevant conduct that might inform the issue of malicious prosecution (*e.g.,* circumstantial evidence of intent, or lack thereof) is also almost wholly within defendants' control. Finally, as to the issue of *respondeat superior*, Northwestern has taken the position that it "lacks knowledge or information sufficient to form a belief as to the truth or falsity of" whether Protess was acting as an employee and agent of Northwestern at all relevant times alleged in the complaint. (*See* Northwestern Answer, ECF No. 78, ¶ 15.) This issue, of course, is determinative as to the *respondeat superior* claim. Of all parties, Northwestern has the greatest access to all relevant information to answer that fundamental and extremely significant inquiry.[3] Defendants Ciolino and Protess would also seemingly have access to some of the relevant information necessary to litigate this matter. As to the malicious prosecution claim, both Protess and Ciolino likely have relevant information. At least as to Protess, the ability to easily retrieve such information seems compromised. Because Protess and Ciolino have definitively answered the question of scope of employment (*see* note 3, *infra*), their access to relevant information to support their positions as to *respondeat superior* issues is less compelling to the Court.

**B.      Fed. R. Evid. 608(b) as Justification for Scope of Discovery**

Plaintiff argues that the requested information will be probative of Protess's character for truthfulness or untruthfulness under Federal Rule of Evidence 608(b). Under that Rule, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-

---

[3] For his part, Protess admits that he was an employee of Northwestern at all relevant times, and was acting within the scope of his employment. (Protess Answer, ECF No. 79 ¶ 15.) Ciolino denies being an employee of Northwestern at the relevant times alleged in the complaint. (Ciolino Answer, ECF No. 80 ¶¶ 16, 17.)

examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness." *Id.* The Court finds that an analysis under 608(b) will invite an endless discoverable timeframe. Without specific discovery requests that particularly identify likely 608(b) evidence, allowing discovery to be guided by the *potential discovery* of 608(b) evidence would result in a discovery scope that generally ignores the proportionality dictate of Rule 26. [4] A false statement made by a key witness may be a decisive point in a trial that turns the case for one side or the other. Significant "false statements" would always meet the relevancy test, but premising wide ranging discovery in search of such evidence would undermine the fundamental principles of Rule 26. Therefore, the Court declines to expand the scope of discovery on the basis of information that *might* be admissible under 608(b).

## C.      Fed. R. Evid. 404(b) as Basis for Relevancy of Discovery Request

Simon seeks evidence relating to Protess's and Ciolino's other investigations into alleged wrongful convictions, and argues such evidence may be admissible under Rule 404(b). In particular, Simon seeks records, documents, ESI, Communications, and press releases from Northwestern.

Under Rule 404(b), evidence of a "crime, wrong, or other act" is admissible for proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." 404(b) excludes relevant evidence of crimes, wrongs, or other acts to show a person's propensity to act or behave a certain way. Although evidence of prior acts is the most

---

[4] In a 2011 statement by Northwestern University, the Vice President acknowledged that the Jenner & Block investigation (*see supra*) uncovered "numerous examples of Protess knowingly making false and misleading statements to the dean, to University attorneys, and to others." (*See* Mot. Compel, ECF No. 194, Ex A.) In light of this concession, the Court finds unpersuasive the notion that, at this point in the litigation, Plaintiff is pursuing a fishing expedition. That being said, the parameters of discovery should not be set by instances of false statements made by Protess or others; defining the scope in this manner would erode the calculus of Rule 26. As discovery continues, Plaintiff may seek more discovery as to particular false statements that might be particularly relevant to the resolution of this matter.

common 404(b) evidence, the Rule does not forbid the use of subsequent acts. *See United States v. Betts*, 16 F.3d 748, 757 (7th Cir. 1994) (citation omitted) ("Rule 404(b), of course, does not restrict evidence concerning the defendant's other acts to events which took place before the alleged crime; by its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts.")

