# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALSTORY SIMON, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | Case No. 1:15-cv-1433 |
| ) | |
| NORTHWESTERN UNIVERSITY, DAVID ) | Judge Robert M. Dow Jr. |
| PROTESS, PAUL J. CIOLINO, ) | |
| ) | Magistrate Judge M. David Weisman |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to Federal Rule of Civil Procedure 45(d)(3), Martin Preib, a former third-party defendant to this litigation, (hereinafter "Preib") moves to quash Defendant Paul Ciolino's (hereinafter "Ciolino") subpoena for phone call recordings made between Preib and the Plaintiff while Plaintiff was incarcerated at the Illinois Department of Corrections (hereinafter "IDOC") on the grounds the recordings are protected under the Illinois reporter's privilege. 735 Ill. Comp. Stat. 5/8-901. Ciolino argues that the Illinois reporter's privilege is inapplicable, or in the alternative, if the privilege does apply, Preib waived it by speaking on a line he knew was monitored and recorded. (Reply Preib's Mot. Quash, ECF No. 172 at 2.) The underlying action involves multiple claims and multiple parties. The Court will discuss only the most relevant details below.

1

**I. Background**

The underlying action arises from an alleged conspiracy to frame Alstory Simon for a double-murder he maintains he did not commit. (Compl., ECF No. 1). In summary, Simon contends a Northwestern investigative journalism class framed him for the murders to secure the release of the true killer, Anthony Porter. *Id*. Ciolino, an alleged adjunct Professor at Northwestern University, was hired as an investigator to teach students enrolled in the journalism course various investigatory techniques.[1]

In 1998, the investigative journalism class began investigating the case of Anthony Porter, a man convicted of a double-murder. (*Id*. at 10-11.) Ciolino was hired as an investigator to help prepare the students to conduct interviews in low-income neighborhoods, prisons, and jails. (*Id*. at 12.) To successfully claim Porter's innocence, Plaintiff asserts that Ciolino manufactured evidence and compelled false confessions to invent an alternative suspect: Plaintiff. (*Id*. at 15.) Simon's complaint details various investigatory techniques employed by Ciolino that Plaintiff contends resulted in Porter's exoneration and Plaintiff's wrongful conviction for the very same double-murder. (*Id*. at 23.) Simon subsequently served fifteen years in prison until the charges against him were vacated. He was released in 2014. (*Id*. at 1.) Stripping away the allegations of the complaint, there is no dispute that Alstory Simon was incarcerated for fifteen years based on charges the former Cook County State's Attorney, Anita Alvarez, publicly acknowledged were not properly brought.

Preib is a police officer, freelance journalist, and author of the blog *Crooked City* (Preib's Mot. Quash, ECF No. 142 at 3 ("Preib also publishes a news blog located at www.

---

[1] Whether Ciolino was a Professor at Northwestern University is in dispute.

crookedcity.org publishing news stories based on his own investigative reporting criminal justice in Chicago.").) In a lengthy article, entitled *What's Wrong with the Wrongful Conviction Movement?* (hereinafter "Article"), Preib wrote about the Simon investigation and made specific references to Ciolino's involvement that are consistent with several of the allegations in Simon's complaint. (*Id*., Ex. B.) Preib states that most of his fact-gathering for the Article was conducted telephonically with Plaintiff while Plaintiff was incarcerated at IDOC. (*Id.* at 2.) In fact, "logs provided by IDOC show that Plaintiff and Preib had well over a 100 phone calls between February, 2013 and October, 2014." (Ciolino Resp. Mot. Intervene, ECF No. 245 at 2.) The Article was published in Chicago's *Newcity* magazine. *Newcity*, a Chicago-based media company, was founded in 1986. *See* http://www.newcity.com (follow hyperlink "Newcity Network: "About Us") (last visited Mar. 9, 2017). Originally, *Newcity* was a "South Loop neighborhood newspaper" but it has evolved into Chicago's only locally-owned and operated weekly cultural magazine. *Id*.; Brian Hieggelke, *The Necessity of Evolution at Newcity*, Newcity, Feb.1, 2017, at 5. Today, *Newcity* magazine is distributed to roughly a thousand Chicago-area locations including general outlets, retail stores, schools, restaurants, and the *Newcity* boxes placed throughout the city. *See* www.newcity.com, *supra* (follow hyperlink "Editorial & Publishing"). *Newcity* will soon be converted into a monthly magazine. Brian Hieggelke, *supra*. Based on this lengthy history, we consider *Newcity* a recognized news media outlet in Chicago.

In order to defend the claims against him, Ciolino subpoenaed all recordings of phone conversations Simon made while incarcerated at IDOC. (Ciolino's Resp. Pl.'s Mot., ECF No. 173 at 2.) Preib moves to quash only recordings of phone calls between Simon and himself on the grounds his conversations are protected under the Illinois reporter's privilege.

