UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALSTORY SIMON, | ) |
|    *Plaintiff*, | ) |
|   vs. | ) Case No. 1:15-cv-1433 |
| NORTHWESTERN UNIVERSITY, DAVID PROTESS, PAUL J. CIOLINO, | ) Judge Robert M. Dow Jr. |
| | ) Magistrate Judge M. David Weisman |
|    *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Defendants Northwestern and Paul Ciolino's (hereinafter "Defendants") motion to compel the Cook County State's Attorney's Office (hereinafter "CCSAO"), which is not a party to this case, to produce documents and emails responsive to subpoenas served by the Defendants. (Defs.' Mot. Compel, ECF No. 240; *see* Judge Dow Opinion, ECF No. 218.) The parties are well acquainted with the facts so we briefly discuss only the pertinent details below:

**I. Background**

Plaintiff Alstory Simon alleges that Defendants framed him for a double-murder that he did not commit. (Compl., ECF No. 1.) Specifically, Simon states that Paul Ciolino, a private investigator, and a Northwestern University journalism class' unethical investigatory techniques led to his conviction of the murders. Among other things, Plaintiff states that Defendants fabricated evidence, coerced witnesses, and knowingly

1

obtained a false confession from him to frame him for the murders. (*Id.* ¶¶ 80, 83, 89, 93.) Plaintiff alleges that, based on this manufactured evidence, he was convicted and subsequently spent 15 years behind bars. (*Id.* ¶ 2.) Approximately three years after his conviction, Simon filed a *pro se* post-conviction petition proclaiming his innocence. (*Id.* ¶ 116.) Shortly thereafter, key witnesses from Simon's trial, who originally testified to his guilt, began to recant their statements. (*Id.* ¶¶ 118-121.) In October of 2013, the CCSAO announced that it would reinvestigate Simon's case. (*Id.* ¶ 123.) During the investigation, the CCSAO interviewed more than 100 witnesses. (*Id.*) After the conclusion of the year-long investigation, the CCSAO requested that the trial court vacate the charges against Simon. (*Id.* ¶ 125.) In a press release explaining the CCSAO's decision, then-State's Attorney Anita Alvarez stated that "[a]t the end of the day and in the best interests of justice, we could reach no other conclusion but that the investigation of [the Simon] case has been so deeply corroded and corrupted that we can no longer maintain the legitimacy of this conviction." (*Id.*)

## II. Motion to Compel

In an effort to defend the claims against them, Defendants subpoenaed the CCSAO for various documents relating to the Simon investigation. (Defs.' Mot. Compel, ECF No. 240 at 2.) The CCASO objects to producing two categories of documents responsive to the requests to produce: 1) emails from the time period encompassing the CCSAO's re-investigation of the Simon case; and 2) and three other responsive documents. Below, we address each of these discovery issues.

**A. Emails**

At the Court's April 24, 2017 status hearing, the parties advised the Court that they met and conferred and came to an agreement regarding email production and the proposed search terms. (4/24/17 Status Hearing, ECF No. 279.) Absent any indication otherwise from the parties, the Court presumes production is occurring in the normal course.

**B. Documents**

Next, we consider the three documents. The first document, the CCSAO contends is not relevant to this case. On April 13, 2017, the Court ordered the CCSAO to submit the document to the Court for an *in camera* inspection to determine the relevancy of the document. The Court has reviewed the document and agrees that it has absolutely no relation to this case. Accordingly, the document is outside the scope of discovery and does not need to be produced.

As to the second document, after the CCSAO reviewed it, the CCSAO determined that it is not privileged. Therefore, the CCSAO will produce this document without the Court needing to resolve any issues.

Thus, the final, and only document in dispute, is an internal memorandum (hereinafter "internal memo") to Anita Alvarez, the then-Cook County State's Attorney, and her First Assistant, Dan Kirk, dated July 33, 2014. The CCSAO argues the internal memo is protected by the deliberative process privilege. (CCSAO Mot. at 3, ECF No. 248.)

