# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALSTORY SIMON, | ) |
| *Plaintiff*, | ) |
| vs. | ) Case No. 1:15-CV-1433 |
| NORTHWESTERN UNIVERSITY, DAVID PROTESS, PAUL J. CIOLINO, | ) Judge Robert M. Dow Jr. |
| | ) Magistrate Judge M. David Weisman |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

On March 31, 2017 the Court granted Martin Preib's motion to intervene but denied his motion to quash Defendant Paul Ciolino's subpoena for phone-call recordings made between Preib and the Plaintiff while Plaintiff was incarcerated at the Illinois Department of Corrections (hereinafter "IDOC"). Preib now moves for reconsideration of the Court's order as to the motion to quash. As explained below, Preib's motion for reconsideration is denied.

**I. Background**

The facts are set forth in detail in the Court's March 31, 2017 order. *See Simon v. Northwestern*, No. 15 C 1433, 2017 WL 1197097 at *1 (N.D. Ill. Mar. 31, 2017). In sum, Plaintiff contends he was wrongfully convicted of a double-murder. He was freed after spending fifteen years in prison for crimes he maintains he did not commit. While

1

Plaintiff was incarcerated, Martin Preib, a freelance journalist and author of the blog *Crooked City,* reported on Plaintiff's conviction. Most of Preib's fact-gathering about Plaintiff's case was conducted telephonically with Plaintiff over IDOC's recorded phone lines. The culmination of Preib's research on Plaintiff's conviction can be found in a lengthy article, entitled, *What's Wrong with the Wrongful Conviction Movement?* (hereinafter "Article"). Defendant subpoenaed the IDOC phone recordings of all non-privileged conversations between Plaintiff and others that IDOC has maintained. IDOC has expressed no objection to the production of these recordings. Preib subsequently moved to quash the subpoena on the grounds that Preib's recordings with Plaintiff are protected under the Illinois reporter's privilege. 735 Ill. Comp. Stat. 5/8-901.

On March 31, 2017, the Court denied Preib's motion to quash. Under Illinois state statute, reporters have a qualified privilege that prohibits courts from compelling reporters or others to disclose a reporter's sources of information. 735 Ill. Comp. Stat. 5/8-901. The statutory privilege applies when a court orders the disclosure of reporter's *source of information.*

The Court found that Preib's newsgathering activities for the Article qualified him as a reporter but that the IDOC recordings were not his source as defined by Illinois state statute. Accordingly, the Court held that the reporter's privilege was inapplicable.

**II. Legal Standard**

Although there is not an explicit rule governing the standard for motions to reconsider, "courts in this District have construed motions to reconsider interlocutory orders . . . as arising under Rule 54(b) in addition to the Court's inherent authority and the

2

common law." *Caine v. Burge*, 897 F. Supp. 2d 714, 716 (N.D. Ill. 2012). A party prevails on a motion to reconsider when:

> (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court.

*Goldman v. Gagnard*, Case No. 11 C 8843, 2012 U.S. Dist. LEXIS 87226, at * 6-7(N.D. Ill. June 21, 2012) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir. 1990)). A motion for reconsideration is within the sound discretion of this Court and will be reversed only upon a showing of abuse of discretion. *Burge*, 897 F. Supp. 2d at 716. A motion for reconsideration is not an opportunity for the movant "to take a second bite at the apple or raise new arguments that it did not make in the first instance." *Gagnard*, 2012 U.S. Dist. LEXIS 87226 at *7 (internal quotations omitted). For the reasons set forth below, Preib has failed to meet this standard.

**III. Discussion**

Preib argues that the Court should reconsider its order denying his motion to quash for four reasons. (Mot. Recons. at 1, ECF No. 272) First, Preib argues that the Court ignored the plain text of the Illinois Reporter's Privilege Act ("Act" or "Statute") by interpreting it to only protect source material in the reporter's possession. (*Id.* at 5 ("The Court's interpretation of the Act has essentially added the requirement to the Act that it only applies to materials within a reporter's possession, a requirement not found in the statute.").) Preib misunderstands the Court's opinion.

3

The Act defines a reporter's source as the "person or means from or through which the news or information was obtained." 735 Ill. Comp. Stat. 5/8-902. The issue before the Court is whether IDOC's recordings of Preib and the Plaintiff's phone conversations fall within that definition. As an initial matter, the Court notes that as a federal court ruling on Illinois state law, we must try to determine how the Illinois Supreme Court would rule on the issue in reaching our conclusion. *See Kelley v. Lempesis*, No. 13 C 4922, 2015 U.S. Dist. LEXIS 107719, at *6 (N.D. Ill. Aug. 17, 2015). "'In making that prediction, the decisions of the Illinois Appellate Court are non-binding but persuasive 'unless [the court has] a compelling reason to doubt that [the Illinois Appellate Court has] stated the law correctly.'" *Id.* (quoting *Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 178 (N.D. Ill. 2015)).

