**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALSTORY SIMON, | ) | |
|     Plaintiff, Counter-defendant, | ) | Case No. 15 CV 1433 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | Magistrate Judge M. David Weisman |
| NORTHWESTERN UNIVERSITY, et al. | ) | |
| | ) | |
|     Defendants, | ) | |
| | ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S REDACTED RESPONSE TO DEFENDANT CIOLINO'S SEALED
MOTION TO DE-DESIGNATE THE VALENTINI MEMO AS CONFIDENTIAL**

**BACKGROUND**

On May 4, 2017, this Court ordered the Cook County State's Attorney's Office (SAO) to produce the Valentini memo to the parties, the disclosure of which was opposed only by the SAO. Indeed, the Court noted in that Order that "both Plaintiff and Defendants have expressed interest in obtaining the internal memo." (Dkt. 284, Memorandum Opinion and Order, p.13). Moreover, Plaintiff has never sought a confidentiality designation for any document in this case, including the Valentini memo, in stark contrast to Defendants, who have successfully obtained orders insulating wide swaths of material from public scrutiny.

Nonetheless, before the Valentini memo was produced, all parties acceded to the SAO's demand that they agree in writing to treat the memo as confidential under the then existing protective order governing dissemination of materials.[1] (Ex. A, emails among counsel.) In fact, the protective order was specifically amended so that third parties, specifically the SAO, could claim confidentiality over documents they were ordered to disclose. (Ex. B, Protective Order,

---

[1] On May 28, 2017, by agreement of all parties, the "July 22, 2014 CCSAO memo" was produced as a confidential document pursuant to the Protective Order entered by this Court on Nov. 18, 2016. *See* Dkt. 185. On June 14, 2017, an Amended Protective Order was entered by this Court, *see* Dkt. 320, however the amendments had no effect on the confidential designation of "July 22, 2014 CCSAO memo."

Dkt. 320, fn.1.) The protective order provides that "Confidential Information shall not be used or disclosed by the parties [or] counsel for the parties …for any purpose whatsoever other than this litigation…. (*Id.,*p. 3, ¶ 5(a).) It further requires counsel for the parties to make "reasonable efforts to prevent unauthorized or inadvertent disclosure of Confidential Information. (*Id.*, p. 5, ¶ 5(c).)

On May 28, 2017, the SAO disclosed the Valentini memo to the parties subject to the protective order. (Ex. C, Valentini memo.) One week later, on June 5th, during a status/motion hearing on unrelated matters, Defendant Ciolino's counsel, Ms. Bonjean, raised the issue of removing the confidentiality designation on the Valentini memo. Tribune columnist Eric Zorn also attended Court that morning, after which he questioned Plaintiff's counsel, Terry Ekl about the Valentini memo.[2] Mr. Ekl explained that he was prohibited from discussing the memo because it was under a protective order.

The following day, June 6, 2017, Zorn published a "stage-setter" column in the Tribune revealing that he was already privy to the Valentini memo. (See Ex. D.) Indeed, Zorn described the memo as a "28 page, single-spaced report", but did not reveal its contents, actually citing the Court's protective order. (*Id.*) But Zorn did mention that "Ciolino's attorney, Ms. Bonjean, had moved during a status hearing in federal court Monday to lift the confidentiality order. (*Id.*) Unsurprisingly, Zorn did not reveal who provided or alerted him to the existence and content of the Valentini memo. (*See Id.*)

The following day, June 7th, Ms. Bonjean filed a sealed motion to de-designate the Valentini memo as confidential,[3] citing the transparently pretextual reason that she needed the

---

[2] Zorn is far and away Defendant Protess's biggest media advocate, and has authored columns ridiculing Plaintiff's cause for well over a decade.
[3] Bonjean did not seek leave to file the motion under seal in accordance with the Court's protective order and the Northern District's local rules. *See* Dkt. 320, Protective Order, p. 5, ¶ 7 and LR 26.2.

