<pre>
 1                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3
    ALSTORY SIMON,                     ) Docket No. 15 CV 1433
 4                                     )
           Plaintiff,                  )
 5                                     ) Chicago, Illinois
               vs.                     ) June 5, 2017
 6                                     ) 1:30 o'clock p.m.
    NORTHWESTERN UNIVERSITY, et al.,)
 7                                     )
           Defendants.                 )
 8

 9             TRANSCRIPT OF PROCEEDINGS - Motion/Status
             BEFORE MAGISTRATE JUDGE M. DAVID WEISMAN
10
    APPEARANCES:
11
    For the Plaintiff:       EKL WILLIAMS & PROVENZALE LLC
12                           BY:  MR. TERRY A. EKL
                             901 Warrenville Road
13                           Suite 175
                             Lisle, Illinois  60532
14
                             THE SOTOS LAW FIRM PC
15                           BY:  MS. LAURA M. RANUM
                             550 East Devon Avenue
16                           Suite 150
                             Itasca, Illinois  60143
17
    For Defendant
18     Northwestern:         JENNER & BLOCK LLP
                             BY:  MS. TERRI L. MASCHERIN
19                           353 North Clark Street
                             Chicago, Illinois  60654
20

21

22             LAURA LACIEN, CSR, RMR, FCRR, CRR
                     Official Court Reporter
23             219 South Dearborn Street, Suite 1212
                     Chicago, Illinois  60604
24                       (312) 408-5032

25
</pre>

**APPEARANCES:  (Cont'd)**

For Defendant
    Protess:                        HUGHES SOCOL PIERS RESNICK & DYM LTD
                                    BY:  MR. MATTHEW J. PIERS
                                    70 West Madison Street
                                    Suite 4000
                                    Chicago, Illinois  60602

For Defendant
    Ciolino:                        BONJEAN LAW GROUP PLLC
                                    BY:  MS. JENNIFER A. BONJEAN
                                    1000 Dean Street
                                    Suite 422
                                    Brooklyn, New York  11238

For Third-Party
    Defendants Preib
    and Crawford:                   CAMELI & HOAG PC
                                    BY:  MR. THOMAS N. OSRAN
                                    105 West Adams Street
                                    Suite 1430
                                    Chicago, Illinois  60603

1       (The following proceedings were had in open court:)

2              COURTROOM DEPUTY:  15 CV 1433, Simon versus

3   Northwestern University.

4              MR. EKL:  Good morning, your Honor.  For the record,

5   Terry Ekl, E-k-l, on behalf Mr. Simon.

6              THE COURT:  Good afternoon, Mr. Ekl.

7              MS. MASCHERIN:  I'd like to identify the first wrong

8   thing Mr. Ekl said today.  It's afternoon, Terry.

9              MR. EKL:  Oh.

10             MS. MASCHERIN:  Good afternoon, your Honor.  Terri

11  Mascherin on behalf of Northwestern.

12             MR. EKL:  Now I'm supposed to say it's the first

13  time I've been wrong all day.

14             MS. MASCHERIN:  I don't doubt that.

15             MR. OSRAN:  Tom Osran for Martin Preib.

16             THE COURT:  Good afternoon.

17             MR. OSRAN:  Good afternoon.

18             MR. PIERS:  Good afternoon, your Honor.  Matthew

19  Piers on behalf of David Protess.

20             THE COURT:  Good afternoon.

21             MS. BONJEAN:  And good afternoon, your Honor.

22  Jennifer Bonjean on behalf of Paul Ciolino.

23             THE COURT:  Good afternoon.

24             MS. RANUM:  Good afternoon, your Honor.  Laura Ranum

25  also on behalf of plaintiff.

```
 1          THE COURT:  Good afternoon.  All right.

 2          Mr. Osran, I am -- I apologize.  My law clerk had

 3    your draft opinion done about two weeks ago and it's been

 4    sitting on my desk so it will come out today or tomorrow and

 5    you can review it and do with it as you deem appropriate.

 6          MR. OSRAN:  Thank you.

 7          THE COURT:  And you're certainly free to stay if you

 8    want but that's all I'm assuming you're here for, correct?

 9          MR. OSRAN:  Well, there's another issue.  There's

10    depositions that are taking place that are not -- I'm not

11    getting any notice of and I'd like to just briefly ask that I

12    be given notice of these depositions.  For example, there's a

13    deposition tomorrow.

14          THE COURT:  You're not a party --

15          MR. OSRAN:  I'm sorry?

16          THE COURT:  You don't represent a party anymore,

17    correct?

18          MR. OSRAN:  Well, I do represent a party.  We

19    intervened and so we are a party in this case and there's

20    talk that my client is going to be deposed; and I think in

21    order to prepare my client, I need to read depositions or

22    attend depositions that occurred.

23          MS. MASCHERIN:  Your Honor, Terri Mascherin on

24    behalf of Northwestern.

25          Mr. Osran's client intervened for the limited
```

