# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| Alstory Simon, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     vs. | ) | Case No. 1:15-cv-01433 |
| | ) | |
| Northwestern University, et al., | ) | Judge Robert M. Dow, Jr. |
| | ) | Magistrate Judge M. David Weisman |
| | ) | |
|     *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Paul Ciolino filed a motion to lift protective order (in part) and unseal selected filings [426] on June 11, 2018. For the reasons set forth below, the Court denies Defendant Ciolino's motion.

## Background

This case has been closed. After more than three years of contentious litigation involving numerous discovery disputes, Plaintiff reached a settlement agreement with Defendants Northwestern University and David Protess, and voluntarily dismissed Ciolino. (Dkt. 418, 424.) In his motion, Ciolino requests that the Court (1) lift the protective order in place as to all depositions (except those of former Northwestern students, Shawn Armbrust and Tom McGann) and all documents from the Cook County State's Attorney's Office ("CCSAO") and (2) unseal certain pleadings.[1] Alternatively, Ciolino requests that the Court "require the parties to identify

---

[1] Ciolino expanded his requested relief in his reply brief, arguing that "all confidential designations should be struck on all depositions and discovery produced in this litigation." (Dkt. 442 at p. 6.) The Court will not consider Ciolino's enlarged request as it was raised for the first time in his reply brief. *See, e.g.*, *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-00204, 2014 WL 51293, at *3 (N.D. Ill. Jan. 7, 2014) ("[U]ndeveloped arguments and arguments raised for the first time in reply brief are waived.").

what sections of the depositions" taken in this matter should remain confidential, and allow Mr. Ciolino an opportunity to respond. (Dkt. 426 at p. 4.) Plaintiff, Northwestern, Protess, and Non-Party Respondent CCSAO have each lodged an objection to Ciolino's motion. (Dkt. 438, 439, 441.)

On November 18, 2016, the Court entered a protective order – without objection from any party – which prescribed the treatment of confidential information in this litigation. (Dkt. 185.) Upon motions from Defendants Northwestern and Protess, the Court subsequently entered an Amended Protective Order (the "Protective Order") on June 14, 2017, which expanded the scope of the original protective order to include materials produced by third parties and the depositions of all witnesses.[2] (Dkt. 320.) To expedite the discovery process, the parties essentially agreed, among other things, that they would keep the documents produced by third parties confidential without requiring the third party to establish good cause on a document-by-document basis. Each party reserved the right to challenge a confidentiality designation. (*Id.* at ¶ 9.)

The Protective Order prescribes that Confidential Information, as that term is defined, "shall not be used or disclosed by the parties, counsel for the parties or any other persons . . . for any purpose whatsoever other than this litigation . . . ." (*Id.* at ¶ 5(a).) It specifically contemplates how confidential information should be treated following the termination of the case: "Unless otherwise agreed or ordered, this Order shall remain in force for all parties after dismissal of any party for any reason or entry of final judgment not subject to further appeal." (*Id.* at ¶ 14(a).) Additionally, the Protective Order provides that it "shall be subject to modification by the Court

---

[2] During the hearing on the proposed modifications to the protective order, counsel for Ciolino indicated her intention to seek judicial intervention regarding the confidentiality designation of a memorandum produced by the CCSAO. (6-5-17 Hearing Transcript, at p. 16:6–25.) As to the provision concerning the confidentiality of depositions, counsel for Ciolino stated that she would "prefer that all the depositions be made available to everybody everywhere . . . but I don't really have much of a dog in this fight and I would defer to my co-counsel." (*Id.* at p. 20:15–21.) No further objections were lodged by any party to the modifications of the protective order.

on its own initiative or on motion of a party or any other person with standing concerning the subject matter." (*Id.* at ¶ 15.)

During the litigation, the CCSAO, a non-party, produced documents pursuant to subpoenas. Among other documents, the CCSAO produced a July 22, 2014 memorandum ("CCSAO Memo") from two former Assistant State's Attorneys to Anita Alvarez (former State's Attorney) and Dan Kirk (former First Assistant State's Attorney) regarding the findings of the Conviction Integrity Unit's investigation into Alstory Simon's conviction. (Dkt. 441 at p. 3.) The CCSAO designated the memo as confidential as allowed for by the Protective Order. On June 7, 2017, Ciolino moved to de-designate the CCSAO Memo so that it could be used to support Ciolino's lawsuit against Anita Alvarez and others in state court. (Dkt. 313.) This Court denied Ciolino's motion without prejudice, finding that Ciolino did not require the CCSAO Memo to file an adequate complaint in state court, but left open the possibility that Ciolino could renew his motion if the judge challenged the factual sufficiency of Ciolino's pleadings. (Dkt. 350; 361 at p. 7:6–8:17.) To the Court's knowledge, the state court matter has progressed well beyond the pleading stage. Ciolino did not seek any further judicial intervention concerning the Protective Order until the instant motion. Additionally, Anita Alvarez sat for a deposition, which was video and audio recorded. (Dkt. 441 at pp. 9–10.) Ciolino seeks release of these discovery materials as well. (Dkt. 426.)