Under the old Seventh Circuit jurisprudence, prior to admitting evidence at trial, a district court was required to determine that the evidence satisfied each of four conditions:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Betts*, 16 F.3d at 756.

In 2014, however, the Seventh Circuit abandoned the four-part test "in favor of a more straightforward rules based approach." *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014). Noting the "problem of treating the 'similarity' and 'timing' factors as formal boxes to check in the admissibility analysis," the *Gomez* court held that "the importance of testing for similarity and recency will depend on the specific purpose for which the other-act evidence is offered." *Id*. at 855-56. The *Gomez* court further explained that when ruling on the admissibility of "other acts":

> [I]t's not enough for the proponent of the other-act evidence simply to point to a purpose in the "permitted" list and assert that the other-act evidence is relevant to it. Rule 404(b) is not just concerned with the ultimate conclusion, but also with the chain of reasoning that supports the non-propensity purpose for admitting the evidence. In other words, the rule allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning.

*Id*. at 853 (internal citations omitted).

The *Gomez* court clarified that other-act evidence is not automatically excluded whenever a propensity inference can be drawn, "but rather, Rule 404(b) excludes the evidence if its relevance to 'another purpose' is established *only* through the forbidden propensity inference." *Id*. at 856 (emphasis added). The Court emphasized that a "Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case." *Id*. at 860.

A district court, however, cannot make a meaningful balancing analysis on the admissibility of evidence without first seeing it. As previously stated, public policy favors access to information during discovery and it is for the district court to determine whether the information is admissible at trial. At this stage, this Court could fathom permissible uses in which some of the requested information might be probative under 404(b).

**D. Proportionality Considerations**

Based on the above, and as detailed below, the Court concludes that some of Simon's contested discovery requests are relevant. The Court must also consider those factors identified in Rule 26 to properly assess the proportionality mandate of the rule. For the reasons noted above. *See supra,* Section A. The Court concludes that the documents identified below are appropriately discoverable. In reaching its conclusion, the Court is further informed by the parties' assertions in Court that Northwestern has already produced at least some of these documents for other investigations, further decreasing the burden of production on Northwestern. In light of the foregoing, and as explained in further detail below, the Court finds that some of the discovery requests propounded by Simon satisfy Rule 26's proportionality test at this stage of the litigation.

### III.     Analysis

As noted *supra*, the point of contention in this area of discovery is the appropriate time period for production.  Simon seeks a much more expansive timeframe than Northwestern is willing to accept.  Northwestern and Protess for their part, have generally agreed to produce all records related to the Porter / Simon investigation, and Northwestern has agreed to produce all other responsive documents from 1995 through 1999.  Simon argues, and the Court agrees, that 404(b) evidence is not limited to "prior acts," and therefore, information of events that occurred after the Porter / Simon investigation may be relevant to show "knowledge, intent, and/or motivation."  (Mot. Compel, ECF No. 194, at 6.)  However, the Court is not persuaded at this point that events up to and including 2012 would be relevant in showing Defendants' "knowledge, intent, and /or motivation" in 1999.

The Court is even more firmly convinced that proportionality factors of Rule 26 counsel against ordering production through 2012 in light of the diminishing relevance of after-the-fact evidence.  While "other acts" that occur *after* an event may be relevant to showing "knowledge" or "intent" at the time of the event, there is a steadily diminishing value of relevance under 404(b) the further out in time the "other acts" occur.  *See generally, Gomez,* 763 F.3d at 855-56, and *cf. United States v. Serlin*, 707 F.2d 953, 959 (7th Cir. 1983) (admitting subsequent other act evidence to show willfulness where there is no "hiatus" between the charged conduct and the other act evidence);   *United States v. Farris,* 517 F.2d 226, 229 (7th Cir. 1975) (subsequent other act evidence appropriately admitted where conduct is similar in nature to charged offense and no hiatus between charged conduct and other act evidence);  *United States v. Ayers*, 924 F.2d 1468, 1474 (9th Cir. 1991)  (subsequent acts admissible under 404(b) where subsequent acts occurred with three years of charged conduct).