3

## I. Procedural Posture

As a preliminary matter, Preib must intervene to bring this motion. When Preib originally filed his motion to quash the subpoena for certain IDOC recordings he was a third-party defendant to this action. However, the claims against him were subsequently dismissed. (*See* Jan. 3, 2017 Judge Dow Opinion, ECF No. 216.) Therefore, Preib is neither a party to this litigation nor a recipient of the subpoena. The Court ordered Preib to move to intervene pursuant to Federal Rule of Civil Procedure 24. (Feb. 10, 2017 Minute Order, ECF No. 236.) *See also Barker v. Local 150, Int'l Union of Operating Eng'rs, 2010*, Case No. 08 C 50015, U.S. Dist. LEXIS 22685, at *7 (N.D. Ill. Mar. 11, 2010) ("The IIIFFC is not a party to this lawsuit. Therefore, it must intervene before filing a motion to quash."). Once the Court considers Preib's motion to intervene, the Court must also determine whether Preib has standing to enforce his motion to quash.

Pursuant to Federal Rule of Civil Procedure 24(a), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action. Fed. R. Civ. P. 24(a). Preib seeks intervention for the limited purpose of obtaining a ruling on his motion to quash. (Preib's Rule 24 Mot. Intervene, ECF No. 237.) Preib argues that he should be permitted to intervene on the grounds he has an interest in this litigation, namely the recorded conversations that he contends are protected by the Illinois reporter's privilege. (*Id.* at ¶ 4.) Preib further argues that his interests are not already adequately represented by the current parties because he is the only one who is able to assert the reporter's privilege for this material. (*Id.* at ¶ 5.)

"A party may seek intervention as of right if the party has 'an interest' and is 'so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.'" *Ligas v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007) (quoting Fed. R. Civ. P. 24(a)(2)). Intervention as of right is only required when a party establishes that (1) the motion was timely (2) the party possesses an interest related to the subject matter of the action (3) "the disposition of the action threatens to impair that interest"; and (4) the parties in the action fail to adequately represent the movant's interest. *Id.* (citing *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003)). The interest asserted must be "a 'direct, significant, legally protectable' one." *Id.* at 808 (quoting *Sec. Ins. Co. of Hartford v. Schipporeit*, 69 F.3d 1377, 1380 (7th Cir. 1995)). "A colorable claim of privilege could constitute a legally protectable interest sufficiently significant to warrant intervention as of right, assuming that the three remaining factors are also satisfied." *BDO Seidman*, 337 F.3d 802 at 808 (citing *In re Grand Jury Subpoena*, 274 F.3d 563, 570 (1st Cir. 2001)).

Preib first states that the Court should permit him to intervene because his motion was timely and that he merely seeks a ruling on a previously filed motion. (Preib's Rule 24 Mot. Intervene, ECF No. 237 at ¶ 1.) As stated above, Preib contends he has an interest in this litigation - the asserted privileged nature of the recorded conversations - that will not be protected if he is not permitted to intervene since he is the only one who can raise the reporter's privilege as to the recordings. (*Id.* at ¶¶ 4-5.) The Court agrees Preib has established a protectable interest that is not otherwise protected by the current parties. The Court thus grants Preib's timely motion to intervene.

Having resolved the issue of intervention, we now turn to the issue of standing. The parties disagree over whether Preib has standing to quash the subpoena. Ciolino argues that Preib lacks standing to object to the production of recorded phone calls that have been shared with, and are maintained by, a third party, IDOC. (Ciolino Resp. Mot. Intervene, ECF No. 245 at 5.) Ciolino further asserts that by allowing IDOC to record his telephone conversations, Preib waived the privilege and thus lacks standing to quash the subpoena. (*Id.*) Conversely, Preib states he has standing to quash the subpoena because the conversations are protected under the reporter's privilege and only he can assert that privilege. (Preib's Memo Re Standing, ECF No. 238 at 1.) Preib argues although IDOC is not a party to this litigation he can move to quash the subpoena because "'[a] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.'" (*Id.* at 2 (quoting *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir.1982).)

Federal Rule of Civil Procedure 45(d)(3)(A) requires a court to quash or modify a subpoena to which a person is subject if the subponea, *inter alia*, "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). Given that Preib has asserted a privilege, and he is the only one who is able to assert it, the Court finds that Preib has standing to move to quash the subpoena.