The CCSAO argues that the internal memo is privileged and thus undiscoverable. The CCSAO states that the memo reveals the "'mental impressions, assessment of evidence, observations about witnesses, theories of prosecution of Alstory Simon . . . , and the internal CCSAO deliberations about the prospect of seeking to vacate Alstory Simon's conviction.'" (CCSAO Mot. at 3-4, ECF No. 248.) (quoting Aff. of Joseph Magats ¶ 4.) For purposes of resolving this motion, the Court accepts these representations as true. The CCSAO admits that the Illinois Supreme Court does not recognize a "blanket deliberative process privilege" but nonetheless argues that it recognizes a "privilege covering certain deliberative process materials." (*Id*. at 3.) Northwestern argues the CCSAO cannot maintain a deliberative process privilege because "(1) there is no deliberative process privilege under Illinois law; (2) the deliberative process privilege does not apply when, as here, the deliberative process is directly at issue in the case; and (3) the deliberative process privilege can be overcome where, as here, there is a particularized need for the documents." (Defs.' Mot. Compel, ECF No. 239 ¶ 2) (citations omitted). Northwestern has the better argument.

There is a federal deliberative process privilege. It "protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-152 (1975)). "Some courts have defined the privilege to encompass: 'intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *People ex rel. Birkett v. City of Ch.*, 705 N.E.2d 48, 50 (Ill. 1998), *aff'd in part, rev'd in part*, 202 Ill. 2d 36 (Ill. 2002) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl*

*Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd*, 128 U.S. App. D.C. 10, 384 F.2d 979 (D.C. Cir. 1967)). "'The privilege only protects expressions of opinion or recommendations; it does not protect purely factual material.'" *Tumas v. Bd. of Educ.*, No. 06 C 1943, 2007 U.S. Dist. LEXIS 56242, at *4 (N.D. Ill. July 31, 2007) (quoting *Bobkoski v. Board of Educ.*, 141 F.R.D. 88, 91 (N.D. Ill. 1992)).

However, while the deliberative process privilege is a widely recognized federal privilege, the Illinois Supreme Court has expressly declined to recognize it. *See Birkett*, 705 N.E.2d at 51. In refusing to adopt the privilege, the court explained that "privileges are strongly disfavored because they operate to 'exclude relevant evidence and thus work against the truthseeking function of legal proceedings.'" *Id*. at 51 (quoting *People v. Sanders*, 457 N.E.2d 1241, 1245 (1983)). The court further explained that "governmental privileges, if created and applied indiscriminately, will undermine public trust 'in the integrity of the government and its commitment to serving the public interest." *Id*. (quoting G. Wetlaufer, *Justifying Secrecy: An Objection to the General Deliberative Privilege*, 65 Ind. L.J. 845, 890 (1990)). Finally, the Illinois Supreme Court concluded "that in light of the range of competing policies underlying the deliberative process privilege, its adoption should be left to the General Assembly." *Id*. at 54; s*ee Harris v. One Hope United, Inc*., 28 N.E.3d 804, 812 (Ill. 2015) ("We find *Birkett* and *Homer* instructive insofar as they counsel . . . against judicial infringement upon what is principally a policymaking decision for the legislature.")

In the instant case, this Court is bound by Illinois law on matters of privilege. Subject matter jurisdiction is based upon diversity of citizenship. *See* 28 U.S.C. § 1332. The claims in the complaint are brought under Illinois law. "[I]n a civil case, state law

5

governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Therefore, this Court is bound by Illinois privilege law in its adjudication of the instant motion to compel.[1] Accordingly, because Illinois privilege law governs this dispute, and Illinois does not have deliberative process privilege, an objection to production on the basis of the deliberative process privilege is misplaced.

The CCSAO attempts to skirt around this fact by arguing that the internal memo is protected under a "deliberative process-like privilege." (*See* CCSAO Mot. at 3., ECF No. 248.) This creative verbiage does not win the day for the CCSAO. Renaming this privilege or refraining from saying its name will not help the CCSAO.