The purpose of the Illinois reporter's privilege is to prevent a Court from compelling the disclosure of a reporter's source of information. In this regard, the term "source" has two different roles in construing the scope of the reporter's privilege.

First, the term "source" gives meaning to the *type* of materials that may be protected from disclosure. Illinois courts will find a reporter's resource materials are a "source" within the meaning of the statute, when the reporter used a person or materials as a means of collecting information during the journalistic process. *See People ex rel. Scott v. Silverstein*, 412 N.E.2d 692 (Ill. App. Ct. 1980), *rev'd on other grounds*, 429 N.E.2d 483 (Ill. 1981) (finding that the identity of the "individuals [the reporter] contacted in the course of researching his stories" and documents that appeared in his story were "sources" under the statute's definition); *Johns-Byrne Co. v. Technobuffalo LLC*, No. 2100 L 009161 at *6 (Ill. Cir. Ct. Jul. 13, 2012) (Mot. Recons. Granting Rule

4

224 Petition) (finding an anonymous tipster was a source because the reporter "*acquired* [the] news or information" from him) (emphasis added).

The Illinois Appellate Court's analysis on the definition of a "source" in *People v. Slover* is instructive as to this use of the term "source" within the privilege statute. *People v. Slover*, 753 N.E.2d 554, 557 (Ill. App. Ct. 2001). The issue before the *Slover* court was whether a reporter's unpublished photographs related to a murder investigation were a source within the statute's definition. The Court first explained that the Statute defines a source as a "person" or a "means." 753 N.E.2d at 557. The *Slover* court went on to explain that "[b]y defining 'source' to include a 'means,' the legislature clearly intended the privilege to protect more than simply the names and identities of witnesses, informants, and other persons providing news to a reporter." *Id*. The court defined *means* as "'something useful or helpful to a desired end.'" *Id*. (quoting Merriam-Webster's Collegiate Dictionary 720 (10th ed. 1998)). The *Slover* court found that "[n]ews media employ photographers for purposes beyond obtaining pictures to publish; photography is the *useful means* to collect newsworthy information." *Id*. (emphasis added). The court added that "'[p]hotojournalism'. . . is a descriptive word meant to recognize the photographer's capacity to tell a story and gather or report the news by means of an image." *Id*. Thus, the *Slover* court concluded that when a reporter "obtains news or information by means of photography, the photograph is a 'source' of information within the plain meaning of section 8-901 as defined in section 8-902(c)." *Id*. *Slover* is instructive as it explains what types of materials may be protected as a journalist's "source."

Within the Reporter's Privilege Act, however, "source" has another and arguably more important purpose. The word "source" also identifies the *way* in which the information is collected. The Act makes clear that a court "may [not] compel any person to disclose the *source* of any information obtained by a reporter." 735 ILCS 5/8-901 (emphasis added). "Source" in this context means how the reporter obtained the information, not the information itself. *See FMC Corp. v. Capital Cities/ABC, Inc.,* 915 F.2d 300, 305, n. 4 (7th Cir. 1990) (Illinois Reporter's Privilege did not allow media outlet to maintain control over company's original documents gathered during investigative reporting efforts because privilege prohibits forced disclosure of the source of the documents, not the forced return of the documents themselves). For example, when the information is collected from a person, the forced disclosure of the *identity* of that person is forbidden but the *content* of that information is not automatically protected. *See also People v. Palacio*, 607 N.E.2d 1375, 1384 (Ill. App. Ct. 1993) (the reporter's privilege "applies only to circumstances in which someone seeks to compel a reporter to disclose the *source* of any information obtained by the reporter) (emphasis in original).

In some circumstances, how the reporter obtained the information and the information itself are one in the same. In *Slover*, the unpublished photographs served this dual purpose. The photographs were the "means" by which the newspaper obtained information, and were the "source" of which the parties sought to compel production. In other circumstances, the "means" by which a journalist obtained information, and the information itself are much more separate. *FMC Corp. v. Capital Cities/ABC, Inc.,* is an example of such a case. There the "means" of the journalist obtaining the corporate documents was never exposed, but the documents themselves – i.e. the information upon

6

which the reporting was based – were ordered returned to the plaintiff. These two examples demonstrate an important limitation of the reporter's privilege: the privilege does not always protect the underlying information used by reporter if a litigant can obtain that information from some other means.