2

memo to frame her state court conspiracy and defamation lawsuit against Anita Alvarez as well as Plaintiff's attorneys and others. (Dkt. 313.) On the following morning, June 8, in orally responding to Ciolino's motion to de-designate, Plaintiff's counsel explained that Plaintiff has not sought confidentiality over any document in this matter, including the Valentini memo, but that fairness required public access to be a two-way street, and that it appeared someone from the defense had violated the protective order by discussing and/or providing the Valentini memo to the Tribune. Ms. Bonjean then contended she did not leak the memo, and stated that she had followed the rules of the Court in moving to have the confidentiality order lifted.

Following court on June 8th, Plaintiff's attorneys Terry Ekl and Jim Sotos, were each independently contacted by another Tribune reporter, Steve Mills, who advised that he possessed the Valentini memo and inquired whether they wanted to comment on it. Both Mr. Ekl and Mr. Sotos told Mills that they were prohibited by Court order from commenting on the memo. Mills told both attorneys that he would write that they "declined" to comment. Ekl and Sotos both explained that such a description was inaccurate, and Sotos added that he would very much like to discuss the memo if not prohibited by Court order from doing so.

On the following day, June 9th, Mills published a lengthy article liberally quoting from the Valentini memo which he had "obtained", and stating that "[t]he attorneys for Simon, who had encouraged Alvarez to re-examine the case against Simon and cheered her decision to release him, declined comment…." (Ex. E.) By contrast, Mills quoted Bonjean stating that "the report supports her belief that Alvarez allowed personal animus toward [Protess] to color her judgment" and that Alvarez "had long wanted to find a way to undercut the state's wrongful conviction movement." Bonjean was further quoted providing additional opinions regarding Alvarez's decision to release Plaintiff. (*Id.*) As such, Defendant Ciolino, through Ms. Bonjean,

3

exploited and violated the protective order by advancing unrebutted interpretations of the Valentini memo through their friends in the media, knowing that Plaintiff's attorneys would not respond due to the protective order.

On June 10th, Zorn published a third column about the memo liberally and selectively citing snippets in support of a hyperbolic and illogical headline declaring that Valentini's "bombshell report…explode[d] Simon's lawsuit" against the innocence industry.[4] (Ex. F.)

On or about June 12 and 13, attorneys for Defendants Northwestern and Protess confirmed to Plaintiff's counsel that they did not know how the Tribune obtained the Valentini memo. When Mr. Ekl asked Ms. Bonjean by email whether she had any knowledge as to how the Tribune obtained the memo Ms. Bonjean responded as follows:

> I am happy you finally reached out to me to ask this question, since I understand you have continued your pattern of defaming people by floating your theory around that I am responsible for leaking the memo to the Tribune. I can assure you that notwithstanding my aggressive advocacy, I value my law license a little too much to violate a federal PO. To be clear, neither I, my co-counsel, nor my client leaked the memo to the Tribune or anyone else. Indeed, when Mr. Mills called me for comment, I refrained from speaking directly about the contents of the memo. And as I understand it, Mr. Mills also called Mr. Piers for comment – something I learned today.

> That being said, when Mr. Mills asked for my comment, I took full advantage of sharing my long-standing and substantiated theory that Ms. Alvarez in conspiracy with you, Mr. Sotos (and others) knowingly released a guilty man to avenge a vendetta against Protess and NU. Moreover, in the interests of transparency, I did share with Mr. Mills my supported belief that you (and other members of Simon's

---

[4] In consistently describing Plaintiff's lawsuit as an attack on the "innocence industry", Defendants have transparently employed an all too common straw man argument in order to deflect attention from the real issue in this case, which is the conduct of two specific people associated with one specific innocence project. Neither Plaintiff nor his counsel have ever denigrated the laudable work of innocence projects in general, but rather, seek to ensure that individuals working on behalf of such institutions adhere to ethical and legal requirements, which at a minimum require them to avoid use of the same coercive tactics they decry in the police. Similarly, neither Plaintiff nor his attorneys are proponents of the death penalty, and have never utilized this lawsuit or Plaintiff's plight as a vehicle for undoing Illinois' moratorium on the death penalty.

legal team) contributed significant sums of money to Alvarez's re-election campaign in exchange for his release and the CCSAO's acquiescence to Simon's petition for a COI (although that didn't work out quite so well for you). You should know that if and until there is a gag order in this case, I will take every opportunity available to voice my opinion in the press about the fraud that was committed by your client and his supporters. I will not, however, violate court orders. And I would caution you to think long and hard before you make unsubstantiated accusations impugning my integrity because I will not be another victim of your swift-boating agenda.