1   purpose of moving to quash a third-party subpoena that was

2   served to the -- on the Illinois Department of Corrections.

3   There was case decided just this morning by the U.S. Supreme

4   Court holding that a party -- that in order to intervene for

5   substantive reasons in a lawsuit in federal court as opposed

6   to, for example, to protect an alleged privilege interest

7   with respect to discovery served on someone else, a party has

8   to establish Article III standing.

9          Mr. Preib is not a party to this lawsuit for all

10  purposes.  He intervened for a limited purpose.  I would

11  submit there's no -- you know, I can't envision a way he

12  would meet the Article III standing requirement for a lawsuit

13  by Alstory Simon against the defendants.  If you look at the

14  Supreme Court decision from this morning, as I understand it,

15  it requires -- it would require essentially that Mr. Preib be

16  able to establish that one of the parties in this case has

17  done injury to him.

18         He certainly -- you know, that's certainly not the

19  case here.  This is a case by -- you know, brought by

20  Mr. Simon against parties who had nothing to do with

21  Mr. Preib.

22         THE COURT:  Ms. Mascherin, what's the name of that

23  Supreme Court case?

24         MS. MASCHERIN:  You know, your Honor, I didn't write

25  down the name of case but I happened -- it caught my eye

1    because I saw it in Law Week this morning.   The opinion just

2    came down this morning from the Supreme Court.

3           THE COURT:   You're a step ahead of me.   I'll look at

4    that.   I just want to look at my order, which I was looking

5    at and reviewing the motion to reconsider, and I know we --

6    there was intervention but I thought we had granted it for a

7    limited purpose.

8           MS. BONJEAN:   Your Honor, I'd also point out that I

9    did try to make Mr. Preib a party to this lawsuit and he

10   actually rejected that so I find it interesting that he now

11   wants to be a party.   We could come to some agreement if he'd

12   like to be a party to the lawsuit.   That I will not object

13   to.

14          MR. OSRAN:   It's not that I want to be a party.

15   It's that they're conducting discovery depositions apparently

16   in secret and I don't think that's appropriate.

17          THE COURT:   All right, enough.   Hold on.

18      (Brief pause.)

19          THE COURT:   All right.   So this is from Docket Entry

20   259, which is the original -- or ruling, what's now the

21   standing ruling on Mr. Preib's motion to quash, although it's

22   been -- there's been a motion to reconsider.   And I'm just

23   reading from the -- what is controlling in this case:   Preib

24   seeks intervention for the limited purpose of obtaining a

25   ruling on his motion to quash.   Preib argues that he should

1   be permitted to intervene on the grounds that he has an

2   interest in this litigation, namely the recorded

3   conversations that he contends are protected by the Illinois

4   Reporter privilege.

5          The Court goes on to set out some law on the area

6   and then we find that we grant him leave -- you, Mr. Preib --

7   leave to intervene for that limited purpose.  And the ruling

8   says:  The Court agrees Preib has established a protectable

9   interest that is not otherwise protected by the current

10  parties.  The Court thus grants Preib's timely motion to

11  intervene.

12         So your intervention is just for the motion to

13  quash.  Discovery is not being conducted in secret, unless I

14  hear from the parties that there's depositions going on and

15  all the parties aren't aware of it but I don't think that's

16  what's going on.

17         So the issue of being prepared if your client is

18  deposed is certainly a fair one but most often what happens

19  is someone gets deposition transcripts of the ones they want

20  to review and they get ready for them.  Depositions are not

21  public hearings.  They can be but they're not.

22         MS. OSRAN:  But I'm not even being allowed to get

23  deposition transcripts because they are being conducted

24  without notice on -- when I don't know of them and I don't

25  learn afterwards who the court reporter was or I'd be happy

1    to order transcripts.  I'm also being threatened with a

2    lawsuit with the same substantive issues back in state court

3    which is going to raise all these same issues all over

4    again.