### Discussion

The Court denies Ciolino's motion based on the posture of the litigation, the language of the Protective Order, and the well-established principle that "pretrial discovery, unlike the trial itself, is usually conducted in private." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins.*

*Co.*, 178 F.3d 943, 944 (7th Cir. 1999).[3] As noted above, this case has been resolved. Accordingly, the question of good cause related to information designated as confidential is moot. *See, e.g., Jude v. City of Milwaukee*, No. 06-C-1101, 2012 WL 3000401, at *1 (E.D. Wisc. July 23, 2012) (finding that after the parties reached a settlement, "the question of whether there was good cause for keeping the unfiled discovery materials confidential is moot"). Throughout the litigation, Ciolino had the opportunity to challenge designated confidentiality markings, and in fact availed himself of that opportunity with respect to the CCSAO Memo. Now that the litigation has ended, however, there is a much more limited issue of whether the Protective Order has "interfer[ed] with a party's right to use the discovery materials." *Id.*

Before the Court addresses the parties' respective arguments at a more granular level, there are several broader issues that the Court believes should be addressed. First, several of the objecting parties assert that Ciolino's motion is untimely because this matter has been resolved. (Dkt. 438 at p. 3; Dkt. 439 at p. 2.) The Protective Order, by its terms, continues in effect after the case has been closed. (Dkt. 320 at ¶ 14(a), ¶ 17.) Ciolino filed the instant motion four days after Judge Dow dismissed Ciolino from the case. (Dkt. 424, 426.) There is no suggestion that the four-

---

[3] The Court notes that there are cases that hold "pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings. *See, e.g., AT&T v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978). More recent precedent directs that there is a significant difference between discovery materials in general and discovery materials that are filed with the court. *See Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) ("[t]o the extent that [the concept of 'a presumption' of public access to discovery materials] suggests the existence of a general public right to access the materials that litigating parties exchange in response to discovery requests, it sweeps too broadly. . . . [W]hile the public has a presumptive right to access discovery materials that are filed with the court, used in a judicial proceeding, or otherwise constitute 'judicial records,' the same is not true of materials produced during discovery but not filed with the court.") Relying on *Bond*, the Court believes that there is not a general right to share with the public discovery materials that are exchanged between the parties during the discovery process. The public's right to discovery materials markedly changes, however, when the materials gathered during the discovery process are presented to the court and relied upon by the Court in its decision-making process. *See id.* at 1073 ("Generally speaking, the public has no constitutional, statutory (rule-based), or common-law right of access to *unfiled* discovery.") (emphasis in original).

day "delay" is unreasonable or impacts an affected party's substantive rights.[4] Thus, the Court finds Ciolino's motion timely.

That said, the *entire* protective order remains in place. Ciolino, however, has ignored procedural obligations required to be followed prior to filing the instant motion. In particular, the Protective Order requires a meet and confer process prior to seeking judicial intervention. (Dkt. 320 at ¶ 9.) While counsel for Ciolino includes a declaration as to her contacts with counsel, the Protective Order requires more. (*Id.* at ¶ 9(a) (requiring an actual conference among those impacted by the contested designation, as well as an actual exchange between the affected parties explaining their respective positions)). Ciolino has failed to meet these requirements. The Court could deny the motion on this procedural ground alone. But in the interest of final resolution, the Court has chosen to resolve the motion on the merits.