## A. Malicious Prosecution Related Discovery

First, Simon compels documentation that he contends will be relevant to the malicious prosecution claim. Simon argues that the communications regarding other investigations will show Defendants knew of the impropriety of their conduct, but continued it anyway. (Mot. Compel, ECF No. 194, at 6.) More specifically, Plaintiff believes the documents will be probative of Defendants' "knowledge that the evidence they created against Plaintiff was improperly obtained [and] intention to create false evidence against Plaintiff despite that knowledge." (*Id.*) Depending on the type of information produced in discovery, the Court agrees that future investigations might be probative of Defendant's knowledge and intent, or lack thereof, in the commencement or continuance or a criminal proceeding, the absence of probable cause, or the presence of malice.

To establish a malicious prosecution claim, "the plaintiff must [prove] facts showing: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 662, N.E.2d 1238, 1242 (Ill. 1996). As explained in further detail below, because some of Simon's discovery requests are geared towards establishing elements of his malicious prosecution claim by relying on 404(b) evidence, we believe that Simon's requests are geared at relevant information.

## B. Employment Related Discovery

Simon also seeks discovery of documents relating to Protess's and Ciolino's employment with Northwestern.

Plaintiff argues that requests for documents relating to Protess's and Ciolino's employment might produce probative evidence of a claim, or lack thereof, of respondeat superior liability. Under that theory, an employer is liable for the torts of his employee that are committed within the scope of the employment. *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985 (Ill. 2007). An employee commits a tort within the scope of employment when "'it is of the kind he is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master.'" *Id.* at 164 (quoting Restatement (Second) of Agency § 228 (1958)). Simon argues that the documents will be probative of Defendants' "motivation to utilize [false] evidence [against Plaintiff] to garner prestige and notoriety for Defendants." (Mot. Compel, ECF 194, at 6.) In his complaint, Simon alleges that "at all relevant times, Protess was acting as an employee and agent of Northwestern, and was further acting within the scope of his employment with Northwestern." (Compl., ECF No. 1, ¶15.) As stated above, Northwestern answered that it "lacks knowledge or information sufficient to form a belief as to the truth or falsity of the[se] allegations." (Northwestern Answer, ECF No. 78.) By taking this position, Northwestern has expanded the scope of relevant discovery, as events that occurred after Simon's investigation could be relevant to determining whether Protess acted within the scope of his employment during the Porter / Simon investigation. Plaintiff argues *inter alia* that the requested discovery will inform "the aftereffect the [Simon] case and/or Protess and his class had on the university," Northwestern's knowledge of Protess's activities, and whether Northwestern authorized Protess and Ciolino's conduct. (Mot. Compel, ECF 194, at 11 – 12.) As explained in further detail below, because some of Simon's discovery requests are geared towards establishing elements of his respondeat superior claim as to Northwestern, we believe that Simon compels relevant information. Because such

information (if it exists) may be direct evidence of respondeat superior liability, or admissible under other evidentiary theories. See supra, discussion of Rule 404(b).

## C. Scope of Discovery

Yet, this Court is not tasked with ruling on the admissibility of evidence. Rather, the issue is scope of discovery. Considering the evidentiary limitations noted above, and the proportionality considerations under Rule 26, we believe that Simon is generally entitled to documents through the end of 2005 to allow him to fairly explore whether subsequent acts committed by Protess and/or Ciolino and/or Northwestern inform their respective intents as to the investigation surrounding the Plaintiff and Protess's employment status.

We recognize that the December 31, 2005 date may seem somewhat arbitrary. However, based on the allegations contained in the Complaint, this timeframe would allow Plaintiff to explore aspects of the Armando Serrano and Anthony McKinney investigations, as well as Northwestern's awareness, statements, and possible affirmation of the Porter / Simon investigation (ECF 79, ¶¶133, 134). Based on limited discovery of these matters, Plaintiff will have the opportunity to demonstrate that broader discovery is warranted. Similarly, Northwestern will not be forced to produce a wider scope of discovery without further justification being presented to the Court.