**III. Discussion**

Preib argues the phone call recordings are protected under the Illinois reporter's privilege. Under Illinois state statute, reporters have a qualified privilege that protects them from being compelled to disclose their sources. 735 Ill. Comp. Stat. 5/8-901. Pursuant to the Illinois reporter's privilege statute (hereinafter "IRPA" or "Statute"), a court cannot "compel any person

6

to disclose the source of any information obtained by a reporter" unless a court orders a divestiture of the privileged sources sought. *Id*. at 901& 907. Because the instant case is in federal court based on diversity jurisdiction, and Illinois law controls the substantive claims alleged, we apply Illinois privilege law to resolve the issue presented. *See* Fed. R. Evid. 501 ("state law governs privilege regarding a claim or defense for which state law supplies the rule of decision"); *see also Kelley v. Lempesis*, No. 13-cv- 4922, 2015 U.S. Dist. LEXIS 107719, at *6 (N.D. Ill. Aug. 17, 2015) ("Because federal jurisdiction in this action is based upon diversity of citizenship, and Illinois law supplies the rules of decision, Illinois law governs whether the reporter's privilege attaches to the requested video outtakes.")

The statutory privilege applies when a *reporter* is compelled to disclose his *source*. A reporter is any "person regularly engaged in the business of collecting, writing or editing news for publication through a news medium on a full-time or part-time basis; and includes any person who was a reporter at the time the information sought was procured or obtained." 735 Ill. Comp. Stat. 5/8-902. The Statute defines a "news medium" as:

> any newspaper or other periodical issued at regular intervals whether in print or electronic format and having a general circulation; a news service whether in print or electronic format; a radio station; a television station; a television network; a community antenna television service; and any person or corporation engaged in the making of news reels or other motion picture news for public showing.

*Id*.

A source is the individual or means through which the information was obtained. *Id*. The reporter holds the reporter's privilege. *People v. Pawlaczyk*, 724 N.E.2d 901, 905 (Ill. 2000) ("the privilege [is] granted to reporters under the Reporter's Privilege Act"). While the privilege belongs to the reporter, the source is the subject of the IRPA's protection. 735 Ill. Comp. Stat. 5/8-901.

7

### A. Reporter

Preib is a reporter under the statute's definition. A reporter is any person "regularly engaged in the business of collecting, writing or editing news for publication through a news medium on a full-time or part-time basis; and includes any person who was a reporter at the time the information sought was procured or obtained." 735 Ill. Comp. Stat. Ill. Comp. Stat 5/8-902. While courts have not directly enumerated every profession that might fall within the definition, they have interpreted a "reporter" to include an editor of a medical journal, photographers, and certain bloggers. *People v. Slover*, 753 N.E.2d 554, 557 (Ill. App. Ct. 2001) (photographers); *Cukier v. Am. Med. Ass'n*, 630 N.E.2d 1198, 1202 (Ill. App. Ct. 1994) (editor of a medical journal); *Johns-Byrne Co. v. Technobuffalo LLC*, No. 2100 L 009161 (Ill. Cir. Ct. July 13, 2012) (Mot. Recons. Granting Rule 224 Petition) (bloggers).

In the 1990s, Preib was a newspaper reporter for a chain of newspapers in Michigan. (Preib's Mot. Quash, ECF No. 142 at 2.) Since 2005, Preib has been publishing nonfiction stories. (*Id*.) His work has been published in *Tinhouse Magazine*, *Newcity*, *Playboy Magazine*, and *The Chicagoan Magazine*. (*Id*.) Preib maintains a blog entitled *Crooked City*. (*Id.* at 3.) On his blog, Preib publishes news stories based on his investigative reporting on criminal justice issues in Chicago. (*Id*.) As a freelance journalist, Preib has written articles for news publications and authored the Article for *Newcity*. (Preib's Reply, ECF No. 176 at 8.) Preib states that during the time he spoke with Simon, he was regularly collecting and writing stories for *Newcity* and for his blog. (*Id*.) Preib states that most of his reporting for the Article was conducted via monitored telephone calls with Simon while Simon was incarcerated at IDOC. (Preib's Mot. Quash, ECF No. 142 at 2.) While Preib did not provide any details regarding his editing process, we find that his conduct with respect to assembling the Article comfortably falls

8

within the definition of a reporter. Preib collected news via his phone conversations with Simon. He utilized the information he obtained from Simon to inform and write the Article that was published in *Newcity*. *Newcity* falls squarely in the definition of a "news medium." *See* 735 Ill. Comp. Stat. 5/8-902 ("'[N]ews medium' means any newspaper or other periodical issued at regular intervals whether in print or electronic format and having a general circulation."). Preib's newsgathering conduct qualifies him as a reporter.[2]

Preib's other employment as a Chicago police officer does not preclude our conclusion that Preib also serves as a reporter. The Statue does not define a reporter as a person *exclusively* engaged in the business of collecting, writing or editing news for publication, but rather the statue requires a reporter to be *regularly* engaged in the business of collecting, writing, or editing news for publication. Therefore, so long as Preib was collecting news for publication on a regular basis, and here he was, then he is a reporter under the Statute's definition notwithstanding his other employment. Significantly, the information that Preib seeks to protect is solely related to his journalistic forays and completely unrelated to any investigatory work as a law enforcement official. Here, as the Court understands the facts, Preib was only interviewing Simon to further Preib's journalistic mission.