The CCSAO contends that the Illinois Supreme Court, in *Homer*, recognized a privilege covering certain deliberative process materials and that the internal memo falls within this privilege. (CCSAO Mot., ECF No. 248 at 3) (*citing Ill. Educ. Labor Relations Bd. v. Homer Cmmty. Consol. Sch. Dist.*, 547 N.E.2d 182 (Ill. 1989). However, *Homer* does not support the CCSAO's argument. Before we apply *Homer* to the facts at hand, a consideration of how the Illinois Supreme Court has addressed claims of the deliberative process privilege, and related privileges is instructive.

First, the Court reiterates that the Illinois Supreme Court held in *Birkett* that there was no deliberative process privilege in Illinois. *Birkett* was decided years *after* the *Homer* opinion was issued. Thus, it cannot follow that a deliberative process privilege argument could withstand the *Homer* test. The Illinois Supreme Court interpreted its own jurisprudence in *Birkett* and found that *Homer* did not create a deliberative process-like

---

[1] We note that in its filing, the CCSAO solely discusses the application of Illinois law to the issue before the Court. Based on this tacit approach, the Court presumes that the CCSAO concedes that Illinois privilege law, as contrasted to federal privilege law, is controlling.

6

privilege. As a federal court applying state law, this Court is obligated to rely on existing state jurisprudence where possible, and should avoid expanding the meaning of state law where the Illinois Supreme Court has already spoken on the issue. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636 (7th Cir. 2002) ("[T]he duty of the federal court, sitting in diversity, is to determine the content of state law as the highest court of the state would interpret it.) (citations omitted); *Bearce v. United States*, 433 F. Supp. 549, 551-52 (N.D. Ill. 1977) ("A federal court is bound by the laws of the state where it sits as they are interpreted by the judges of that state.") (citing *Berghoff Restaurant Co., Inc. v. Lewis W. Berghoff, Inc.*, 499 F.2d 1183 (7th Cir. 1974). *See also Zepik v. Tidewater Midwest, Inc.*, 719 F. Supp. 751, 757-58 (N.D. Ind. 1989) ("*Gibbs* Court suggested that federal courts should avoid needless determination of state law issues 'both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.'") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Our analysis is thus bound by *Homer* and its progeny. We are particularly comfortable that Illinois courts would not apply a "deliberative process-like privilege" in the instant case based on Illinois Supreme Court jurisprudence as articulated in *Birkett* and *Harris.*

In *Birkett,* the City of Chicago, relying on the deliberative process privilege, sought to block production of internal documents exchanged between city policy makers regarding future expansion plans at O'Hare International Airport. In holding that no deliberative process privilege exists under Illinois law, the Illinois Supreme Court noted that the "primary rationale for the privilege is to ensure the frank exchange of advice and opinions in the course of governmental decisionmaking [sic] and policymaking." *Birkett,* 705 N.E.2d at 50. Yet, the CCSAO relies on this same rationale -- the need for

7

confidentiality to foster full and frank discussions among decision makers -- in arguing for the application of a privilege in the instant case. (CCSAO Mot. at 4-5, ECF No. 248.) Because the Illinois Supreme Court has already rejected the CCASO's argument in *Birkett* as a basis to create a deliberative process privilege, we are confident that the Illinois Supreme Court would also reject it under the instant set of facts.

In *Harris v. One Hope United, Inc.*, the Illinois Supreme Court declined to create a deliberative process-like privilege under the rubric of the self-critical analysis privilege. *Harris*, 28 N.E.3d at 805. In *Harris*, a social service agency responsible for monitoring the well-being of an infant was sued after the infant drowned. Following the infant's death, the social service agency prepared a report to determine whether its services were "professionally sound, [identify] gaps in service delivery, and evaluat[e] whether certain outcomes have been successful or unsuccessful." *Id.* at 806 (internal quotations omitted). During the discovery process, the agency sought to withhold production of the report, arguing it was protected from disclosure by the self-critical analysis privilege. *Id.* The Illinois Supreme Court rejected the application of this privilege. Reflecting on both *Homer* and *Birkett*, the Illinois Supreme Court stated:

> We find *Birkett* and *Homer* instructive insofar as they counsel, in the first instance, against judicial infringement upon what is principally a policymaking decision for the legislature, and in the second, for consideration of legislative enactments that are in place before deciding whether expressions of public policy therein warrant a rare exercise of judicial authority [to create a privilege].