Considering all of the above, the Court affirms its earlier finding that the IDOC recordings are not a source within the statute's definition. First, the recordings were not Preib's "useful means" of collecting or gathering newsworthy information. Indeed, Preib never accessed the recordings at all. Preib confuses his interviews of Simon, which were the means by which Preib obtained information, with IDOC's recordings of the same. We agree with Preib that the Act does not "limit the term 'source' solely to material within the reporter's possession." (Mot. Recons. at 4, ECF No. 272.)[1] However, the fact that Preib never possessed, "accessed, [saw], let alone listened to, the IDOC recordings" *Simon*, 2017 WL 1197097 at *5, strongly indicates to the Court that the IDOC recordings could not have informed, let alone been *useful* to Preib in writing the Article and therefore the recordings are not his source. As stated in our March 31, 2017 opinion, "if the subpoena were directed to Preib and sought Preib's recordings of his conversations with Simon, the analysis would be markedly different." *Id.* at *6. To be explicit, the fact that the recordings are in IDOC's possession is not dispositive, instead it is one of many factors relevant to the Court's analysis. Even if the recordings were not in IDOC's

---

[1] To that end, we acknowledge, that the Court's original opinion included verbiage that, taken in isolation, might suggest that possession or control of the source material controlled the Court's decision. *See e.g.*, *Simon*, 2017 WL 1197097 at *6 ("the insurmountable problem is . . . that the subpoena . . . does not seek [Preib's] materials."). Therefore, we appreciate Preib's invitation to clarify our explanation. But, our reasoning, as we believe is sufficiently explained in the original opinion, was never premised on who controlled the alleged source material. Rather, the issue was and is dependent on Preib's lack of use of the IDOC recordings to further his journalistic efforts.

possession they are still not Preib's "source" because, there is no evidence to show that Preib ever used the recordings to collect information for the Article.

Second, the subpoena does not seek disclosure of Preib's source of information. Rather, the subpoena seeks the information used by Preib — information (in the form of recordings) not in Preib's possession or control. Preib contends that the Act does not say "no reporter" can be compelled to disclose his source of information, but instead reads "no court may compel *any person* to disclose the source of any information obtained by a reporter." 735 Ill. Comp. Stat. 5/8-901 (emphasis added). While Preib is correct that the statute prohibits compelling disclosure of a reporter's source of information from *any person*, he nonetheless misconstrues the scope of the privilege by disregarding the purpose of the statute. As noted *supra*, the privilege is intended to protect forced disclosure of the *source* of the information, but does not necessarily protect the information provided by the source.

The Illinois Appellate Court has made this distinction clear. In *People v. Palacio*, a reporter was called to the stand to testify about a column he wrote and certain conversations he had concerning the subject matter of the column. 607 N.E.2d at 1382. The reporter asserted the reporter's privilege, but the trial court found the privilege was inapplicable because the reporter was not going to be asked to reveal his source; instead he would be asked about information that the source provided, information that had already been published in his column. *Id.* at 1383. The appellate court affirmed the trial court, finding the privilege was inapplicable. *Id.* The Court stated:

> The interpretation [the reporter] asks this court to make of section 8-901 of
> the Civil Code is as if it read, "No court can compel a reporter to disclose

> any information." If we accepted [the reporter's] interpretation, then a reporter could claim the benefits of the reporter's privilege if he were subpoenaed to testify in his own divorce case or in a civil case totally unconnected to his employment--such as an automobile accident--in which he was a party. We decline to read out of section 8-901 of the Civil Code the phrase "to disclose *the source* of any information."

*Id.* at 1384 (emphasis added). This same principle is echoed in *FMC Corp. v. Capital Cities/ABC, Inc., supra*.

Notably, the privilege belongs to the reporter, it does not belong to the source. *See* 735 ILCS 5/8-901. Accordingly, the purpose of the statute is *not* to protect *the material* relied upon by the reporter in researching and reporting her journalistic piece. Rather, the purpose of the statute is to *protect the reporter and others* from being forced to identify the source of the materials relied upon in producing her journalistic piece, and, in some instances, to also protect the journalist and others from being forced to produce those materials. The Court believes that this is an important distinction that the Preib fails to appreciate. Preib's suggested application of the statute would not only give him the right to fend-off any effort forcing him to identify and/or produce his source material (a right this Court believes a reporter may properly assert), but would also give Preib the unqualified right to keep relevant information out of the legal proceeding altogether each time a third party possesses a copy of a reporter's source material (a right this Court does not believe a reporter may assert). We believe Preib's suggested approach is a significant departure from the legislature's goal in enacting the Statute. We therefore find no error in our original ruling.