Now, I could offer up a number of my own theories about who leaked the memo since there are at least five people I can think of with access to the memo who may have an axe to grind with Ms. Alvarez or Mr. Hale, but I decline to join you in the gutter. Besides, I have to get back to dismantling your star witness.

(Ex. G, Emails among counsel.)

## TO SAFEGUARD THE INTEGRITY OF THESE PROCEEDINGS THE COURT SHOULD CONDUCT AN EVIDENTIARY HEARING TO DETERMINE RESPONSIBILITY FOR THE DISREGARD OF THE COURT'S ORDER.

Not once has Plaintiff sought to keep a single piece of information about this litigation, including the Valentini memo, whether favorable or not, from the public eye. Rather, it is Defendants who have successfully obtained broad protective orders shielding massive amounts of information, including all depositions, from public scrutiny. Plaintiff and his counsel have honored the protective order, and have kept to themselves many documents and substantial information which substantiates Plaintiff's theory that Defendants routinely employed illegal and unethical tactics in order to coerce information from Plaintiff and witnesses in his and other criminal investigations.

By contrast, the intentional violation of the Court's protective order in connection with the Valentini memo, has revealed a calculated and stunning lack of respect for the Court's authority, perpetrated by someone who was fully confident that Defendants' media advocates would protect their identities, and cover-up their blatant disregard of the Court's Orders. That

leak also allowed Defendants and their media advocates to launch an unrebutted public counter-offensive against Plaintiff's lawsuit, by advancing the ridiculous narrative that Valentini's recommendation to Alvarez has massively and irretrievably damaged Plaintiff's case.

In point of fact, despite his recommendation, Valentini's memo REDACTED

---

[5] Defendants' persistent reliance on Alvarez's and Valentini's uncertainty as to the identity of the actual perpetrator illogically seeks to impose an unrealistic level of certainty to the SAO's decision to dismiss charges, strangely suggesting there would be no injustice to leaving a person imprisoned in the absence of irrefutable proof of innocence. The irony of such arguments coming from the advocates of representatives of an innocence project is striking.



REDACTED

Finally, Ciolino's suggestion that the "memo provides significant and compelling evidence of Defendant Ciolino's claim against Alvarez and co-defendants Ekl, Sotos, and Hale" is pure sophistry. Indeed, Ciolino has already laid out his ridiculous conspiracy theory[6] in his counter-complaint in this Court, which was dismissed only on jurisdictional grounds. As a result, there is nothing preventing Ciolino from re-filing the very same Complaint in state court.

## CONCLUSION

This Court must enforce its orders in order to prevent the parties and counsel from seeking to influence the jury pool by exploiting protective orders as both a sword and a shield in order to selectively release and discuss those pieces of information which they deem, rightly or wrongly, as supportive of their position. Someone is playing fast and loose with this Court's