5           THE COURT:  I'm dealing with what's in front of me

6    here.

7           MR. OSRAN:  I understand.

8           THE COURT:  Has your client been noticed for a

9    deposition yet?

10           MR. OSRAN:  No.

11           THE COURT:  Okay.  When that happens and if you

12    aren't able to get access to transcripts because of a

13    protective order or some other ruling that this Court --

14    either Judge Dow or myself -- have put in place, we should

15    address that.  Your client should have access to depositions

16    if you feel you need them for -- to prepare your client.

17           MS. BONJEAN:  Your Honor, and I would just point out

18    that we have tried to get Mr. Preib under subpoena for a

19    deposition and to produce documents and my process server

20    indicates that he's evading and Mr. Osran won't accept

21    service for him.  So it's a little frustrating that he's here

22    complaining that he's not getting notice when he won't

23    actually even accept service for Mr. Preib.

24           THE COURT:  Is that true, Mr. Osran, are you not

25    accepting service?

```
 1              MR. OSRAN:  I'm sorry?

 2              THE COURT:  Are you accepting -- are you refusing to

 3    accept service for Mr. Preib?

 4              MR. OSRAN:  No.  I am not -- I haven't refused

 5    anything.

 6              MS. BONJEAN:  Judge, that is a false statement to

 7    the Court.  I have an email.  I expressly asked him whether

 8    he would accept service for Mr. Preib and he said no.  Now --

 9              MR. OSRAN:  She served us with a subpoena for Rocket

10    Records and I responded.  She then asked me about a

11    deposition subpoena which I'm not aware of.

12              MS. BONJEAN:  I asked if he would accept service.

13    He said no.  It's a matter of record.

14              MS. MASCHERIN:  Perhaps we can cut through this.  If

15    Mr. Osran would indicate on the record today whether he's

16    willing to accept service for a deposition subpoena directed

17    to his client, then defendants can serve the subpoena upon

18    Mr. Osran.

19              THE COURT:  Mr. Osran?

20              MR. OSRAN:  I haven't seen a subpoena, so.

21              THE COURT:  Okay.  My guess is it will look like all

22    the other subpoenas that come out of this court and it will

23    have your client's name on it --

24              MR. OSRAN:  Yes.  I'm representing the client -- a

25    person in this case right now and I am required to accept
```

1   service.  I understand that.

2          THE COURT:  Will you accept service on Mr. Preib's

3   behalf?

4          MS. OSRAN:  Yes.

5          THE COURT:  For a deposition?

6          MS. MASCHERIN:  All right.  We'll get a deposition

7   subpoena out to Mr. Osran.

8          THE COURT:  Great.  And can I ask you a question,

9   Mr. Osran?  Is it Preib or Preib?

10         MR. OSRAN:  Actually -- I'm sorry, your Honor.  I'm

11  not sure I can accept service for him.  I'm -- as you

12  indicated, I'm here for a limited purpose on resolving these

13  tapes.  I have a client and so I'm not sure that I can accept

14  service for a subpoena.

15         THE COURT:  Well, if you're representing a party and

16  you believe you're representing him in this case, then there

17  is no -- there's no acceptance from your client that you need

18  to get.

19         MS. OSRAN:  Well --

20         THE COURT:  So is your position that you are

21  representing someone in this matter and you are in this case

22  now?

23         MR. OSRAN:  That's correct.

24         THE COURT:  Okay.  Then I don't think you have a

25  choice.

1    MR. OSRAN:  All right.

2    THE COURT:  Will you accept service for Mr. Preib?

3    MR. OSRAN:  Well, if you put it that way, then

4  certainly.

5    THE COURT:  Okay.  Now is it Preib or Preib?

6    MR. OSRAN:  Preib.

7    THE COURT:  All right.  So for the record, Mr. Osran

8  has indicated he will accept service for Mr. Preib for the

9  deposition.

10    Anything else, Mr. Osran?

11    MR. OSRAN:  No.  You are indicating that I will be

12  entitled to see these transcripts at some point unless

13  they're subject to a protective order?