Next, the parties assert differing positions on whose burden it is to establish that a document should remain protected under the Protective Order. *Compare* Dkt. 441 at p. 2 (CCSAO arguing that "Ciolino has not provided good cause to lift the confidential designation") *with* Dkt. 442 at p. 3 (Ciolino arguing that the "CCSA fails to understand that it bears the burden of showing good cause"). While Ciolino is correct that during the pendency of litigation, the party seeking to maintain confidentiality bears the burden of establishing good cause that the material in question is subject to protection, (*see* Dkt. 320 at ¶ 9(b) ("[t]he burden of persuasion in any such challenge proceeding shall be on the designating party")), the Court's standard protective order is not

---

[4] Defendant Northwestern University and Plaintiff Simon suggest that Ciolino "had the opportunity *during the pendency of the litigation* to challenge the designation of any documents as confidential." (Dkt. 438 at p. 3) (emphasis added). To the extent that Northwestern and Simon argue that Ciolino's motion to de-designate *must have been brought* during the pendency of the lawsuit, the Court respectfully disagrees. While some delays in pursuing relief under a protective order may be so lengthy that a Court could consider the relief sought untimely, a four-day delay under the circumstances here seems consistent with the spirit of the Protective Order.

intended to undermine Seventh Circuit caselaw addressing the confidentiality of materials produced during the discovery process that are not part of the judicial record.

As the Seventh Circuit has made clear, a distinction must be drawn "between materials generated by pretrial discovery and materials that are in the public record because they form part of the judicial decision-making process." *Hobley v. Chi. Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004). In general, "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (noting that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information"). The materials, however, that "influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Intl., Inc.*, 297 F.3d at 545. Indeed, both the Federal Rules and the Local Rules of the Northern District of Illinois prohibit the filing of discovery materials as part of the public docket except when the materials are used as evidence in connection with a hearing or motion or if the court orders filing. Fed. R. Civ. P. 5(d)(1); N.D. Ill. L.R. 26.3. Because this matter was resolved short of trial, and without any court rulings addressing the factual merits of the underlying complaint, none of the documents that Ciolino now seeks to de-designate "influence[d] or underpin[ned] a judicial decision."[5] *Baxter Intl., Inc.*, 297 F.3d at 545.

Thus, while Ciolino is correct that during the course of litigation the party seeking to maintain the confidentiality of particular material has the burden of persuasion, controlling judicial precedent regarding discovery practices in general is not ignored or overwritten. As the case has been resolved without any judicial resolution as to its factual merits, the discovery material covered

---

[5] The Court addresses, *infra*, Ciolino's argument that the Court's resolution of the initial production of the CCSAO Memo brings the document within the ambit of influencing or underpinning a judicial decision.

6

by the Protective Order is still governed by the general principle that discovery materials produced during litigation are generally entitled to secrecy until those materials become part of the judicial record.[6]

One final observation is also appropriate. This matter was resolved through a settlement between the Plaintiff and Defendants Northwestern University and Protess. The terms of the settlement are confidential, and the settling parties handled the settlement process on their own, without utilizing mediation services of the Court. After securing a settlement with Northwestern and Protess, Plaintiff voluntarily dismissed Ciolino. In short, the Court was not substantively involved at all in the ultimate resolution of this matter. One advantage of settling a matter (as opposed to more fully litigating the matter) is that public disclosure of information related to the merits of the case can be avoided. This is an indisputable benefit of settlement, the value of which is often dependent on the public's interest in the case. Indeed, parties often settle a case *because* the parties would prefer not to "air their dirty laundry." To allow disclosure of discovery materials that were never presented to a court for substantive purposes (*i.e.* to resolve the substance of the claims), would eliminate one of the benefits of settlements in the first instance. While Ciolino makes a strong argument that there is a significant public interest in this matter, Ciolino does not identify any case (nor is the Court aware of any) that allows public interest to trump the general principles governing disclosure of discovery materials.

*Depositions*

In the Protective Order, the parties agreed to treat all depositions as confidential. *See* Dkt. 320 at ¶ 4 ("The deposition of any and all witnesses taken in this case . . . shall be treated as

---

[6] Even if the parties had litigated, for example, a motion for summary judgment, the proper course to assess continued confidentiality would be to determine whether the particular documents in question influenced the Court's summary judgment decision.

Confidential Information and protected under the terms of this Order, unless otherwise ordered by the Court.")  Additionally, courts are clear that there is no presumption of public access to depositions.  *See, e.g.*, *Hobley v. Chi. Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004) (noting that "deposition discovery materials are not 'judicial documents' because they play no role in the performance of Article III functions, therefore, there is no presumption of public access to them").