The cases Protess and Northwestern cite to fend off discovery are inapposite because they focus on admissibility of evidence at trial; that is, after the evidence was revealed during discovery. *See, e.g.*, *Gomez*, 763 F.3d at 862; *Betts*, 16 F.3d at 756; *Jankins v. TDC Mgmt. Corp., Inc.*, 21 F.3d 436, 440-41 (D.C. Cir. 1994). Admissibility of requested discovery is not a requirement to justify the request. *See* Rule 26(b)(1) ("[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable").

During the last hearing, the Court began to orally articulate its findings from the bench. However, as stated on the record, the Court is issuing this written opinion as its resolution to the motion to compel. The Court has taken into consideration the oral arguments presented by the parties and has revisited the factual record. In light of the Court's review of the information provided to it by the parties and arguments presented, the Court has amended its preliminary oral statements made at the status hearing. For all purposes, this written opinion controls the Court's findings and rulings.

**IV.     Particular Discovery Requests**

**A.     Ciolino's Contention Interrogatories**

We begin by examining Plaintiff's motion to compel as to Ciolino's contention interrogatories. As Simon's counsel made clear at the hearing in this matter, Ciolino has not filed any response to the motion to compel. Simon argues that Ciolino's failure to respond constitutes waiver. The Court disagrees. First, considering the quality of all counsel involved, it seems highly unlikely that any counsel in this matter would waive a position by intentionally simply failing to respond. Second, while Plaintiff's counsel appeared to have attempted to engage in discussions regarding the adequacy of Ciolino's responses to the contention interrogatories, there does not appear to have been robust compliance with Local Rule 37.2. Pursuant to Local Rule 37.2, a court shall refuse to hear motions for discovery and production of documents unless the motion includes a statement the parties were unable to reach an agreement after "consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's." Local Rule 37.2. *See EEOC v. Star Transp., Inc.*, No. 13-cv-1240, 2014 U.S. Dist. LEXIS 115671 at *4 (C.D. Ill. Aug. 20, 2014) (denying a motion to

compel an interrogatory because defendant did not follow the meet and confer provisions of the Rule 37). The Court's standing order explicitly states:

> The Court believes that parties can and should work out most discovery disputes. The Court will not hear or consider any discovery motions unless the parties have complied with the meet-and-confer requirement under Local Rule 37.2. Any discovery motion must state with specificity when and how the movant complied with Local Rule 37.2.

Simon has not indicated to the Court whether he engaged in a proper meet and confer in compliance with the above stated Rules. Based on this procedural deficiency, the Court denies Plaintiff's motion as to Ciolino, without prejudice to renewal after fully complying with Local Rule 37.2.

## B.     Motion to Compel as to Protess

In his response to the motion to compel, Protess argues that searching for all the documents contained in Plaintiff's motion to compel "will be extremely costly" and burdensome for him as he is "retired and living on limited means." (Protess Mot. Opp'n, ECF No. 209, at 4.) Protess has agreed to produce those records he has related to the Porter/Simon investigation, but objects to the broader production sought by Plaintiff. (*Id*. at 3-4.) Finally, Protess notes that the "documents" he possesses are all in electronic format, and would therefore require additional costs of uploading and searching.  (*Id*. at 4.)

Protess correctly notes that Rule 26 requires this Court to consider the proportionality of the requested discovery; that is consider the burden as well as the possible benefits of producing the requested discovery.  Considering these factors, Protess's willingness to produce those documents that are most clearly relevant to the litigation, and Protess's obligation to retain electronic records for the duration of this litigation (thus making them available for later, more focused discovery requests), the Court denies Plaintiff's motion to compel as to Protess, without

prejudice to being renewed in the future.  *See* Fed. R. Civ. P. 37(e) (describing repercussions for failing to preserve electrically stored information).