### B. Source

Ciolino argues that the recordings of Preib's conversations are not protected under the Illinois reporter's privilege because they are not a source. The Court agrees. The subject of the Statute's protection is a reporter's source. A source is the "person or means from or through which the news or information was obtained." 735 Ill. Comp. Stat. 5/8-902. Courts have

---

[2] The Court will not address whether Preib's work for his blog qualifies him as a reporter under the Statute because his work for *Newcity* is sufficient to warrant protection under the Statute.

interpreted this definition to include individuals as well as news-gathering materials. In Illinois, the statutory privilege applies to all sources regardless of whether the source is confidential. *People v. Palacio*, 607 N.E.2d 1375 (Ill. App. Ct. 1993). Moreover, the Statute does not distinguish between published and unpublished material. *Slover*, 753 N.E.2d at 554.

Sources are not limited to individuals; they include the medium from which the information was derived. The Illinois Appellate Court has categorically stated that a source includes more than individuals and extends to reporter's resource materials. *See id.* at 557-58. ("By defining 'source' to include a 'means,' the legislature clearly intended the privilege to protect more than simply the names and identities of witnesses, informants, and other persons providing news to a reporter."); *People ex rel. Scott v. Silverstein*, 412 N.E.2d 692, 695 (Ill. App. Ct. 1980), *rev'd on other grounds*, 412 N.E.2d 692 (Ill. 1981) ("[T]he definition of 'source' makes no distinction between . . . 'person or means from or through which the news or information was obtained.'") (citations omitted).

Here, the IDOC recordings are not Preib's source because he did not use them to obtain information for his Article. *See* 735 Ill. Comp. Stat. 5/8-902 ("'[S]ource' means the person or means from or through which the news or information was obtained.") Preib states that "[m]uch of the reporting for [the A]rticle was conducted in telephone calls with Simon while he was incarcerated." (*See* Preib's Mot. Quash, ECF No. 142 at 2.) Accordingly, Preib's conversations and notes stemming from those conversations are clearly his source. But significant to the Court is Preib's notable silence on any relationship between the IDOC recordings and his Article. Absent from Preib's motion is whether he has ever accessed, seen, let alone listen to, the IDOC recordings. The recordings at issue are controlled, owned, and were created by IDOC. Preib,

10

thus, cannot allow a third party to record his conversations, keep and control those conversations, and then argue that the recordings are *his*.

The Court recognizes that "source" can have a broad application under the Statute. However, as explained, our concern is with the application of the term "source" to a means of gathering information (*i.e.* the IDOC recordings) upon which the reporter never relied. Thus, in our view, the IDOC recordings themselves cannot be a "source" because Preib never obtained these recordings to gather information or to further his journalistic efforts. Therefore, the IDOC recordings cannot be subject to the protection Preib seeks. As stated above, we believe the more appropriate analysis is to acknowledge that the conversations between Preib and Simon are appropriately considered the "source" upon which "the news or information was obtained." 735 Ill. Comp. Stat. 5/8-902(c). Significantly, the subpoena does not ask Preib to disclose the contents of those conversations. Rather, the subpoena seeks IDOC's recordings of those conversations – recordings that Preib plainly knew were occurring.[3] Moreover, IDOC has not objected to the subpoena.

Ultimately, the insurmountable problem that Preib faces is that the subpoena is not directed to him and it does not seek *his* materials. Instead, the subpoena seeks recordings controlled by a third-party; recordings never accessed by Preib as part of his journalistic efforts; and recordings that Preib knew were being created as he interviewed Simon. The first two factors inform our decision that these recordings are not Preib's "source" as that term is defined

---

[3] The Court declines to find "waiver" of the privilege by Preib based on IDOC's overt recording of the conversations. To be clear, we do not reach our conclusion that there is no privilege solely because the conversations between Preib and Simon were openly recorded. However, the fact that the recordings were overtly recorded gives us greater comfort that Preib engaged in the conversations fully aware that they were being recorded. Because the conversations were overtly recorded, we are not confronted with a situation where a reporter mistakenly believed her conversations with a source were confidential, and only later learned that a third-party had recorded the exchanges. That factual scenario may raise other issues.

11

by the statute. The third factor affirms that there is not an equitable argument that we need to consider in the instant matter. Suffice it to say, if the subpoena were directed to *Preib* and sought *Preib's* recordings of his conversations with Simon, the analysis would be markedly different.

## Conclusion

For the aforementioned reasons, the Court grants Preib's Motion to Intervene (ECF No. 237) and denies his motion to quash IDOC recordings (ECF No. 142).

SO ORDERED.                                    ENTERED: March 31, 2017

*M. David Weisman*
_____
M. David Weisman
United States Magistrate Judge