*Id.* at 812 (quotations omitted) (citing *Birkett,* 184 Ill.2d at 533).

We find the reasoning of *Harris* instructive on two levels. First, to the extent the CCSAO's argument as to a deliberative process-like privilege is premised on the memorandum's self-analysis of how the Simon and Porter cases were handled by

8

prosecutors and investigators, we are confident that Illinois law does not recognize such a privilege.[2] Second, *Harris* further informs us as to how Illinois courts would apply the *Homer* test to the facts presented here. We now turn to that analysis.

The issue before the Illinois Supreme Court in *Homer* was "whether certain information pertaining to a party's collective-bargaining strategy [was] privileged from disclosure during unfair labor practice proceedings conducted under the Illinois Educational Labor Relations Act (Act)." 547 N.E.2d at 184-85. The *Homer* court stated that "in certain *rare* instances" (emphasis added) an evidentiary privilege would be recognized for confidential documents where the following four conditions were present:

> 1. The communications must originate in a *confidence* that they will not be disclosed.
>
> 2. This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.
>
> 3. The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.
>
> 4. The *injury* that would inure to the relation by the disclosure of the communication must be *greater than the benefit* thereby gained for the correct disposal of litigation.

*Id.* at 185 (emphasis in original).

Applying these four criteria, the CCSAO argues that the privilege recognized in *Homer* should be applied in the instant case. We disagree. Under the first prong of the *Homer* test, the CCSAO argues that the internal memo originated in confidence because it "concerns internal deliberations of the State's Attorney's Office at the highest level

---

[2] The CCSAO's filing does not make explicit reference to any internal review process contained in the memorandum. However, the CCSAO's brief relies heavily on concepts of immunity from suit (*i.e.* absolute immunity) to justify the application of a deliberative process-like privilege. This argument at least suggests that part of the "full and frank discussion of the issue posed by potential prosecution" may include a consideration of errors or omissions in the Porter / Simon cases. *Harris* makes clear that any self-critical analysis is not shielded by privilege in this context.

9

(including with the State's Attorney) about whether to vacate charges or proceed with charges." (CCSAO Mot. at 4, ECF No. 248.) This assessment of the nature of confidence in which the memorandum was prepared is far afield from the situation that motivated the *Homer* holding. As already noted, the *Homer* case involved a teacher union's efforts to gather certain documents generated by the school board against which the union was negotiating. Thus, there was a directly oppositional relationship between the two entities. Second, and more importantly to this Court's understanding of *Homer*, is that documents sought by the union were the school board's internal deliberations as to how best to respond to the collective bargaining action with the union. In other words, the documents sought were directly related to the underlying focus of the adversarial process at hand between the two competing parties.

In the instant case, neither of these considerations applies. First, the CCSAO is not a party to this litigation nor could it become a party to this action, as absolute immunity applies to the CCSAO's decisions related to Simon's prosecution. The CCSAO argues that the decision making process of CCSAO should not be attacked through litigation and that it is "settled that prosecutors are absolutely immune from §1983 suits for damages relating to their initiation and presentation of the state's case." (CCSAO Mot., ECF No. 248 at 4 (citing *Imbler v. Pachtman*, 424 U.S. 409, 431, n.33 (1976).) However, this case is not a § 1983 suit for money damages against prosecutors, but a state-law malicious prosecution claim against private parties. Moreover, this Court fundamentally disagrees with the CCSAO's view that its absolute immunity from suit for malicious prosecutions suggests that its internal deliberations should be further shrouded in secrecy. Because absolute immunity protects the CCSAO from suit based on its

prosecutorial functions, there is less reason to protect its internal deliberations under *Homer* because disclosure would not "undermine" the CCSAO's position as compared to others involved in the litigation. *Cf. Petry v. Lawler*, 718 F. Supp. 1396, 1398 (S.D. Ind. 1989) ("[A]bsolute immunity attaches *only* to conduct within the scope of the prosecutorial duties") (emphasis added).