Second, Preib argues that the Court erred by ignoring the Statute's requirements for divestiture. (Mot. Recons. at 6, ECF No. 272.) Preib argues that "[b]ecause no

9

application nor motion to divest was made, the Court erred in finding the reporter's privilege inapplicable." (*Id*.) Thus, according to Preib, the Court "should either grant Preib's motion to quash or order Ciolino to make an application to the Court to divest the privilege." (*Id*.) This position is wrong. Under Illinois statute, a reporter may be divested of privilege after the party seeking the information files an application to the court. 735 Ill. Comp. Stat. 5/8-903. However, divestiture only occurs after Court finds that the reporter's privilege applies; the mere assertion of the privilege does not automatically require a Court to attach the procedural aspects of divesture. *Palacio*, 607 N.E.2d at 1383. In *Palacio*, the trial court found that the reporter's privilege was inapplicable to the reporter asserting it. *Id*. On appeal, the reporter argued that "trial court erred because the mere assertion of the privilege made the procedural aspects of the [reporter's privilege statutes] applicable" and thus the trial court should have followed the "mandatory procedural requirements" of divestiture. *Id*. The appellate court disagreed and stated, "the plain language of section 8-901 of the Civil Code makes clear that the legislature has determined to protect reporters from disclosing their sources. That statute does not, as [the reporter] seems to argue, constitute a wholesale ban on ever calling reporters to testify unless the trial court has complied with the divestment procedures of the reporter's privilege." *Id.* Accordingly, we do not apply the procedural aspects of divestiture because the reporter's privilege is inapplicable for the reasons explained herein.

Third, Preib states that the Court's ruling eliminates the reporter's privilege for prison interviews because all such interviews are recorded by IDOC. (Mot. Recons. at 7, ECF No. 272). Thus, he contends that "the evisceration of the privilege for all criminal

justice reporting from an IDOC inmate's perspective is an equitable consideration this Court should consider." (*Id*. at 8.) Preib did not make this argument in his original motion, however we will address it briefly. It is not within this Court's purview to expand the statute beyond what is written. The language of the Act clearly sets forth the requirements of the reporter's privilege and when "a statute is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express;" nor may it "engraft new or different provisions onto the statute." *Superior Structures Co. v. City of Sesser*, 686 N.E.2d 710, 713 (Ill. App. Ct. 1997) (citations omitted). We are required to interpret the statute as it is written we "may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute." *Id*. Accordingly, this Court cannot create a new exception in the Statute where one is not written. *See Seaman v. Thompson Elecs. Co*., 758 N.E.2d 454, 457 (Ill. App. Ct. 2001) ("It is not our province to inject provisions not found in a statute.") (citing *In re Cook*, 462 N.E.2d 557, 561 (Ill. App. Ct. 1984)).[2]

Finally, Preib argues that the recordings contain confidential research and therefore Defendant should make a showing of substantial need for them or, in the

---

[2] The Court notes that it is not clear that this ruling will eviscerate the privilege in prison in the first instance. According to the affidavit provided by defense counsel, a reporter seeking an interview with an inmate at IDOC can request an in-person, unmonitored interview. (*See* Def. Resp. at 3, Ex. A, ECF No. 277.) A reporter seeking to conduct an unmonitored interview can request written permission from the inmate to be interviewed; IDOC subsequently reviews the request and either denies or grants it. (*Id*.) Additionally, defense counsel cites an article where a reporter conducted an in-person interview of an inmate through IDOC's procedures. (*Id*.) The Court recognizes the important role reporters have in covering inmates' stories. The Court is doubtful that this opinion will prevent those stories from being published.

11

alternative, the Court should make an *in-camera* inspection of the material to determine its relevance. Preib cannot make a relevancy argument at this late hour. The recordings contain, *inter alia,* interviews with the Plaintiff about the subject matter of this case. The Court declines to make an *in camera* inspection of these recordings as we believe relevance is obvious. The Court notes that we have already ruled that access to all of the IDOC recordings has been limited. *See The Court's Jan 6, 2017 Order*, ECF No. 220. However, given the asserted confidential nature of the subpoenaed information, the recordings will be subject to the confidentiality order in this matter. Thus, this aspect of Preib's motion is granted.

## **Conclusion**

For the foregoing reasons, Martin Preib's motion for reconsideration [272] as to the motion to quash is generally denied. The Court orders the IDOC recordings to be subject to the confidentiality order in this matter.

SO ORDERED. ENTERED: June 20, 2017

*M. David Weisman*

M. David Weisman
United States Magistrate Judge