---

[6] Ciolino's conspiracy claim contains two components, both of which are provably false. First, he contends Plaintiff's counsel supplied Plaintiff with the facts underlying his claim that Ciolino coerced his confession. All of the evidence proves that Plaintiff's counsel did not even learn about Plaintiff's case for about a year and a half **after** Plaintiff filed a pro se post-conviction detailing all of his allegations about Ciolino's coercion of his false confession. (*See* Ex. H, *Pro-se* petition.) Ms. Bonjean has ignored two Rule 11 letters in regards to that claim, apparently unconcerned about the power of the courts to stop her from advancing knowingly false allegations. Second, Ciolino contends Alvarez traded Plaintiff's release for campaign contributions and to further a vendetta against Protess. Yet, as Plaintiff's counsel advised the Court last week, Mr. Ekl and Mr. Sotos never met, spoke, or communicated with Alvarez until she invited them to a meeting with several of her staff members a month or two prior to Plaintiff's release to ask questions about the evidence. Neither campaign contributions, Alvarez's history with Protess, or his conduct in relation to any other cases was discussed, nor did Alvarez signal her intentions with respect to Plaintiff's case. Indeed, neither Mr. Sotos nor Mr. Ekl had any idea whether Plaintiff would be released until Mr. Valentini called Mr. Sotos on the night before the release to ask if he could appear in Court the following morning for the dismissal. Mr. Sotos could not attend because he was on trial and Mr. Ekl rearranged his schedule so that he could appear.

orders and authority, apparently confident that the Court will be unable to determine what happened, and the Court should convene an evidentiary hearing in order to get to the bottom of the charade.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court convene an evidentiary hearing to determine the source of the leak of the Valentini memo.

Dated: June 23, 2017

Respectfully submitted,

*Attorneys for Plaintiff Alstory Simon*

| /s/ Terry A. Ekl | /s/ James G. Sotos |
|---|---|
| Terry A. Ekl | James G. Sotos, Atty No. 6191975 |
| Patrick L. Provenzale, #6225879 | Jeffrey Neil Given |
| Tracy L. Stanker, #6274868 | Laura M. Ranum |
| EKL, WILLIAMS & PROVENZALE LLC | Sara J. Schroeder |
| Two Arboretum Lakes | THE SOTOS LAW FIRM, P.C. |
| 901 Warrenville Road, Suite 175 | 550 East Devon Avenue, Suite 150 |
| Lisle, IL 60532 | Itasca, IL 60143 |
| (630) 654-0045 | (630) 735-3300 |
| (630) 654-0150 *Facsimile* | (630) 773-0980 *Facsimile* |
| tekl@eklwilliams.com | jsotos@jsotslaw.com |
| pprovenzale@eklwilliams.com | jgiven@jsotoslaw.com |
| tstanker@eklwilliams.com | lranum@jsotoslaw.com |
| | sschroeder@jsotoslaw.com |

## CERTIFICATE OF SERVICE

    I certify under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C.A. § 1746, that I electronically filed a complete copy of the foregoing **Plaintiff's Redacted Response To Defendant Ciolino's Sealed Motion To De-Designate The Valentini Memo As Confidential** with the Clerk of the Court on Friday, June 23, 2017, using the CM/ECF system, which will send notification of such filing to the CM/ECF participants listed on the attached service list:

***Defendant David Protess's Attorneys***:
Matthew J. Piers
Chirag G. Badlani
Kate Ellen Schwartz
Hughes, Socol, Piers, Resnick & Dym, Ltd.
70 W. Madison Street
Suite 4000
Chicago, IL 60602
cbadlani@hsplegal.com
mpiers@hsplegal.com
kschwartz@hsplegal.com

***Defendant Northwestern University's Attorneys:***
Terri L. Mascherin
Gabriel A. Fuentes
Jory M. Hoffman
Laura Ellen Baker Hulce
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
Tmascherin@jenner.com
Gfuentes@jenner.com
Jhoffman@jenner.com
lhulce@jenner.com

***Defendant Paul Ciolino's Attorney:***
Jennifer Bonjean
Bonjean Law Group, PLLC
1000 Dean Street, Suite 422
Brooklyn, New York 11238
jennifer@bonjeanlaw.com

Jared S. Kosoglad
Jared S. Kosoglad, P.C.
223 W. Jackson Street, Suite 200
Chicago, IL 60606
(312) 513-6000
jared@jaredlaw.com

    /s/ James G. Sotos
    James G. Sotos, Atty No. 6191975
    *One of the Attorneys for Plaintiff Alstory Simon*