14    THE COURT:  I am not in the business of predicting

15  the future so what I will tell you is if you're served with a

16  notice for a deposition and you feel that you need to see

17  certain things to prepare your witness, your client, I am --

18  I'm happy to hear what it is you would like to see and what

19  problems you're having getting that material.  That's --

20    MR. OSRAN:  So bring a motion.  I mean --

21    THE COURT:  If you need --

22    MR. OSRAN:  If I'm not a party, I have to intervene

23  even to bring that motion.

24    THE COURT:  You would.

25    MR. OSRAN:  I mean, it seems a bit much when I can

1   just call the court reporter and get the transcript,

2   otherwise discovery is being done in secret of people that

3   are involved in this case.

4          THE COURT:  This is not being done in secret.  It's

5   being done the way discovery is done in every federal case

6   I'm aware of.  The parties are given notice.  They're all

7   either choosing to show up or choosing not to show up and the

8   depositions are going forward.  And if someone wants to see

9   something and they're not a party, there are remedies

10  available to get the information you may think you're

11  entitled to see and I'm simply saying I cannot predict what

12  you might want to see and what the parties may say about you

13  seeing certain things.

14         There is a confidentiality protective order in

15  place.  We're going to talk about that next.  I'm not going

16  to make, you know, a broad ruling that you'll get to see

17  everything you want to see --

18         MR. OSRAN:  No; I understand.

19         THE COURT:  -- because I don't know what it is.

20         MR. OSRAN:  Okay.  Thank you.

21         THE COURT:  All right.  Thank you.

22         So here are the things that I have that I want --

23  these are just motions I have and then I certainly want to

24  hear where we are to find out what other things we can get

25  done.  I know that Mr. Hale filed a motion to withdraw.  I've

1    had conversation with Judge Dow about that.  He may be

2    referring that motion to this Court.  Right now, it's -- I

3    don't have it so it's not appropriate for me to rule on that.

4            Next, I have a motion -- I have -- let's take both

5    of the motions to -- on the protective order.

6            MS. MASCHERIN:  Your Honor, could we do

7    Northwestern's first?  That one is unopposed.

8            THE COURT:  Sure.  And I have -- that's fine.

9            MS. MASCHERIN:  And that's just some relatively

10   straightforward revisions to the order which we're requesting

11   at the behest of the state's attorney's office because they

12   wanted the order to make clear that third parties who are

13   producing documents pursuant to subpoena can also designate

14   things as confidential if they need the terms of the

15   confidentiality order.

16           THE COURT:  Yeah.  So I had two questions about this

17   and one is maybe you can walk through.  I'm not -- the one

18   issue is the verbiage used.  So right now, it would say

19   confidential subject to protective order.  The amendment

20   you're looking for would just say confidential and the

21   question I have is some material has already been producing

22   confidential subject to protective order and I'm just

23   wondering why we can't say either it's designated as

24   confidential or confidential subject to protective order.

25           MS. MASCHERIN:  We can just keep it confidential

1    subject to protective order, your Honor.

2              THE COURT:  Okay.  That's my preference.

3              MS. MASCHERIN:  That's fine.

4              THE COURT:  Okay.  And then the other question I

5    have is Page 6 -- this is Paragraph 9(b), Judicial

6    Intervention.

7              MS. MASCHERIN:  Yes.

8              THE COURT:  Tell me when you're there.  I was

9    wondering if anyone would have an objection to -- that first

10   sentence currently reads:  A party that elects to challenge a

11   confidentiality designation may file and serve a motion that

12   identifies the challenged material and sets forth in detail

13   the basis for the challenge.  I would like to add, comma,

14   providing notice to all affected parties.

15             MS. MASCHERIN:  Sure.  That's fine.

16             THE COURT:  And I would also like to change a

17   party -- that very beginning, a party with a capital P, to a

18   party with a small P.

19             MS. MASCHERIN:  I think that may be -- I think party

20   may be a defined term there.

21             THE COURT:  It is.  It's either in your Footnote 1

22   But I think small P means either a party like parties to the

23   litigation as we understand that term and people who have

24   produced materials so I'm just actually -- Mr. Osran's

25   comments earlier reemphasized this point to me which is --

 1          MS. MASCHERIN:  That's fine.

 2          THE COURT:  -- this would allow any party, someone

 3  either producing or a party to the litigation, to have that

 4  right.

 5          MS. MASCHERIN:  That's fine.

 6          THE COURT:  Okay.  So with those changes, I'm fine

 7  with it.

 8          MS. MASCHERIN:  All right.  We'll submit a conformed

 9  copy.