Removing the confidentiality designations from almost every deposition taken in this case would be contrary to the express language of the Protective Order and frustrate the reasonable expectation of privacy that the deponents had when they gave their testimony.  The depositions are not a part of the public record and, importantly, have never been used for any purpose in the litigation.  The need for continued protection is particularly evident with respect to the deposition of Anita Alvarez, a high-profile public figure.  As argued by the CCSAO and supported by caselaw, videotaped depositions "'are subject to a higher degree of potential abuse than transcripts.'" *Shultz v. Dart*, No. 13 C 3641, 2015 WL 4934552, at *3 (N.D. Ill. Aug. 18, 2015).  The CCSAO has raised a genuine concern about the potential misuse of the deposition in the public sphere and established good cause to preserve the confidentiality designation of Alvarez's deposition transcript and video.  Accordingly, lifting the Protective Order as to almost every deposition taken in this case would be inappropriate.

***Documents Produced by the Cook County State's Attorney's Office***

Ciolino also requests that the Court lift the Protective Order as to all documents produced by the CCSAO.  In addressing this portion of Ciolino's motion, the Court is mindful that the CCSAO was a non-party to the now terminated litigation and its position must therefore be uniquely considered.  *See, e.g.*, *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853,

2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017) (noting that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight").

Ciolino focuses particularly on the CCSAO Memo prepared for Anita Alvarez to address the findings of the Conviction Integrity Unit's investigation into Simon's conviction. Among other arguments, Ciolino contests that because the CCSAO Memo "forms the basis of the court's decision that was entered on judicial record," (referring to the Court's denial of Ciolino's motion to de-designate the CCSAO Memo), it should be available to the public. (Dkt. 426 at p. 4.) Specifically, the Court order upon which Ciolino relies was a decision related to the production of the document. The CCSAO claimed that the document was privileged and should not be subject to production, relying on the deliberative process privilege. In a detailed order, this Court directed the CCSAO to produce the document. (Dkt. 284.) The implications of Ciolino's argument would lead to an absurd result. If a party responding to discovery asserts a privilege, which is then litigated, a court's finding that the document is not privileged and thus must be produced in discovery would *ipso facto* mean the document would also be subject to public disclosure. In other words, adopting Ciolino's argument would mean that the unsuccessful assertion of privilege itself would waive any protection as to public disclosure of the document. Here, neither Ciolino's motion nor the Court's ruling on the motion had any connection to the merits of the case.[7] Therefore, the Court's ruling on the discoverability of the CCSAO Memo does not render the document subject to public disclosure.

In addition, Ciolino contests that because the CCSAO Memo has already appeared in the public domain (pointing to two articles published in the *Chicago Tribune*) it may no longer be designated as confidential. The Court disagrees. The Court does not know how reporters at the

---

[7] Had this matter proceeded to summary judgment and the District Judge relied on the CCSAO Memo in reaching his conclusion, the Court and the parties would be in a much different position with respect to the CCSAO Memo.

9

*Chicago Tribune* gained access to the CCSAO Memo. The timing of the *Tribune*'s disclosure of the CCSAO Memo relative to the litigation history in the instant case certainly raises suspicions. However, a strong and independent press is an important part of our country's democracy. If the CCSAO Memo was forwarded to members of the press in violation of the Protective Order, a previous violation of the Protective Order may not serve as the basis for abandoning the protections of the Protective Order and disregarding the proper application of the law in this area.

Ciolino further argues that because the CCSAO Memo should, according to Ciolino, be available to the public under the Illinois Freedom of Information Act, the document is not entitled to protection. To the extent Ciolino is correct, he may test his theory by filing a FOIA request and pursing the matter further in state court.

As to the balance of the CCSAO materials produced, the Court relies on its stated reasoning that documents produced in the discovery process do not become generally available to the public unless they "influence or underpin [a] judicial decision." *Baxter Intl., Inc.*, 297 F.3d at 545. Therefore, these materials shall also be subject to continued protection from public disclosure.

***Resolution of the Litigation***

The Court recognizes the significance of this litigation to the public but notes again that the matter was largely resolved through a settlement agreement. Accordingly, any material designated as confidential did not affect the judicial disposition of the matter as the case was not resolved on the merits. Moreover, while the Court cannot state for certain, it expects that the parties placed reliance on the Protective Order and the judicial assurance of confidentiality in reaching the settlement. Granting Ciolino's requested relief would disturb the finality of the matter and the parties' reasonable expectations of privacy. Ciolino may choose to seek much of the same information sought here in his pending state court case and address any resulting confidentiality

concerns in that forum. Finality of the matter in federal court and principles of comity as to the state court proceeding strongly counsel that this Court should not de-designate the discovery materials produced in the instant case.

## Conclusion

For the reasons set forth above, the Court denies Defendant Ciolino's motion to lift protective order (in part) and unseal selected filings [426].

**SO ORDERED.**                                  ENTERED:  November 15, 2018

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**