## C.  Motion to Compel as to Northwestern

Northwestern raises numerous objections as to the scope of documents and ESI Simon seeks.   First, Northwestern objects to the length of the discoverable time period as contemplated by Simon.  Plaintiff requests discovery beginning as early as 1995 and as late as 2012.  In some instances, Plaintiff makes requests without any time limitation at all.  Northwestern has agreed to produce documents from 1995 (when Protess's classes began investigating wrongful convictions) through 1998-99 (the time period when Protess's class investigated the Porter and Simon cases).  (Northwestern Mot. Opp'n, ECF No. 205, "hereinafter "NU Mot." at 6) Northwestern has also agreed to produce documents that refer to Porter or Simon without any time period limitation.  Northwestern has also agreed to produce documents relevant to the Ford Heights Four Matter. (1/23/17 Hr'g Tr. at 76.) Northwestern argues all other documents outside this time frame are irrelevant to this litigation.  For the reasons stated herein, the Court disagrees with this broad assertion as to all discovery requests at issue in this motion, but acknowledges that some of the discovery requests pressed by Simon are not proportional to the needs of the case at this juncture.

### 1.  Motion to Compel the Production of Documents Relating to Northwestern's Marketing Materials, Gifts to Northwestern, and Awards; RFPs #23, #24, #25, #33, #44, and #48

RFP #24 requests:  "[a]ll documents which reflect donations, contributions, and/or endowments made to Medill from 1995-2012."  RFP #24 is denied because it seeks discovery into Medill's realized financial benefits from Protess's work.  However, whether Medill actually benefitted from Protess's investigations only marginally informs Protess's intent, or lack thereof,

under a respondeat superior theory. In other words, even if Protess had a specific intent to benefit Northwestern, whether Northwestern captured any of that benefit has minimal relevance into Protess's state of mind, or in this case, his actual intent to benefit Northwestern. Accordingly, RFP #44 is also denied. RFP #44 requests: "[a]ll documents reflecting Northwestern sales of books authored or co-authored by Protess or Ciolino from 1995 through 2011, including without limitation, books sold at the Norris bookstore." The Court finds that records of book sales, as requested by RFP #44, would have even less bearing on Protess's intent than the documents compelled in RFP #24. Plaintiff justifies this request because this information may show a benefit to Northwestern as well as "knowledge of Defendants' misconduct." (Mot. to Compel, ECF 194, p. 12.) The after-the-fact sale of Protess's and Ciolino's books has little bearing on the intent of either individual to benefit Northwestern at the relevant time period. Moreover, Northwestern's "knowledge" of the contents of Protess's book does not rise or fall on the number of books sold at its campus bookstore. Considering the exceedingly marginal relevance compared to the burden of production, the Court denies RFP #44.

RFP #23 requests: "[a]ll documents related to or referring to any contemplated or completed books and/or movies discussing Protess and/or the cases of Anthony Porter or Alstory Simon." RFP #48 requests: "[a]ll statements made to the media or any news outlet regarding the Medill Innocence Project, Protess, Ciolino, Alstory Simon or Anthony Porter from 1995 through 2011." The Court limits RFP #23 and #48 to the years 1995 through 12/31/2005 for the reasons noted above.

RFP #25 requests: "[a]ll Northwestern publications, marketing materials, and other documents requesting donations and/or contributions or any form of financial commitment, that

refer to Protess, Protes' investigative journalism class, the Medill Innocence Project, and/or Anthony Porter. This request includes, but is not limited to, emails and website pages." The Court limits the production in RFP #25 to "Medill publications marketing materials, and other documents requesting donations and/or contributions or any form of financial commitment. . ." from the years "1995 through 12/31/05," and general email solicitations as opposed to a comprehensive search for "all emails." Without these limits, the Court finds that the burden of production on Northwestern for these documents from the entire University without a time limitation is disproportionate to the needs of this case. Limiting the scope of RFP #25 will lessen the burden and increase the likelihood that the responsive documents contain relevant information.