Second, while the CCSAO's decision as to why the murder charges against Simon should be dropped is certainly relevant to the resolution of the instant matter[3] that decision-making process was made years ago and was not instigated or motivated by the instant litigation. To the contrary, the memorandum was prepared in the normal course of the CCSAO's lawful duties and obligations. The memorandum was *not* prepared as a by-product of the litigation at hand and its contents were not prepared with the belief that they would not be shared with the public. Indeed, then-State's Attorney Alvarez publically shared her concerns surrounding the Porter / Simon prosecutions when she announced that charges against Simon were being dropped in a press release. (Compl.

---

[3] The Court disagrees with the CCSAO that its own reasoning for vacating the murder charges against Simon via *nolle prosequi* is not relevant to the resolution of the instant matter. (See Defs' Reply at 6, ECF No. 261 "To succeed on his malicious prosecution claim, Plaintiff must show that the original proceeding terminated in his favor . . . An order of *nolle prosequi* is not a favorable termination if it was entered for reasons not indicative of Simon's innocence." (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242-43 (Ill. 1996). Certainly at the discovery stage of this litigation, the reasons for the dismissal have been deemed at least relevant by the district court judge assigned to this matter:

> "More importantly, taking Alvarez's statements at the press conference as a whole, there is at least a genuine issue of material fact as to whether the *nolle prosequi* was entered for reasons indicative of Simon's innocence . . . Additionally, Alvarez's statements at the press conference may not be the most reliable source of the prosecutors' reasoning underlying the *nolle prosequi,* as a State's Attorney may not want to make public all of the rationales behind an exercise of prosecutorial discretion, either for law enforcement reasons, political reasons, or both. Further, these statements at the press conference could be easily rebutted by other evidence of the context surrounding the *nolle prosequi* order, which may be elucidated during discovery."

(Judge Dow Opinion at 8 & 10, ECF No. 218.)

¶125, ECF No. 1.) In *Homer*, conversely, the bargaining strategy of the school board was not intended to be shared in any meaningful way with the teacher's union. *Homer*, 547 N.E.2d at 185 ("Disclosure of these deliberations to a teachers' union with whom the school board is engaged in collective bargaining would seriously undermine the board's negotiating position").

Finally, the Illinois Supreme Court has held that "the mere assertion that the matter at issue is 'confidential' and 'privileged' will not suffice [to create the privilege articulated in *Homer*]. Rather, the proponent of the privilege must set forth with particularity circumstances giving rise to the privilege in each particular case." *Birkett*, 705 N.E.2d at 53 (citing *Cox v. Yellow Cab Co.*, 61 Ill. 337 N.E.2d 15 (1975)). Therefore the simple assertion "that the documents originated in confidence" cannot help CCSAO satisfy the first condition of the *Homer* test. (CCSAO Mot. at 4, ECF No. 248.) In light of the foregoing, the Court finds the internal memo did not originate in confidence as contemplated by *Homer*.