10          THE COURT:  Okay.  Now let me ask you this, Ms.

11  Mascherin, because I feel you're better at this kind of

12  organizational thinking that I am.  We now have this

13  motion -- second issue on the protective order.  This is

14  filed by Mr. Piers and I'm wondering if we should be doing

15  this altogether one time or be having multiple iterations?

16          MS. MASCHERIN:  We can certainly address any changes

17  that your Honor approves today in a single revision.

18          THE COURT:  Okay.  That's what I'd like to try to do

19  if we can.

20          MS. MASCHERIN:  Sure.

21          THE COURT:  Okay.

22          MS. BONJEAN:  Your Honor, I just wanted to -- as it

23  relates to the protective order that -- the unopposed

24  protective order, I believe as Mr. Osran pointed out, that --

25  as the Court may know -- Mr. Ciolino filed a

1  counter-complaint that was dismissed for lack of

2  subject-matter jurisdiction.  And as Judge Dow pointed out in

3  his decision, Mr. Ciolino has a right in state court which

4  he's going to be exercising but he has a limited time in

5  which to do so and that time is upon us.

6         As the Court is aware, there was a memo produced by

7  the Cook County State's Attorney's Office that the Cook

8  County State's Attorney's Office designated as confidential

9  which is why we have agreed to amend the confidentiality

10  order so that they could designate it.  I do anticipate

11  seeking judicial intervention because I would like to rely on

12  that memorandum in my pleading papers in state court so --

13  and I assume that for the purposes of the existing protective

14  order, I would need to seek judicial intervention to do so

15  because it can only be used for the purposes of this

16  litigation; is that correct?

17         THE COURT:  That is correct.

18         MS. BONJEAN:  Okay.  So I just wanted to get some

19  clarity because I think that's going to be an issue that's

20  raised sooner rather than later in addition to the fact that

21  I think the public probably has a right to know but my

22  greatest concern is that I am on a timeline for filing Mr.

23  Ciolino's complaint in state court and the facts contained in

24  that memo are important for advancing my civil conspiracy

25  claim.

1         THE COURT:  All right.  I appreciate the forewarning

2  on that and we'll try to address this as timely as we can.

3         MS. BONJEAN:   Thank you.

4         THE COURT:  Thank you.  All right.  And then for Mr.

5  Piers's -- your motion for amended protective order, are

6  there objections to the change which I understand the change

7  just to be related to depositions adding a paragraph related

8  to Defendant Protess?

9         MR. EKL:  Yes.  We do, Judge.

10        THE COURT:  Okay.

11        MR. EKL:  We object to it.  And I can respond to the

12  written pleading right now.

13        In our opinion, David Protess should not be treated

14  any differently than any other party or any other deponent in

15  this case.  It seems somewhat disingenuous the man who has

16  used the media more than any human being probably anywhere is

17  now complaining about a concern that his deposition

18  transcript is going to make its way into the public purview.

19        If, in fact, you grant the motion as it relates to

20  Protess, it really should be granted as to every other

21  deponent in the case.  But whatever transcripts are under the

22  protective order as confidential, whenever we file a

23  pleading, summary judgment motions and responses, those are

24  going to have to be under seal as well.

25        I would also suggest to the Court that with Mr. Hale

1    withdrawing from the case, that the concern over Mr. Hale's

2    access should that motion to withdraw be granted will be

3    dissipated because we will wall him off and we will agree

4    that no deposition of any -- any deponent in this case be

5    submitted over to Whole Truth Films and I think that

6    eliminates the concern.  But there's no reason David Protess

7    should be treated any differently than anybody else in this

8    case.

9           THE COURT:  Well, you know, I agree in general that

10   everyone should be treated equally under the law.  I don't

11   think anyone here would say otherwise.  The issue, though, is

12   under the law generally, discovery material is not open to

13   the public.  Depositions -- you know, I disagree with Mr.

14   Osran depositions are not conducted in secret but, on the

15   other hand, getting access to depositions is usually

16   something that is more challenging to do.  And the ability

17   to -- in a case like this, it has public interest already.

18   To put things out in the public realm without proper context

19   gives me pause.  It certainly gave Judge Finnegan pause in

20   the *Rice* case.