RFP #33 requests: "[a]ll documents or other materials referring to awards given to Protess, Ciolino, and/or the Medill Innocence Project from 1995-2012." RFP #33 is modified to: "[a]ll documents or other materials generated or published by the Medill School of Journalism referring to awards given to Protess, Ciolino, and/or the Medill Innocence Project from 1995 through 12/31/05." For the same reasons that we have limited RFP #25, we believe that the limitations in RFP #33 are appropriate to achieve proportionality.

RFP #48 requests: "[a]ll statements made to the media or any news outlet regarding the Medill Innocence Project, Protess, Ciolino, Alstory Simon or Anthony Porter from 1995 through 2011." The Court modifies RFP #48 to exclude e-mails, and limit the timeframe from 1995 through 12/31/05. Furthermore, the Court understands RFP #48 to compel official statements made by the University regarding the identified topics. Northwestern does not need to search its entire database for stray communications. Without these modifications, the Court believes that proportionality is not properly achieved.

2.     **Motion to Compel the Production of Documents Relating to Other Investigations, MIP Course Materials, and Payments to Protess; RFPs #18, #30, #32, #36, and #57**

To the extent the parties have not otherwise agreed, the Court limits RFPs #18, #30, #32, and #36 to the years 1995 through 12/31/05 for the reasons noted above. Additionally, the Court identifies other modifications to these requests below.

RFP #32 requests: "[a]ll documents which reflect the course syllabus, course description, course handouts and/or course outline for any investigative journalism class taught by Protess from 1995-2005." RFP #32 is modified to "all course syllabi, course descriptions, course handouts and/or course outlines for any investigative journalism class taught by Protess from 1995 through 12/31/05." The Court believes removing the language "[a]ll documents which reflect" will lessen Northwestern's burden of production; it is likely that copies of standard course documents are kept in the ordinary course of business and thus production of the aforementioned documents would not require an extensive search. RFP #36 requests: "[a]ny and all documents related to or reflecting any payments to Protess or Ciolino for the reimbursement of expenses, including without limitation, expense reports." The Court limits RFP #36 to only expense reports from the years 1995 through 12/31/05 submitted by or on behalf of defendants Protess and/or Ciolino. If, based on the expense reports produced from 1995 through 12/31/05, the parties find the need to expand the request for additional documentation, they can make a request with the Court at a later date if the parties cannot otherwise reach an agreement. Northwestern states it has produced Ciolino's expense reports. The Courts orders Northwestern to produce Protess's expense reports for the years 1995 through 2005. RFP #57 requests: "All documents reflecting any expenses submitted by David Protess to Northwestern and/or Medill

19

from 1995 through 2011." RFP #57 is denied. In light of the production ordered in RFP #36, the Court finds this request unduly burdensome based on its limited potential for relevancy.

### 3. Motion to Compel the Production of Documents in Response to RFPs #11 #12, #40

RFP #11 requests: "[a]ll documents that relate to, or have as their subject matter, any communication between Protess, Ciolino, and/or Rimland regarding the Alstory Simon case, the Anthony Porter case, Protess, the Medill Innocence Project, and/or any investigation or review of the aforementioned cases. RFP #12 requests: "[a]ll documents relating to or referring to any statements made by Dean Michael Janeway or an investigation conducted by Dean Michael Janeway regarding Protess, Ciolino, Protess' investigative journalism class, and/or the Medill Innocence Project." These requests are denied as being overbroad, and therefore unduly burdensome in light of the production already agreed to by defendants Protess and Northwestern.

RFP #40 requests: "[a]ny and all documents relating to Protess' employment with Northwestern, including without limitation, all documents relating to his compensation, tenure proceedings, disciplinary actions, evaluations, investigations of misconduct, complaints of misconduct and any other documents contained within his personnel file and/or disciplinary file." RFP #40 is modified as follows: "documents relating to Protess' employment with Northwestern, limited to documents reflecting his compensation, tenure proceedings, disciplinary actions, evaluations, investigations of misconduct, complaints of misconduct, his personnel file and/or disciplinary file." These modifications reduce the burden to Northwestern as these documents are likely maintained in a central location, and will not require extensive searching by Northwestern. The relevance and potential importance of these is self-evident. This order is *not* intended to address any claim of privilege that would justify withholding any of the requested documents.