For completeness, the Court further considers the three additional requirements in *Homer*. As to the second requirement that "the element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties," the CCSAO argues that exposing the contents of the memo will compromise the independence and decision-making function of the prosecutor's office. Mindful of the uniquely important function of a prosecutor's office and its responsibility to the public, the Court does not believe that the CCSAO's decision-making process must be kept confidential in the instant case in order maintain "the relation between the parties" or to preserve its "independence and decision-making function." Notably, and as stated above,

the CCSAO is not a party to this litigation.  Thus, confidentiality of the internal memo does nothing to further the relation of the parties to this litigation.  Indeed, both Plaintiff and Defendants have expressed interest in obtaining the internal memo.  Additionally, the reasoning behind Ms. Alvarez's decision to dismiss charges against the Plaintiff may be pivotal to the resolution of this case.  Thus, in considering the maintenance of the relation between the parties, confidentiality is not "essential," but rather counterproductive to the resolution of this matter.  We find that CCSAO cannot meet *Homer*'s second prong.

As to the third prong, the oppositional relation between the CCSAO and Plaintiff must be one which in the opinion of the community ought to be sedulously fostered.  The CCSAO likens the current relationship it holds with Plaintiff to the relationship between the parties in a collective bagaining relationship "because the CCSAO was adverse to Plaintiff during the criminal prosecution." (CCSAO Mot. at 5., ECF No. 248.)  The CCSAO adds that Plaintiff would be barred from suing the prosecutor's office becasue of absolute immunity.  Neither of these arguments support the notion that the oppostional relation between the CCSAO and Simon should be sedulously maintained by the community.  While criminal prosecutions are fairly described as adversarial, significant areas of statutory and constitutional law suggest society does not consider the prosecutor's office to be controlled by an adversarial relationship with a criminal defendant.  The prosecutor is protected from suit under 42 U.S.C. §1983 because her goal should be to ensure that justice prevails as opposed to being victorious in the litigation process.  *See Imbler v. Pachtman*, 424 U.S. 409, 426 (1976) (holding that absolute immunity applies to prosecutors in 42 U.S.C. §1983 because prosecutors' discretion and exercise of judgment to achieve justice would be compromised if they were subject to

suit for such decisions). A prosecutor must identify information that is helpful to a crimnal defendant's case, and has a duty, among other obligations, to learn of favorable evidence known to others acting on the government's behalf, all to ensure a defendant's due process rights are protected. *See, e.g., Kyles v. Whitley,* 514 U.S. 419, 439 (1995) (a prosecutor should be encouraged to disclose every piece of favorable evidence as [s]uch disclosure[s] will serve to justify trust in the prosecutor"); *United States v. Junah*, 599 F.3d 799, 809 (7th Cir. 2010) (duty to learn of favorable evidence). The *Homer* court relied on multiple statutes that shielded from disclosure deliberations of opposing entities during labor negotiations to justify its conclusion that the opinion of the community sedulously fosters "the privilege recognized by the court. " *Homer*, 547 N.E.2d at 187. Considering how the law defines the relationship between prosecutor and criminal defendant, the Court does not find that the "adversarial" relationship between the CCSAO and Simon is one that in the opinion of the community ought to be sedulously fostered.

Finally, we consider whether the injury to the relationship caused by disclosure would be greater than the benefit gained through the proper resolution of the instant matter. The CCSAO summarily argues that disclousre of the memorandum would damage "the interests served by maintaining the principle of prosecutorial discretion" *Id.* Initially, we note that the *Homer* test considers the damage to the relationship between the parties involved in the litigation, not the interests of a non-party, as the CCSAO argues. Second, we believe that in a case such as this, the proper resolution of the merits outweighs any theoretical damage to the alleged "oppositional" relationship between the CCSAO and Simon. After 15 years in custody for a crime that then-State's

14

Attoreny Alvarez chose to dismiss, the publics' interest in understanding why this happened (and perhaps how to avoid similar outcomes in the future) fair outweighs any relational damage that may exist between Plaintiff and the CCSAO.

**Conclusion**

For the foregoing reasons, the motion is denied, without prejudice, in part and granted in part. The motion is denied, without prejudice as to the emails. The motion is granted with respect to the internal memo. The CCSAO shall forthwith produce the memorandum it is currently withholding based on its claim of privilege.

SO ORDERED.                                        ENTERED: May 4, 2017

*M. David Weisman*

_____

M. David Weisman
United States Magistrate Judge