21          I agree with you, Mr. Ekl that -- and this is a

22   problem I think the Court has in general because I've had to

23   deal with these already where everything has been filed under

24   seal and then there's a summary judgment ruling or other

25   substantive ruling and then there's hundreds or thousands of

1   pages that the District Court has to figure out which should

2   be not under seal and the Seventh Circuit has its own, I'd

3   say, less than clear body of law describing what should or

4   shouldn't be under seal but I don't see a reason why this

5   motion should not be granted now.  It does not limit the use

6   of the deposition for substantive purposes.

7        So if there's portions of the deposition that are

8   used for summary judgment that are used, you know, at some

9   other point in the case, certainly if there's a trial, it

10  won't be -- the public won't be denied access to it.  It will

11  be part of the record in that -- at that point.  It's just

12  not part of the record, the judicial record now.  And nor

13  would anyone else is -- I suppose your point is that someone

14  else could be taking the deposition of Mr. Simon and sending

15  that around.  I would be open if that's what people wanted to

16  do to say all depositions should be subject to this if that's

17  the concern but I don't see any reason why Mr. Protess'

18  should not be.

19        MR. EKL:  Judge --

20        THE COURT:  And I do have another concern but let's

21  talk about that one.  I have another concern about the motion

22  but it's not that.  Go ahead.

23        MR. EKL:  Judge, I don't think Protess' deposition

24  should be treated any differently than any other deponent in

25  this case.  So if you're going to extend this order to

1    Protess, I think you should extend to all witnesses in the

2    case.

3         THE COURT:  All right.  Let me hear from defendants

4    on that proposition.

5         MR. PIERS:  On behalf of Defendant Protess, your

6    Honor, I don't have any objection.  I don't represent, of

7    course, all of the other deponents in this case.

8         THE COURT:  Just speak for your client.

9         MR. PIERS:  Yeah.  I mean, we've made our position,

10   I think, quite clear to the Court in written motion that we

11   would have no objection to this provision applying

12   generally.

13        MS. MASCHERIN:  No objection from Northwestern, your

14   Honor.

15        THE COURT:  Ms. Bonjean, your body language makes me

16   concerned.  You have a different view?

17        MS. BONJEAN:  I'd prefer that all the depositions be

18   made available to everybody everywhere but I know my client

19   wouldn't mind having his deposition made a matter of record

20   but I don't really have much of a dog in this fight and I

21   would defer to my co-counsel.

22        THE COURT:  All right.  The ruling of the Court

23   subject to one other issue will be that this language needs

24   to be modified but it will apply to all depositions in the

25   case.

1          MR. EKL:  Thank you.

2          THE COURT:  The other issue I have with this and,

3     Mr. Piers, I don't know if when you drafted this what you

4     were thinking but this is kind of the reality of what I'm

5     looking at.  So I'm looking at Paragraph 4(a).  Again, this

6     is on Page 3 of your proposed --

7          MR. PIERS:  I am there, sir.

8          THE COURT:  Okay.  All parties -- and this is

9     halfway through:  All parties and counsel for the parties are

10    prohibited from disclosing or disseminating the video,

11    transcript, and exhibits of -- we'll just say depositions,

12    except for the purpose of prosecuting or defending this

13    action unless otherwise ordered by the Court or ordered by

14    the Court in *Rice versus Burge* allowing use in that action.

15    The concern I have is the exhibits.

16         MR. PIERS:  As you read it now, I think I can

17    anticipate the Court's concern.  Exhibits that would

18    otherwise not be subject to the protective order would

19    somehow be made and I think what we were trying to say -- and

20    not very artfully I have to acknowledge to you -- is the fact

21    that there are exhibits to Protess' deposition is what should

22    be kept confidential.

23         THE COURT:  Okay.

24         MR. PIERS:  Not the underlying document themselves,

25    which would not otherwise have a confidentiality designation.

1  That's a matter that we certainly could clean up in the, I

2  think, near the ominous amended protective order that the

3  Court is asking for.

4          THE COURT:  All right.  And if you could do that,

5  that would be fine.

6          MR. PIERS:  Absolutely.

7          THE COURT:  You've hit on what my concern is.

8          MR. PIERS:  Absolutely.

9          THE COURT:  All right.  And just for the record,

10 everyone's objections are noted for the amended protective

11 order.  But to the extent -- and you're not waiving your

12 objection.  If you can circulate it and get agreement on the

13 language subject to your objections, that would be great.  If

14 you can't, just send me a red line with where everyone is and

15 I'll decide it.

16          All right.  Then the last of motion I've got -- and

17 this is Ms. Bonjean's motion to compel Mr. Delorto and Mr.