4.      **Motion to Compel as to RFPs #14, #15, #16, #20, # 21, #22, #31, #37, #38, #43, #45, #49, and #56;  Interrogatories #3, #4, #12**

Northwestern states that it has produced all documents it has located after a reasonable search responsive to RFPs #14, #15, #16, #20, #21, #22, #31, #37, #38, #43, #45, #49, and #56. (*See* NU Mot., p. 21.)  The Court denies the motion to compel as to these RFPs because, as Northwestern correctly states, "Northwestern cannot be compelled to produce materials it . . . has already produced."[5]  (*Id.* p. 22.)  Similarly, Northwestern indicates that it has responded to Interrogatories #3, #4, and #12 by producing documents.  (*Id.* (citing Fed. R. Civ. P. 33(d)(1)).  Based on Northwestern's representations, Simon's motion to compel as to these interrogatories is also denied as moot.  (*See* Mot. Comp., ECF 194, n. 4.)

5.      **Motion to Compel Northwestern to Comply With ESI Proposal**

In an undeveloped fashion, Simon also raises the issue of Northwestern's failure to respond to electronically stored information ("ESI") requests.  (*See id*. at p. 15.)  Because we find the argument not fully developed, the Court does not believe it is in a position to resolve the issue.  For the time being, therefore, Simon's motion as to ESI is denied without prejudice.

In the interest of providing some guidance on the issue, however, the Court notes the following:  Northwestern provides some background as to the parties' attempt to resolve the ESI issues.  (*See* NU Mot. p. 22.)  Relying in part on this information, the Court notes that the concerns noted by Northwestern as to the non-existence of ESI for particular proposed custodians, or the timeframe that particular proposed custodians joined Northwestern, should not

---

[5] In reaching this conclusion, the Court understands Northwestern's response to mean that it has *not* limited its search to "some undisclosed criteria."  (Pl. Reply to Mot. Com., ECF 222, p. 14.)  Plaintiff suggests that Northwestern must have "abandoned its objections" in responding to this RFP to be fully compliant with it.  *Id.*  The Court does not agree.  Northwestern can still maintain its objections as to privilege and work-product (see Mot. Comp. Ex. B, ECF 194-3, p. 20, ¶¶2, 3, and 4 (asserting *inter alia* privileges and work-product doctrine)).  Barring those objections, the Court understands Northwestern has otherwise fully responded to these RFPs.  If this is not the case, the Court expects Northwestern to appropriately advise the Court of this fact.  Additionally, Northwestern is reminded of its obligation to specifically identify whether documents are being withheld based on any asserted privilege.  *See* Fed. R. Civ. P. 26(b)(5).

be hurdles to resolving the ESI issues.  Relying on Northwestern's own words, "Northwestern cannot be compelled to produce materials it does not possess . . ." (*Id.* at pp. 21 – 22.)  That said, both parties should work towards reasonable ESI search terms and scope.  ESI discovery is not unlimited and subject to those considerations identified in Rule 26.  *See* Fed. R. Civ. P. 26(b)(2)(B).   Hopefully, the counters and considerations contained in this ruling will assist the parties in resolving the appropriate scope of ESI discovery without the need for extensive court intervention.

### Conclusion

For the foregoing reasons, the Court grants in part, and denies in part, the motion to compel as to Northwestern. The motion as to the requests for ESI is denied, without prejudice. The Court denies Plaintiff's motion as to Ciolino, without prejudice, subject to renewal after fully complying with Local Rule 37.2.  The Court denies Plaintiff's motion to compel, without prejudice as to Protess.

**SO ORDERED.**                          **ENTERED:   February 3, 2017**

*M. David Weisman*
_____
M. David Weisman
United States Magistrate Judge