18 Mazzola to comply with the subpoena and I think -- when is

19 this supposed to be up for?

20         MS. BONJEAN:  Thursday, your Honor.

21         THE COURT:  Okay.  I'd like to try and just to be as

22 efficient as we can.  Have you had conversation with their

23 counsel about this?

24         MS. BONJEAN:  I have.  I've had email communications

25 with Mr. Borkan.  It's laid out in the motion really for

1    almost a year now.

2            THE COURT:  Do you know -- what I'm wondering is do

3    you know if he wants to file something or not?

4            MS. BONJEAN:  That, I don't know because I just

5    filed it this morning but he will respond.  He's not -- I

6    don't think he won't -- I think he will respond and give me

7    an answer to that question but -- and I can certainly let the

8    Court know maybe if --

9            THE COURT:  Yeah.  So what I am trying to avoid is

10   having a hearing to just set out a briefing schedule.

11           MS. BONJEAN:  Right.

12           THE COURT:  So if he wants to file something, we'll

13   keep it on our docket for whatever date you have it noticed

14   up for.

15           MS. BONJEAN:  Okay.

16           THE COURT:  If you can communicate with him and he

17   says I'd like to file a response, you know, 14 days --

18   whatever it is -- if you can email Ms. Owens and everyone

19   else and we might just set a briefing schedule.

20           MS. BONJEAN:  Great.

21           THE COURT:  If he's like I'd rather just argue it

22   Thursday, I'm open to doing it that way as well.

23           MS. BONJEAN:  And I'm open either way as well so

24   I'll reach out to him today.

25           THE COURT:  All right.  So we'll keep it on our

1    docket.

2        (Brief pause.)

3        THE COURT:  Okay.  So can you let Ms. Owens know by

4    tomorrow at 3:00 o'clock?

5        MS. BONJEAN:  Yes, unless for some reason Mr. Borkan

6    just ignores me or is out of town.

7        THE COURT:  Then we'll see you on Thursday.

8        MS. BONJEAN:  Okay.  Very good.

9        THE COURT:  Thanks.  Okay.  Those are the motions I

10   have.  I think that's all I had on my list.  I did want an

11   update on Mr. Porter's deposition.

12       MR. EKL:  As far as we know, it's going tomorrow,

13   Judge.

14       THE COURT:  Okay.

15       MR. EKL:  I've heard nothing from counsel for Porter

16   to indicate that he's not intending to appear.

17       THE COURT:  Okay.

18       MR. EKL:  And because of the volume of people, we've

19   moved it to a larger location, so.

20       THE COURT:  Okay.  All right.  I'm here open to any

21   other issues that people have.  Nope?  All right.

22       MR. EKL:  We don't have anything.

23       THE COURT:  Okay.  Nothing from defendants?

24       MS. MASCHERIN:  Nothing from the defendants, your

25   Honor.

1          THE COURT:  All right.  So we have our next status,

2     when is that?

3          MS. MASCHERIN:  It's early July.  I want to say the

4     5th but I'm not certain.  July 5th or 6th.

5          COURTROOM DEPUTY:  July 10th.

6          THE COURT:  July 10th, okay.  All right.  So I may

7     see -- we may have the case up Thursday depending on where we

8     are on that motion for the investigator's Rule 45 subpoena.

9     Otherwise, I will see you on the 10th.  If there's something

10    I can do for anyone beforehand, please file an appropriate

11    motion.  Otherwise, if there are motions to be filed that can

12    get -- wait until around July 10th, that's great too.  I

13    think that's an efficient way to address these things.

14         All right.  Anything further from any of the

15    parties?

16         MR. EKL:  No, your Honor.

17         MR. PIERS:  No.

18         MR. EKL:  Thank you, Judge.

19         MS. BONJEAN:  Thank you.

20         THE COURT:  Thank you very much.

21         MS. MASCHERIN:  Thank you.

22       (Which concluded the proceedings in the above-entitled

23    matter.)

24

25

1                             C E R T I F I C A T E

2               I hereby certify that the foregoing is a transcript

3 of proceedings before the Honorable M. David Weisman on June

4 5, 2017.

5

6 */s/Laura LaCien*

                                              August 30, 2018

7 Laura LaCien                                        Date

    Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25